# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND; ET AL.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,<br><br>　　　　Defendants. | Case No.: 1:25-cv- |

## **DECLARATION OF NANCY FARIAS WOMACK**

I, Nancy Farias Womack, declare as follows:

1. I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed as the Director of the California Employment Development Department (EDD or Department).

3. EDD enhances California's economic growth and prosperity by collaboratively delivering valuable and innovative services to meet the evolving needs of employers, workers, and job seekers. The Department connects employers with job seekers, administers California's Unemployment Insurance, Disability Insurance, and Paid Family Leave programs, and provides employment and training programs under the federal Workforce Innovation and Opportunity Act of 2014, 29 U.S.C. §§ 3101-3361 (WIOA). Additionally, the Department collects various employment payroll taxes, including the personal income tax, and collects and provides comprehensive economic, occupational, and socio-demographic labor market information concerning California's workforce.

4. As EDD's Director, I have access to comprehensive reports and financial records that detail the state of California's labor market, including claims for unemployment benefits, and the allocation and distribution of federal funding received by EDD. Additionally, my role includes overseeing the implementation and compliance of federally funded programs within the agency, ensuring all expenditures align with federal guidelines and regulations.

5. The ongoing mass layoff of federal workers is irreparably harming California in

2

several ways.

**The Rapid Response Program and Associated Costs**

6. EDD oversees a coordinated strategy to provide immediate assistance to Californians subject to mass layoffs. EDD is the state entity responsible for conducting outreach and providing unemployment services required by the Federal Workforce Investment Act of 1998, as amended by WIOA.

7. Specifically, a state rapid response program (Rapid Response Program) is required by both WIOA, 29 U.S.C. § 3174(a)(2)(A)(i), and its implementing federal regulations, 20 C.F.R. § 665.300-.370. See also 5 C.F.R. § 351.803(b)(1) (reduction in federal workforce).

8. As relevant here, when a private employer with more than 100 employees contemplates a mass layoff, terminating 50 or more employees, the federal Worker Adjustment and Retraining Notification (WARN) Act imposes critical notice requirements. 29 U.S.C. §§ 2101, 2102. Specifically, the employer is required to notify certain groups, including State dislocated worker units, at least 60 days in advance of the layoffs, so that rapid response activities can be undertaken to ameliorate the negative effects of large unemployment events. 29 U.S.C. § 2102(a)(2).

9. The Rapid Response Program has several purposes: to reduce reliance on public benefit systems such as unemployment insurance; to promote economic recovery and vitality by developing an ongoing, comprehensive approach to identify, plan for, and respond to layoffs and dislocations; and to prevent or minimize the impact of mass layoffs on workers, businesses, and communities.

10. When notified of a forthcoming mass layoff, EDD will initiate internal resources to coordinate services with the Local Workforce Development Areas, as requested and arranged

by the employer and/or union to quickly provide informational resources and reemployment services for workers, including but not limited to: information and support for filing Unemployment Insurance (UI) claims; information on the impacts of layoffs on health coverage or other benefits; and information on and referral to career services, reemployment-focused workshops and services, and occupational training.

11. I understand that, pursuant to 5 U.S.C. § 3502(d)(3)(A)(i) and 5 C.F.R. § 351.803(b)(1), the federal Government is similarly required to notify "the State or entity designated by the State to carry out rapid response activities under section 134(a)(2)(A) of the Workforce Investment Act of 1998" of a plan for a reduction-in-force (RIF) of 50 or more federal employees in a competitive area, generally at least 60 days in advance of any proposed RIF.

12. The notice required by 5 U.S.C. § 3502(d)(3)(A) and 5 C.F.R. § 351.803(b)(1) is intended to trigger rapid response activities since it is explicitly to be given to the state entity required to carry out rapid response activities.

13. To the best of my knowledge, neither EDD nor any other entity in the California State Government has received notice of a federal RIF at any federal agency.

14. Yet, as detailed more below, EDD has already received 1,621 claims by former federal employees for unemployment benefits since February 1, 2025.

15. In the month of February 2025, there was a 149 percent uptick in unemployment insurance claims filed by individuals recently terminated from federal service.

