# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,<br><br>Defendants. | Case No.: 1:25-cv- |

**DECLARATION OF MIREYA HURTADO**
**DEPUTY DIRECTOR OF THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY**

I, Mireya Hurtado, declare as follows:

1. I am a resident of the State of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed as the Deputy Director, Service Delivery of the Illinois Department of Employment Security ("IDES").

1

3. IDES is the department of the Illinois state government that administers state unemployment insurance benefits, runs the employment service and Illinois labor exchange system, and publishes labor market information.

4. As IDES Deputy Director, Service Delivery, I have access to comprehensive reports and financial records that detail the State of Illinois' labor market, including claims for unemployment insurance benefits, and the allocation and distribution of federal funding received by IDES. Additionally, my role includes overseeing the implementation of and compliance with federally funded programs within the agency, ensuring expenditures align with federal guidelines and regulations.

5. The ongoing mass-layoff of federal workers is irreparably harming the State of Illinois in several ways.

**Unemployment Assistance Process**

6. IDES manages claims for unemployment insurance benefits by individuals formerly employed to work in the State of Illinois.

7. The Illinois Unemployment Insurance Act ("UI Act"), 820 ILCS 405/100, *et seq.*, provides unemployment insurance benefits, over an extended period of time, to persons who become unemployed through no fault of their own and meet eligibility requirements. Benefits are funded through contributions made by Illinois employers to the Illinois Unemployment Insurance Trust Fund ("Trust Fund"). *Id.*

8. As a general matter, the federal government is required to pay for unemployment insurance benefits provided to former federal employees. Specifically, the State of Illinois is party to an agreement with the United States Secretary of Labor, under which the Secretary shall

pay, as an agent of the United States, Unemployment Compensation for Federal Employees ("UCFE") pursuant to 5 U.S.C. § 8502(a).

9. Pursuant to 5 U.S.C. § 8502(b), UCFE payments to federal employees are to be made in the same amount, on the same terms, and subject to the same conditions as would apply to them under the UI Act.

10. For unemployment insurance claims in general, an individual who wishes to collect benefits in Illinois must file a claim in accordance with the requirements of the UI Act and 56 Ill. Admin Code § 2712 through § 2920, generally. *See* 820 ILCS 405/700. Claimants may file claims online using the IDES system to initiate a claim and to provide information indicating the basis of the claim, the name of the claimant's previous employer, the reason for the job separation, work experience, and other relevant information. Notice of the claim is then transmitted to the claimant's former employer(s) for a response. The employer is asked to furnish information about the separation from employment and other information the employer wishes to provide.

11. Illinois law disqualifies some claimants from unemployment insurance benefits depending on the circumstances of their separation from employment. Disqualifying circumstances include, *inter alia*, discharge for misconduct and voluntary leaving, as defined by the UI Act. *See* 820 ILCS 405/601 and 602.

12. If an eligibility determination involves a resolution of a dispute of material fact, the claims adjudicator must conduct a predetermination fact-finding interview(s) after notice is provided to the employee and her employer(s). 820 ILCS 405/702; 56 Ill. Admin Code § 2720.135. Thereafter, a written initial determination must be made stating, *inter alia*, the weekly benefit amount, maximum benefits payable to the claimant in a benefit year, and the

reasons for the determination. 820 ILCS 405/702. That determination must be delivered to the claimant and the employer "promptly." *Id*. If the initial determination is favorable to the claimant, payments must begin "promptly." 820 ILCS 405/706.

13. A claimant or an employer may file an administrative appeal, generally within 30 days. 820 ILCS 405/800.

14. The unemployment insurance benefit amount a specific individual receives is generally based on their prior wages. Illinois businesses are required to report wages to the Department on a monthly and/or quarterly basis. 820 ILCS 405/1402. However, the federal government is not required to and does not report wages to the Department. As a result, for each claim that is filed by a former federal employee, staff must manually process the claim in order for the appropriate federal agency or agencies that employed the claimant to send the wage report to IDES.

**Unemployment Benefits Recent Experience and Investigatory Process**

15. IDES' data indicates that approximately 446 claims for unemployment insurance benefits have been filed by former federal employees in Illinois between January 19, 2025 and March 1, 2025 where the last date worked was after January 18, 2025.

16. During the entire calendar year of 2024, IDES data indicates that approximately 453 claims were filed by former federal employees for unemployment insurance benefits.

17. Each claim filed by a federal employee requires manual processing to obtain the wage records for that employee, work that is not required in regular unemployment insurance claims.

18. In addition, when an employer responds to a notice of claim to IDES, the employer indicates the reason for the separation, including whether the employee was discharged for cause, such as misconduct.

19. If an employer indicates in its response that an individual was separated due to performance issues, unspecified discharge, or voluntarily leaving, IDES procedures require that the claims adjudicator investigate the reason for separation.

20. Between February 2, 2025, and February 28, 2025, a substantial number of the responses from federal employers have indicated a performance issue, unspecified discharge, or voluntarily leaving.

