# Exhibit H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE STATE OF MARYLAND; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE; et al.,<br><br>Defendants. | C.A. No. |

**DECLARATION OF PAOLO FRANZESE**

I, Paolo Franzese, declare as follows:

1. I am a resident of the Commonwealth of Massachusetts. I am over the age of 18 and have personal knowledge of all the facts stated herein or have knowledge of the matters based on my review of information and records provided to me by Executive Office of Labor and Workforce Development employees and I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the Executive Office of Labor and Workforce Development (EOLWD) as Undersecretary and Chief Operating Officer.

3. EOLWD works to support the Commonwealth's workforce by making available new opportunities and training, protecting the rights of workers, preventing workplace injuries and illnesses, providing temporary assistance when employment is interrupted, promoting labor-management partnerships and ensuring equal access to economic self-sufficiency and opportunity for all citizens of the Commonwealth. In addition, EOLWD is the secretariat

comprising the Department of Unemployment Assistance (DUA), MassHire Department of Career Services (MDCS), Department of Economic Research (DER), Department of Family and Medical Leave (DFML), Department of Industrial Accidents, Department of Labor Standards, Department of Labor Relations, and Department of Apprentice Standards. DUA administers the Commonwealth's unemployment insurance ("UI") program, MDCS oversees the state's career centers and related services, and DER supports economic research efforts—including Labor Market Information (LMI).

4. As Undersecretary/Chief Operating Officer, I oversee the DUA. As a result, I have access to comprehensive reports and records that detail the Commonwealth's LMI, including aggregate data regarding unemployment insurance claims. Additionally, my role includes oversight of the DFML, EOLWD's Information Technology (IT) systems, audit and compliance management, and other operations. I work collaboratively with EOLWD's departments, including the finance department, which disburses UI benefits on behalf of the DUA.

5. The ongoing mass-layoff of federal workers is irreparably harming Massachusetts in several ways.

**Rapid Response Team Expenditures**

6. In Massachusetts, services are provided to workers, jobseekers, and unemployment insurance claimants in accordance with federal and state laws and requirements, including the federal Workforce Investment Act of 1998, as amended by the federal Workforce Innovation and Opportunity Act of 2014. A state rapid response program is required by the federal Workforce Innovation and Opportunity Act, 29 U.S.C. § 3174(A)(2)(i).

7. The MDCS oversees Massachusetts's network of Career Centers and provides career services and training opportunities across the state. This includes aiding businesses in finding qualified talent, offering career services and referrals to jobseekers, and overseeing the state's Rapid Response program.

8. At its core, Rapid Response is an early intervention service provided at no cost to businesses and employees experiencing layoffs, downturns, or growth challenges in Massachusetts.

9. As relevant here, when a private employer with more than 100 employees contemplates a mass layoff, terminating 50 or more employees, the federal Worker Adjustment and Retraining Notification (WARN) Act imposes critical notice requirements. Specifically, the employer is required to notify certain groups, including State dislocated worker units, at least sixty days in advance of the layoffs, so that rapid response activities can be undertaken to ameliorate the negative effects of large unemployment events. 29 U.S.C. § 2101 *et seq.*

10. The purpose of Rapid Response is to reduce reliance on public benefit systems such as unemployment insurance; promote economic recovery and vitality by developing an ongoing, comprehensive approach to identify, plan for, and respond to layoffs and dislocations; and prevent or minimize the impact of mass layoffs on workers, businesses, and communities.

11. When notified of a forthcoming mass layoff, the Rapid Response team quickly mobilizes to provide informational resources and reemployment services for workers, including but not limited to: information and support for filing UI claims, information on the impacts of layoffs on health coverage or other benefits, information on and referral to career services, reemployment-focused workshops and services, and referrals to occupational training.

12. In addition, the Rapid Response team will contact affected businesses to collect, verify, and distribute pertinent information. Rapid Response will coordinate with state and local workforce area staff at the American Job Centers, also called MassHire Career Centers, located across the state.

13. The Rapid Response team also facilitates connections to partner agencies and organizations to ensure that terminated workers and their families can continue to access resources such as home heating assistance, legal aid, and financial advice.

14. I understand that, pursuant to 5 U.S.C. § 3502(d)(3)(A)(i), the federal government is similarly required to notify Massachusetts, or "the State or entity designated by the State to carry out rapid response activities under section 134(a)(2)(A) of the Workforce Investment Act of 1998" of a plan for a reduction-in-force (RIF) of federal employees, generally at least 60 days in advance of any proposed RIF.

15. To the best of my knowledge, neither EOLWD, including its constituent agencies, nor any other entity in the Massachusetts state government has yet received a notice of a federal reduction in force at any federal agency.

16. Yet, as detailed further below, Massachusetts has already received approximately 251 claims from terminated federal employees for unemployment benefits in February of 2025.

