# Exhibit B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL., <br><br> Defendants. | Case No.: 1:25-cv-00748-JKB |

## DECLARATION OF LILIANA CAETANO BACHELDER

I, Liliana Caetano Bachelder, declare as follows:

1.  I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2.  I am the president of the Foreign Agricultural Service Employees, Local 3976, District Council 20, American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME Local 3976"). AFSCME Local 3976 is affiliated with AFSCME District Council 20. District Council 20, through its constituent local unions like Local 3976, represents federal civilian employees in agencies and departments across the federal government. I have served as president of Local 3976 since January 2021.

3.  Before becoming the local union president, I have been employed as an International Trade Specialist for the U.S. Department of Agriculture's ("USDA") Foreign Agricultural Service in the Foreign Affairs Program. The Foreign Agricultural Service ("FAS") is the foreign affairs arm of the USDA. Its primary mission is to open trade in other countries

and assist farmers and producers in the United States to export their agricultural products abroad. In other words, our agency helps farmers and producers in the U.S. grow and thrive by opening foreign markets to American agricultural products. I have been employed with the Foreign Agricultural Service for 31 years.

4. AFSCME Local 3976 represents a bargaining unit of approximately 400 civil servants who work for the Foreign Agricultural Service in the Washington, D.C. metropolitan area. These employees include International Economists, International Trade Specialists, Nutritionists, Trade Policy Analysts, International Science Advisors, Technical Assistance Specialists, International Market Specialists, and others.

5. AFSCME Local 3976 represents the interests of the USDA's Foreign Agricultural Service nonsupervisory civil servants. Our core functions include providing support, guidance, and resources to bargaining unit employees as their officially recognized exclusive representative.

6. As the exclusive representative for the nonsupervisory Foreign Agricultural Service civil servants, AFSCME Local 3976 enters into collective bargaining negotiations with the USDA on a wide variety of terms and conditions of employment and represents bargaining unit members through the negotiated grievance process.

7. AFSCME Local 3976 and the USDA, Foreign Agricultural Service are parties to a collective bargaining agreement that memorializes negotiated terms and conditions of employment, benefits, rules, a grievance procedure and other procedures of the workplace.

8. Early on Friday, February 14, 2025, bargaining unit members who are probationary employees began notifying the union by phone, email and text messages that the USDA sent these employees emails containing, as an attachment or within the body of the email,

a letter to each employee terminating their employment, effective February 13, 2025, at 7:00 p.m. eastern time. The emails to affected employees were sent to employees late at night on February 13 between approximately 8:00 p.m. and approximately 2:00 a.m. on February 14. A true and correct copy of an exemplar of one of these notices is attached hereto as Exhibit 1.

9. The letter to employees titled "Notification of Termination During Probationary Period" explained to the affected probationary employees that they were being removed from their position during the "probationary/trial period." The letter further states that the USDA finds that "based on your performance, further employment at the Agency would be in the public interest." The letter is signed by USDA Chief Human Capital Officer, Myrna Matherly. I have seen several employees' termination notices from our bargaining unit, and they were all identical.

10. To date, twenty-two (22) Foreign Agricultural Service probationary employees and AFSCME Local 3976 bargaining-unit members were terminated. However, AFSCME Local 3976 does not currently know the scope of the terminations of probationary employees within its bargaining unit as the USDA did not provide the union advance notice of the terminations or provided the union with a list of all affected probationary employees. The USDA has yet to respond to a formal information request from the Union for the list of affected probationary employees in the local's bargaining unit.

11. Since the termination letters were sent to affected employees, the union has been flooded with emails, texts, and phone calls from affected employees and other bargaining unit members who are devastated and are concerned about their livelihoods and the mission of their agency. Affected employees have contacted the union to seek information, guidance, explanations of their rights, and legal advice.

12. Affected probationary employees were blindsided by the termination letter and are desperately trying to figure out how they will pay for their basic needs such as health insurance, housing, and childcare. Some of the probationary employees who were terminated had barely started their federal careers and are among the lowest paid USDA members in entry level positions. These bargaining unit members moved to Washington, D.C., one of the most expensive cities in the country, to work in the public service and are now left with financial obligations that they cannot afford due to the job loss.