16. Because we have received no notice of federal RIFs, EDD has been required to dedicate significantly more staff, resources, and expenditures to fulfill our statutory mission.

17. Indeed, because we have not received advance notice of which agencies are

4

planning to conduct mass layoffs, we have been forced to rely on public reporting and word-of-mouth to conduct after-the-fact outreach to potentially affected workers. Reacting after a layoff is far more resource-intensive than the advance planning and assistance process required by law.

18. Instead, EDD staff have been dedicated to reacting to the latest layoff news, trying to respond to the increase in claims filed by former federal employees relating to affected federal agencies, provide information, and otherwise adjust procedures and resources to assist confused, newly unemployed Californians in a complicated and rapidly evolving environment.

19. As just one example of these efforts, EDD has been forced to expend resources to set up a dedicated telephone line for the narrow purpose of providing information about unemployment-related resources and services to displaced federal employees. This effort is a further attempt to provide resources and services, which could normally be targeted at specific personnel impacted in future layoff events, but must instead be provided less efficiently and at greater expense to the entire State because our personnel remain unaware of whether and when the next federal mass layoff event will occur.

20. In sum, with every day that goes by, EDD is devoting significant time, resources, and expense to react to the abrupt and material increase in workers subject to federal mass layoffs and make resources available to potentially affected individuals in new ways, all because federal agencies have failed to provide the legally required notice of mass layoffs.

**The Process for Obtaining Unemployment Insurance Benefits**

21. EDD also manages claims for unemployment benefits filed by individuals formerly employed to work in California.

22. The California Unemployment Insurance Code (CUIC) establishes California's unemployment insurance program, which generally provides insurance benefits to persons who

5

become unemployed through no fault of their own. Cal. Unempl. Ins. Code § 100 et seq.

23. As a general matter, the Federal Government is required to reimburse California for unemployment benefits provided to former federal employees. Specifically, California is party to an agreement with the United States Secretary of Labor wherein the Secretary shall pay, as an agent of the United States, Unemployment Compensation for Federal Employees ("UCFE") pursuant to 5 U.S.C. § 8502(a).

24. Pursuant to 5 U.S.C. § 8502(b), California is reimbursed for UCFE payments to federal employees in the same amount, on the same terms, and subject to the same conditions which would be payable to them under the California Unemployment Insurance Code.

25. Pursuant to Cal. Unempl. Ins. Code §§ 1251-1253.92, an individual in California who wishes to collect unemployment insurance benefits must file a claim and provide information to indicate the basis of the claim, the name of the claimant's previous employer, the reason for the separation, work experience, and other relevant information.

26. The reason for termination alleged by the claimant is then transmitted to the claimant's employer(s) for verification. The employer is asked to furnish a report of the separation from employment containing, *inter alia*, the reason for the employee's separation and a report of wage history. *Id.* at § 1327.

27. California law disqualifies some claimants from benefit eligibility depending on the circumstances of their separation from employment. *See, e.g.*, Cal. Unempl. Ins. Code § 1256. Disqualifying circumstances include, *inter alia*, voluntary separation without good cause, or termination for misconduct connected with the most recent work. *Ibid.*

28. If a determination involves a resolution of a dispute of material fact, the claims examiner must conduct a fact-finding interview after notice is provided to the employee and their

employer(s). *Id.* at § 1326. Thereafter, per federal Department of Labor guidelines, a written determination must be made within 21 days of the claimant's first certification, stating the result of the determination. *Id.* at § 1334; 20 C.F.R. § 650.4. That determination must be delivered to the claimant and the employer "promptly." Cal. Unempl. Ins. Code § 1334; 20 C.F.R. § 650.4. Pursuant to 20 C.F.R. § 650.4, if the initial determination is favorable to the claimant, payments must begin "promptly."

29. A claimant or an employer may file an administrative appeal within 30 days. Cal. Unempl. Ins. Code § 1328. Once the appeal is received, EDD reviews the information provided, then either makes a redetermination depending on additional information or transmits the appeal to the California Unemployment Insurance Appeals Board ("CUIAB"). CUIAB is responsible for scheduling the hearing for all parties, deliberating on the information presented in the hearing, and rendering a decision. CUIAB provides its decision to all parties, including EDD. EDD then takes any necessary and appropriate actions depending on the decision rendered by the Administrative Law Judge.