21. As soon as we receive such a response, the Department is required to follow our intensive and mandatory investigative process, in addition to seeking wages from the federal employing agency as stated above. And while designed to ensure fairness, the procedures impose a significant strain on IDES' financial and temporal resources. Each case requiring a fact-finding proceeding necessitates extensive staff hours for scheduling, conducting interviews, reviewing evidence, and drafting detailed decisions. The need to send notices and accommodate witness testimony further escalates the time commitment. Moreover, the potential for subsequent appeals triggers a cascade of additional hearings and reviews. All of these activities divert resources from other essential departmental functions.

22. The same IDES staff who handle regular unemployment insurance claims also process and adjudicate UCFE claims.

23. The cumulative effect of these increased claims by federal workers and increased investigations is translating into substantial expenditures on personnel, administrative overhead, and the technological infrastructure required to manage the burgeoning caseload, ultimately

5

depleting the department's budget and hindering its ability to address other critical labor-related issues.

24. As the trends noted above continue, the diversion of personnel to handle UCFE claims will impede the timely processing of regular unemployment insurance claims, creating backlogs and delays. The consequences will be far-reaching, affecting countless individuals who depend on swift resolutions to sustain their livelihoods. By diverting resources, we compromise the efficiency and responsiveness of our claims processing system, ultimately exacerbating economic hardship for Illinoisans and undermining public trust.

25. Statements by the President and other federal officials have indicated that the overwhelming majority of recent federal terminations were not for-cause firings, based on individualized assessments of performance, but instead constitute a government-wide effort to shrink the size of the federal workforce; effectively, a reduction in force.

26. As a result, IDES anticipates that the overwhelming majority of recently-terminated federal employees will be eligible for state unemployment benefits because they were not terminated for cause and lost their jobs through no fault of their own.

27. However, the federal government's pretextual claims that terminations are for-cause or voluntary leaving will necessitate extensive and unrecoverable expenditures of resources by IDES.

**Expenditures Due to Federal Firings**

28. IDES has another statutory mission to: reduce reliance on public benefit systems such as unemployment insurance benefits; promote economic recovery and vitality by developing an ongoing, comprehensive approach to identify, plan for, and respond to layoffs and dislocations; and prevent or minimize the impact of mass layoffs on workers, businesses, and

communities. In direct and sole response to the federal firings and the increase in claims filed by former federal employees, IDES is expending increased resources to fulfill this responsibility.

29. To the best of IDES' knowledge, there has never been advance notice of which federal agencies are planning to conduct mass layoffs, or when. *See* 5 U.S.C. § 3502(d)(3)(A). Accordingly, we have been forced to rely on public reporting and word-of-mouth to conduct after-the-fact outreach to potentially affected workers.

30. Due to the increase in claims for UCFE benefits, and due to public reporting about ongoing and forthcoming federal layoffs, IDES staff around the entire State of Illinois were engaged to: develop a rapid plan of action; set up a specialized force of claims adjudicators and other staff to address and investigate the increased UCFE claims; create direct IVR call center queues for UCFE claimants; develop communications to federal employee claimants based on the unique circumstances of this mass firing; develop and present virtual weekly workshops for this distinctive group of individuals; and coordinate with other Illinois agencies to meet the specialized needs of these individuals.

31. Instead of performing their normal duties, staff have instead been dedicated to reacting to the latest layoff news, trying to identify affected federal agencies and ex-employees, provide information, and otherwise adjust procedures and resources to assist confused and unemployed workers in Illinois in a complicated and rapidly evolving environment.

32. As just one example of these efforts, Department staff created a new webpage, requiring significant time and expense. *See* https://ides.illinois.gov/unemployment/deferred-resignation-of-federal-employees.html. This effort was a further attempt to provide resources and services, which could normally be targeted at specific personnel impacted in future layoff events but must instead be provided less efficiently and at greater expense to the entire public, because

our personnel remain unaware of whether and when the next federal mass layoff event will occur.

33. Moreover, IDES has had to devote significant additional staff time from communications and policy staff to conduct broad-based outreach to try and identify recently-terminated employees and provide relevant resources and services. Such staff are normally engaged in creating guidance for stakeholders and general strategy around connecting employers to skilled workers and other affirmative efforts to help grow and support Illinois' job market.

34. In sum, every day that goes by, IDES is devoting significant time, resources and expense to simply try and identify workers subject to federal mass layoffs, conduct mass outreach, and otherwise make resources available to potentially affected individuals in new ways due to the mass layoffs, specifically because of the lack of any notice.

**Reimbursement of Costs**

35. Finally, the U.S. Secretary of Labor has discretion to reimburse states for administrative costs required to conduct the state unemployment insurance programs, including UCFE. 42 U.S.C. § 502(a). While IDES has been and continues to expend additional resources necessary to address the increase in federal unemployment insurance claims, IDES has no way to know whether in fact our costs will be fully reimbursed.

DECLARANT STATES NOTHING FURTHER.

Executed on March 4, 2025, at Springfield, Illinois.

MIREYA HURTADO
Deputy Director, Service Delivery
Illinois Department of Employment Security

8