17. DUA has also seen a significant uptick of new unemployment claims from ex-federal employees just in the last few weeks, with 32 claims filed on February 24 alone. DUA is seeing and expects to continue seeing new claims filed every day.

18. Due to these increasing claims for unemployment benefits, and due to public reporting about ongoing and forthcoming federal layoffs, our Rapid Response team personnel have proactively contacted dozens of federal agencies and offices to ensure accurate information

is being provided and to seek information as to whether mass layoffs are being conducted currently or are being planned in the future. Similarly, the MDCS Rapid Response team has been fielding calls and meeting requests from concerned federal agencies, their representatives, and others. The U.S. Department of Health and Human Services, U.S. Department of Labor, the U.S. Department of the Interior, the U.S. Department of Treasury, the U.S. Department of Veterans Affairs, and others, all of whom have a significant presence in Massachusetts, have raised concerns regarding layoffs.

19. The Rapid Response team has not received any substantive information as to these federal agencies' plans for mass layoffs.

20. Because our Rapid Response team has received no notice of federal RIFs, despite extensive outreach, EOLWD has been required to dedicate significantly more staff, resources, and expenditures to fulfill its statutory mission.

21. Indeed, because EOLWD and its constituent agencies have not received advance notice of which agencies are planning to conduct mass layoffs, we have been forced to rely on public reporting and word-of-mouth to conduct after-the-fact outreach to potentially impacted individuals. Reacting after a layoff is far more resource-intensive than the advance planning and assistance process required by law.

22. This approach has ensured that those impacted by the layoffs have access to crucial information and assistance. However, the extensive work required to implement these initiatives has strained the departments' resources, while still trying to maintain effective levels of support in the face of ongoing challenges.

23. For instance, as referenced above, staff have conducted extensive proactive outreach to federal agencies and offices to try to determine the location and extent of upcoming layoffs.

24. Moreover, EOLWD and its constituent agencies have had to devote significant additional staff time from communications, policy, and legal staff to field questions from concerned stakeholders and legislators, conduct broad-based outreach to try and identify recently-terminated employees, and provide relevant resources and services.

25. Under normal circumstances, such personnel are engaged in creating guidance for stakeholders and general media strategy around connecting Massachusetts residents to jobs, growing apprenticeship programs, program and grant administration, and other efforts to help grow and support Massachusetts employers, workers, jobseekers, and more broadly the Massachusetts economy.

26. However, such staff have instead been dedicated to reacting to the latest layoff news, developing resource guides and fact sheets, trying to identify affected federal agencies and ex-employees, provide information, and otherwise adjust procedures and resources to assist confused and recently unemployed Massachusetts residents in a complicated and rapidly evolving environment.

27. Since February 3, 2025, this has included reallocation of work for approximately seven MDCS staff members on the Rapid Response team. Specifically, this has meant diverting staff from other important work for a combined total of at least 25 to 30 hours per week over the last five weeks. This level of effort is expected to continue—if not increase—across the Rapid Response team. Services provided to affected federal employees by the Rapid Response team so far in 2025 have included but are not limited to: resume support; one-on-one meetings and career

counseling; providing information regarding use of LMI and how it can be useful in job search; and providing information about available resources, including MDCS Career Center services, and referrals to other internal and external resources.

28. In addition to the Rapid Response team staff time already being dedicated to these efforts, if work continues at this pace, MDCS staff not currently on the Rapid Response team will be diverted from other critical career services programs.

29. The Rapid Response team is also responsible for processing WARN notices for Massachusetts companies affected by layoffs.

30. Other EOLWD and MDCS resources have been supporting Rapid Response efforts, but if federal layoffs continue at their current pace, MDCS resources will need to be cross-trained to support increased Rapid Response programming, diverting staff from other critical career services programs across the state.

**Unemployment Assistance Process**

31. The Massachusetts unemployment insurance program, which is certified by the U.S. Secretary of Labor under 42 U.S.C. § 502(a) and administered by the Massachusetts Department of Unemployment Assistance, provides for payment of UI benefits for eligible claimants in Massachusetts. Specifically, DUA provides temporary payments for up to twenty-six weeks to eligible workers who lose their job through no fault of their own, are able and available to work, and actively searching for a job while receiving benefits. Such benefits are administered pursuant to Chapter 151A of the Massachusetts General Laws.

32. As a general matter, the federal government is required to reimburse Massachusetts for unemployment benefits provided to former federal employees. Specifically, Massachusetts is party to an agreement with the U.S. Secretary of Labor, wherein the Secretary

shall pay, as an agent of the United States, Unemployment Compensation for Federal Employees ("UCFE") pursuant to 5 U.S.C. § 8502(a).

33. Pursuant to 5 U.S.C. § 8502(b), Massachusetts is reimbursed for UCFE payments to federal employees in the same amount, on the same terms, and subject to the same conditions which would be payable to them under Chapter 151A of the Massachusetts General Laws.