13. Affected employees are devastated and stressed by the negative impact of terminations on their lives and the lives of their families. Affected employees are looking to their union to protect them and to provide information on their benefits, such as the process to continue healthcare coverage or how to apply to unemployment insurance, and their legal rights. Some of this information should have been provided by the agency, but it has failed to provide clear guidance on the employee's loss of benefits and what to do next concerning their separation from federal service. The union has had to research information that in normal circumstances would have been provided by the agency concerning the continuation or loss of benefits to provide to members and has been forced to seek legal advice and resources from District Council 20 and AFSCME International Union on member's legal rights.

14. The Union continues to respond to a deluge of calls, texts, and email from bargaining unit members. Members are asking about information on continuation of health benefits; how to obtain their personnel documents and forms that are needed to apply for unemployment insurance and other benefits; the effect of the termination for "performance" on their eligibility for unemployment insurance or future job prospects; why they are not receiving information and guidance from the agency. The Union is providing almost daily updates by

emails to the entire bargaining unit about what we know and can share about potential legal actions to challenge the mass terminations and to provide any information and guidance that is relevant to their termination or loss of benefits. The Union is also hosting town hall meetings with the members to discuss their concerns and share information.

15. Since the USDA terminated probationary employees, the Union has had to divert virtually all of its time and resources to engage with the membership on this issue and address their concerns. Since the terminations of probationary employees at the Foreign Agricultural Service, I have been spending at least 9 hours per day addressing the termination of probationary employees and responding to and assisting affected employees and other bargaining unit members who are concerned about the future of their employment. I have also had to work on my days off and on the weekends to talk to affected employees, address their concerns, and coordinate with the local's executive board on the strategy to protect our members. The local's vice president and chief steward currently work full-time jobs for the Foreign Agricultural Service. These local officers must use the Union's limited union "official time" bank to work on this issue during the workday if their workload permits or work on these issues during their time off. They have worked several hours each day either on union official time or after hours help our affected members. This representational work for the Union is only increasing because of the chaos caused by the mass terminations for all employees in the bargaining unit. Even non-probationary employees in the bargaining unit are now terrified of opening their emails to find they are immediately terminated and are reaching out to the Union for assurances or guidance which we cannot provide given the agency's lack of transparency on employee terminations.

16. The substantial increase in emails, phone calls, text messages, and requests for counseling concerning the termination of probationary employees has diverted resources and

time that the union dedicates to its mission of advocating and negotiating for improved workplace conditions, organizing new members, representing employees, and the administrative tasks to maintain the union. For example, the entire union executive board and stewards have had to drop their non-urgent representational work to research the impact of the terminations and to counsel employees.

17. Affected employees are particularly worried about how the termination letter, which states they were terminated for "performance" reasons, will impact their future job prospects. Many affected employees have told the Union that they believe that the terminations were not based on inadequate performance because they have received excellent performance evaluations, awards, or commendations and their performance had never before been questioned. One probationary employee who corresponded with the signatory of the termination letter, Myrna Matherly, questioned the letter's representation that their termination was based on performance and challenged the agency manager to produce any negative performance evaluation. In this correspondence the employee asked if their good performance evaluations were a factor in their termination. Ms. Matherly responded that they were not, and that the language used in the termination letter was provided by OPM for all terminations of probationary employees across the federal government.

18. Affected bargaining unit members are living in fear of how they will be able to financially provide for their families and this is affecting their mental and physical health. None of the affected employees have received their SF-50 form that documents the termination and allows employees to seek benefits such as unemployment insurance. The USDA has told some affected employees that they must wait weeks to get the form because they were hired in the

middle of a pay period and must wait for the current pay period to end before processing the forms.

19. The termination of probationary employees has affected very talented and committed public sector workers and veterans. The USDA could not possibly justify their termination based on inadequate "performance."

20. One such employee was an International Economist with the Foreign Agricultural Service, hired under the prestigious and highly competitive Presidential Management Fellows ("PMF") program. The PMF Program is a leadership development program that recruits and trains future government leaders that transition to the federal service after a two-year probationary period. This affected employee is also a veteran, having served for five years as a Navy corpsman assigned to the Marine Corps to provide medic services during two deployments in Iraq and Southeast Asia. As an International Economist for the Foreign Agricultural Service, this employee did analytical work concerning the imposition on tariffs placed on U.S. agricultural products or work engaged in trade facilitation when U.S. agricultural products are impeded from entering a market abroad for various reasons, including retaliatory tariffs. His role was to facilitate the trade of U.S. agricultural products in foreign markets that benefited U.S. farmers and agricultural product producers. On the morning of February 14, 2025, this employee received the probationary employee email termination notice notifying his that his termination was effective the day prior. He was subsequently locked out of all USDA systems and lost access to his personnel documents, such as past performance evaluations and other personnel documents. This news was devastating to the employee, who had to immediately figure out how he would financially provide for his family, including his young son. He thought he was protected as a veteran, by his status as a PMF fellow, and by his outstanding performance. He