### Unemployment Benefits: Recent Experience and Investigatory Process

30. EDD's latest data indicates that 1,621 former federal employees have applied for unemployment benefits since February 1, 2025. This amounts to a 149 percent increase in claims made by former federal employees from February 2024, when EDD received 650 unemployment claims.

31. A worker is ineligible to receive unemployment benefits if they were terminated for misconduct connected with their most recent work. Cal. Unempl. Ins. Code § 1256.

32. When a claim is filed, a notice is mailed to the employer, allowing the employer the opportunity to respond or contest the reason for separation listed by the claimant. The

7

employer must indicate the reason for the separation, including whether the employee was fired for cause, such as misconduct. *Id.* at § 1327.

33. If the employer stated in its report of separation that an individual was terminated because "[their] performance has not been adequate to justify further employment at the Agency," EDD's procedures require that it must investigate the reason for termination.

34. The same EDD staff who handle regular unemployment claims also process disaster-related claims and adjudicate UCFE claims. Redirecting staff from handling disaster-related claims, including claims arising from the wildfires in Southern California, or regular UI claims to process and adjudicate UCFE claims threatens to strain our resources.

35. This diversion of personnel will undoubtedly impede the timely processing of UI claims filed in the ordinary course, creating significant backlogs and delays. The consequences will be far-reaching, affecting countless individuals who depend on swift resolutions to sustain their livelihoods. By diverting resources, we compromise the efficiency and responsiveness of our claims processing system, ultimately undermining public trust and exacerbating economic hardship.

36. If any federal agencies maintain the position that the terminated probationary employees were fired for cause, and are accordingly ineligible, at least in part, for unemployment benefits under California law, the employees' claims will have to be investigated.

37. As soon as EDD receives such an assertion, EDD will be required to follow its intensive and mandatory investigative process. And while designed to ensure fairness, the procedures impose a significant strain on EDD's financial and temporal resources. Each case requires a fact-finding proceeding that necessitates extensive staff hours for scheduling, conducting interviews, reviewing evidence, and drafting detailed decisions. The need to send

notices, accommodate witness testimony, and facilitate cross-examination further escalates the time commitment. Moreover, the potential for subsequent appeals triggers a cascade of additional hearings and reviews, diverting resources from other essential departmental functions.

38. The cumulative effect of these investigations translates to substantial expenditures on personnel, administrative overhead, and the technological infrastructure required to manage the burgeoning caseload, ultimately depleting the Department's budget and hindering its ability to address other critical labor-related issues.

39. Recent statements of the President and other federal officials have indicated that the majority of recent federal terminations were not for-cause firings, which would be based on individualized assessments of performance, but instead constitute a government-wide effort to shrink the size of the federal workforce, an effective RIF.

40. As a result, it is likely that the majority of recently terminated federal employees will in fact be eligible for state unemployment benefits because they were not terminated for cause.

41. However, the federal Government's pretextual claim that such terminations are for-cause will necessitate extensive and irreparable investigatory costs and resource expenditures by EDD as well as negatively impact former federal workers as they cannot receive benefit payments until EDD adjudicates their separation and finds the claimant eligible for benefits.

### Increased Costs Related to Unemployment Benefits

42. Finally, California will also bear increased costs in the form of unemployment benefits of former federal employees. While the federal Government is generally required to reimburse California for UCFE benefits, California must pay such benefits in the first instance, depleting the statewide trust fund that is supported by private employers in the state. Further, the

9

federal Government could deny California's request for reimbursement of benefits paid to former federal workers on the pretext that the workers were terminated for-cause.

43. Moreover, the U.S. Secretary of Labor has discretion to reimburse states for administrative costs required to conduct the state unemployment compensation program. 42 U.S.C. § 502(a). While California has been and continues to expend additional resources necessary to address the uptick in federal unemployment claims, it is thus entirely uncertain whether EDD's costs will be fully reimbursed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 4, 2025, at Sacramento, California.

_____
NANCY FARIAS WOMACK