34. In addition, DUA administers its federal-state cooperative unemployment insurance program financed in large part by federal administrative grants pursuant to the Social Security Act. 42 U.S.C. §§ 501-503.

35. An individual in Massachusetts who wishes to collect UI benefits must file a claim in accordance with DUA's statutory and regulatory requirements.

36. Claimants file claims using DUA's online UI system to establish a claim initially and to provide information to indicate the basis of the claim, the reason for separation from employment, the name of the employer, work experience, and other relevant information. G.L. c. 151A, § 38.

37. The reason for termination alleged by the claimant is transmitted to the claimant's employer for verification. The employer is asked to furnish a report of the separation from employment containing, *inter alia*, the reason for the employee's separation and a report of wage history. G.L. c. 151A, §§ 38, 38A.

38. Massachusetts law disqualifies some claimants from benefits depending on the circumstances of their separation from employment or their failure to comply with state requirements, for example, to continue to seek suitable employment while collecting unemployment insurance benefits. *See* G.L. c. 151A, § 25. In addition to failing to comply with

technical filing and registration requirements, disqualifying circumstances include termination for deliberate misconduct in willful disregard of the employer's interest. *Id.*

39. DUA adjudicators are charged with making initial determinations on claims. G.L. c. 151A, § 39.

40. A claimant or an employer who disputes a determination on a UI claim may file an appeal within ten calendar days of notification. Following such an appeal, a hearing is held by a DUA review examiner. For a second level of review, appeals may be made to the Board of Review within thirty days of the mailing of a hearing decision. The three-member Board of Review is administered independently of the DUA and has the authority to uphold, reverse, or modify, a review examiner's decision. Parties may appeal decisions by the Board of Review to a Massachusetts District Court or Boston Municipal Court within thirty days of the mailing of the Board's decision. G.L. c. 151A.

**Unemployment Benefits Recent Experience and Investigatory Process**

41. EOLWD's latest data indicates that 251 former federal employees have applied for unemployment benefits since January 21, 2025.

42. This data also shows that 86 of these individuals were formerly employed by the U.S. Department of Treasury, 26 by the U.S. Department of the Interior, 22 by the U.S. Department of Transportation, 21 by the U.S. Department of Agriculture, and 18 by the U.S. Department of Veterans Affairs. To-date, in February alone, former employees from thirty-five federal agencies or entities have filed to collect UI benefits in Massachusetts.

43. The number of UCFE claims in Massachusetts has increased significantly, beginning on or around February 9, 2025.

44. In fact, the number of federal unemployment claims and inquiries received by the DUA in February of 2025 is significantly higher than past years.

45. By way of example, in February 2024, DUA received 58 total federal UI claims. So far, in February 2025, DUA has received 251. The total volume of claims for February 2025 is expected to be higher still because eligible claimants can still file UI claims with a separation date in February.

46. Claimants must indicate the reason for their separation from employment in their UI applications. In Massachusetts, many recently separated federal workers are reporting either lack of work (due to a reorganization or restructure) or discharge for job performance (if performance is cited in the dismissal as the reason for separation). Under Massachusetts law, poor job performance alone does not automatically disqualify someone from benefits. See G. L. c. 151A, § 25(e)(2).

47. When an employer replies to DUA fact-finding with information related to a separation, the employer is asked to provide the reason for the separation, including whether the employee was fired for cause, such as deliberate misconduct in willful disregard of the employer's interest.

48. Every eligibility determination at the DUA is made on a case-by-case basis. When there is a dispute of material fact between the employer and the claimant, such as whether a termination was for cause, an adjudicator sends a written notice notifying the parties of fact-finding and conducting a proceeding in which the parties can offer evidence. Thereafter, the adjudicator drafts a written decision and delivers it to the parties.

49. Each case demanding a fact-finding proceeding necessitates extensive staff hours for scheduling, conducting interviews, reviewing evidence, and drafting detailed decisions. The

need to send notices, accommodate witness testimony, and facilitate cross-examination further escalates the time commitment.

50. The cumulative effect translates to substantial expenditures on personnel, administrative overhead, and technological infrastructure, at a time when DUA is preparing to launch a new online unemployment system.

51. From that point, either party may initiate the administrative appeals process described above.

52. Recent statements of the President and other federal officials have indicated that the overwhelming majority of recent federal terminations were not for-cause firings, based on individualized assessments of performance, but instead constitute a government-wide effort to shrink the size of the federal workforce, an effective reduction in force.

53. As a result, it is likely that the overwhelming majority of recently-terminated federal employees will in fact be eligible for state unemployment benefits, because they were not terminated for cause.

54. However, the federal government's claim that such terminations are for-cause will necessitate extensive investigatory costs and resource expenditures by EOLWD.

Executed on March 5, 2025, at Boston, Massachusetts.

_____
Paolo Franzese, Esq.
Undersecretary & Chief Operating Officer