feels betrayed by the government because he went to bat for this country as a soldier serving two overseas deployments, but the government did not go to bat for him. He stated that if the agency had actually done an individualized review of his performance, it would have concluded that his performance was exemplary. He is currently having trouble filing for unemployment insurance because he has not received the SF-8 or SF-50 forms from his employer required to file for unemployment. He must move from his apartment to find more affordable housing and is thinking of using credit or his retirement savings to cover living expenses while he searches for another job. This affected employee is concerned with the mission of the agency to open and develop trade in other countries and assist farmers and producers in the Unites States to export their agricultural products abroad because so many smart and talented people, including other PMF fellows, who do critical work for the agency were terminated without cause. Without the dozens of employees who have been terminated that provide very specialized expertise to the mission of the agency, the Foreign Agricultural Service will have a harder time keeping up with trade barriers, leading to missed market opportunities and unchallenged restrictions that put U.S. farmers and exporters at a disadvantage. Fewer staff also means weaker relationships between U.S. farmers and international buyers, slowing export growth and cutting into U.S. farmer incomes.

21. Another probationary employee was terminated with only 23 days left in her probationary period. Prior to joining the USDA, this employee worked with small-scale farmers and policy makers for over 30 years helping to balance natural resources management with economic and social objectives. This employee served as a technical expert to hundreds of small American farms and previously worked for the USDA as a contractor for more than a decade. This employee is highly qualified and holds a BSFS in Economics of Development from

Georgetown University, and an MS in Agroecology from University of Florida. In this final phase of her career, she decided to rejoin the USDA as a federal employee and bring her extensive experience to the Foreign Agricultural Service. In her role as Agricultural Science Advisor she addressed trade barriers so that U.S. farmers and product makers have access to overseas markets, and to assist if shipments were stuck at foreign ports. When terminated, she was helping a U.S. BBQ sauce maker get an ~$250,000 shipment into the European Union; since the EU changed in regulations in November, U.S. exporters have been unable to meet the new EU requirements. During this time, this employee was also working vigorously to prevent significant trade losses to American farmers resulting from impending regulations in a country that is one of our top 10 recipients of agricultural exports. The EU has announced its intent to alter how shipments are inspected and documented, and if U.S. producers aren't prepared, the trade losses to U.S. dairy, meats/poultry/pork, soybeans, grains, and processed vegetables sectors could reach ~$3 billion. When fired, this employee was collaborating with the US Trade Representative and the U.S. Embassy (in-country), analyzing which sectors would be affected first, which would be affected worst, and how to navigate the situation. When this employee received the termination email on February 14, 2025, she immediately called her supervisor, who was unaware of the mass terminations of probationary employees. The email stated that the employee was being fired for performance despite having a fully successful performance review. This employee must now take her highly specialized experience and education that has benefited U.S. farmers and the public elsewhere.

22. The terminations at our agency have been completely haphazard, even affecting employees who are not actually probationary. For example, one of our members, who is not a probationary employee, notified the Union that the USDA terminated her as a probationary

9

employee. This termination has negatively impacted her in many ways, including significant stress on her physical and mental health, as well as financial hardship. As a single mom, losing her sole source of income has been devastating. On Friday, February 13th at 8:47pm, she received an email from HR with an attached notice titled "Termination during Probationary Period." The termination notice stated that "[t]he attached notice of termination is based on your probationary status." The letter incorrectly stated that she was still within her probationary period and falsely stated that her termination was based on "performance." In fact, this employee's probationary period had ended nearly a year ago, on March 13, 2024. Moreover, in the last two years this employee has received two cash awards for her excellent performance. Additionally, in 2023, she received an award for "expanding U.S. agriculture exports through trade supporting initiatives." The affected employee immediately contacted the USDA's Human Resources Department ("HR") and the Union about this egregious mistake. The last message she received from HR was: "We have reviewed the job announcement and final job offer and found that it had been erroneously announced and you were appointed to a competitive service term appointment instead of the Schedule B, excepted service appointment, as intended. As such, you will not be terminated as a probationary employee as required by the new Administration guidance. However, this notices you that you will be receiving a letter that your term appointment will not be extended." As of today, this employee is still unsure of her employment status and living under constant stress and anguish. She has had to nearly deplete her savings so she can pay her rent 3 months in advance while she looks for another job, and she must consider leaving the DC area so she can secure employment before she run out of resources to support herself and her daughter.

23. Members of the USDA FAS bargaining unit pay voluntary membership dues to the union, which is the union's overwhelming source of operational funding. The union's budget will be negatively impacted because of the loss of dues due to the terminations of probationary employees, and its bargaining power will be diminished because of the loss of members.

24. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on March 19, 2025, in Arlington, VA.

                                                                                                               */s/ Liliana Caetano Bachelder*
                                                                                                              Liliana Caetano Bachelder*

                                                                                                              *A copy of the signature page bearing an original signature is attached hereto.

23. Members of the USDA FAS bargaining unit pay voluntary membership dues to the union, which is the union's overwhelming source of operational funding. The union's budget will be negatively impacted because of the loss of dues due to the terminations of probationary employees, and its bargaining power will be diminished because of the loss of members.

24. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on March 19, 2025, in Arlington, VA.

*Liliana C. Bachelder*
Liliana Caetano Bachelder

Exhibit 1



United States Department of Agriculture

Farm and Foreign Agricultural Services

Foreign Agricultural Service

Human Capital Management Division
Washington, DC 20250

March 14, 2024

**MEMORANDUM FOR:** 

**FROM**          M. LYNN MATHERLY
                CHIEF HUMAN CAPITAL OFFICER

**SUBJECT"**      **NOTIFICATION OF TERMINATION DURING PROBATIONARY PERIOD**

**REFERENCES:**    5 U.S.C. § 7511
                      5 U.S.C. § 3321(a)
                      5 U.S.C. §2102
                      5 CFR §212.101
                      5 C.F.R. §§ 315.803, 315.804, and 315.806
                      Departmental Regulation 4020-250-1

This is to provide notification that the Agency is removing you from your position of ▉▉▉▉ ▉▉▉▉▉ and federal service consistent with the above references.

On 9/22/2024, the Agency appointed you to the position of ▉▉▉▉▉▉▉▉▉▉. As documented on your appointment Standard Form 50 (SF-50), your appointment is subject to a probationary/trial period. The agency also informed you of this requirement in the job opportunity announcement for the position.

Guidance from the Office of Personnel Management ("OPM") states, "An appointment is not final until the probationary period is over," and the probationary period is part of "the hiring process for employees."[1] "A probationer is still an applicant for a finalized appointment to a particular position as well as to the Federal service."[2] "Until the probationary period has been completed," a probationer has "the burden to demonstrate why it is in the public interest for the Government to finalize an appointment to the civil service for this particular individual."[3]

The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest. For this reason, the Agency informs

---

[1] OPM, *Practical Tips for Supervisors of Probationers*.
[2] *See* U.S. Merit Systems Protection Board Report to the President and Congress, *The Probationary Period: A Critical Assessment Opportunity* (August 2005)
[3] *Id*.



you that the Agency is removing you from your position of ███████████████████████ with the Agency and the federal civil service effective February 13, 2025, at 7:00 PM Eastern Time.

You may have a right to file an appeal with the Merit Systems Protection Board (MSPB) on the limited grounds set forth in 5 C.F.R. § 315.806. Any such appeal must be filed within 30 days of the effective date of this decision or 30 days after the date of your receipt of this decision, whichever is later. You should review MSPB regulations at 5 C.F.R. §§ 1201.14 and 1201.24 for instructions on how to file an electronic appeal and content requirements of the appeal, respectively. For more information, please visit www.mspb.gov or contact your local MSPB regional or field office at:  Washington DC Regional Office, 1901 S. Bell Street, Suite 950, Arlington, Virginia 22202 or washingtonregionaloffice@mspb.gov.

We appreciate your service to the Agency and wish you the greatest of success in your future endeavors.  If you have any questions, please contact TFAA-FAS-CHCO@usda.gov.


M. Lynn Matherly
CHIEF HUMAN CAPITAL OFFICER