Exhibit N

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE OF MARYLAND, *et al.*,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, *et al.*,

    Defendants.

C.A. No.

## DECLARATION OF KIMBERLY BREITMEYER

I, Kimberly Breitmeyer, declare as follows:

1. I am a resident of the State of Michigan. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the Michigan Unemployment Insurance Agency (MUIA) as Legal Advisor and Legal & Compliance Bureau Administrator.

3. The MUIA is responsible for providing unemployment benefits to Michigan workers who have lost their job through no fault of their own.

4. As Legal Advisor and Legal & Compliance Bureau Administrator, I have access to reports and claimant records that detail the federal employees with workstations in Michigan who have filed a claim for unemployment benefits. I also oversee the implementation and

1

compliance of federally funded programs within the MUIA, ensuring certain expenditures align with federal guidelines and regulations.

5. The ongoing mass termination of federal workers is irreparably harming Michigan in several ways.

6. To the best of my knowledge, the federal departments involved in the reduction of workforce have not provided the MUIA with any notice concerning the mass terminations. Historically, the federal employer provides its employees with a Standard Form 8 (SF 8 - Unemployment compensation for Federal Employees (UCFE) Program Notice to Federal Employee About Unemployment Insurance). The SF 8 provides pertinent information that the MUIA needs to timely process the employee's claim for benefits and avoid unintended errors. For example, the SF 8 provides the precise name of the employer, including its Federal Identification Code (FIC) which is used to request wages. The MUIA shall request but shall not require an employee who is applying for benefits to submit their base period employer's unemployment account number or federal employer identification number. Mich. Comp. Laws § 421.28(8). Without the FIC, the employee is left to select what they think is the name of the employer; often the employee is incorrect, which results in the wage request being sent to the incorrect federal department. This results in a delay in processing the claim for benefits and a delay in remitting payment of the benefits by anywhere from two to four weeks. Further, the lack of a SF 8, a claim for benefits may be monetarily denied due to misidentification of the employer type and name, resulting in claimant having to use the protest process. In short, claimants could be denied benefits simply because they are unaware of the proper FIC maintained by the employer and necessary to file an allowed monetary claim.

7.     Additionally, to the best of my knowledge, the federal departments that are terminating staff have also not provided those employees with the Standard Form 50 (SF 50 - Notice of Personnel Action), which provides the reason for separation. This information is used by the MUIA to determine eligibility for unemployment benefits. If the claimant provides the separation reason and that reason is wrong, this leads to creation of unnecessary issues to address separation and thereafter could lead to the employer filing a protest and thus a delay in providing a claimant with necessary benefits.

8.     As detailed more below, the MUIA is seeing an increase in claims for unemployment benefits filed by ex-federal workers, who had workstations located in Michigan. As of last week, the MUIA has allowed 130 claims for benefits and has 171 benefit claims pending wage information from the federal employers. Again, without the FIC, the MUIA must rely on the employee's information or conduct its own investigation where the employee does not have the proper federal department. This is resulting in time delays with a few hundred claims. These delays will only increase with the increase in number of benefit claims filed in the weeks and months to come.

9.     Generally, the Michigan Employment Security (MES) Act (Mich. Comp. Laws § 421.1, *et seq.*), enacted in 1936, provides insurance benefits, over an extended period of time, to persons who become unemployed through no fault of their own.

10.    As a general matter, the federal Government is required to reimburse Michigan for unemployment benefits provided to former federal employees. Specifically, Michigan is party to an agreement with the United States Secretary of Labor, wherein the Secretary shall pay, as an agent of the United States, Unemployment Compensation for Federal Employees (UCFE) under 5 U.S.C. § 8502(a).

11. Under 5 U.S.C. § 8502(b), Michigan is reimbursed for UCFE payments to federal employees in the same amount, on the same terms, and subject to the same conditions which would be payable to them under Michigan Unemployment Compensation Law.

12. In addition, the MUIA administers its federal-state cooperative unemployment insurance program financed in large part by grants from the federal government pursuant to the Social Security Act. 42 U.S.C. §§ 501—503.

13. The Michigan Unemployment Insurance Compensation Program, certified by the U.S. Secretary of Labor under 42 U.S.C. § 502(a), provides for payment of insurance benefits for up to twenty (20) weeks to persons who find themselves unemployed through no fault of their own. Mich. Comp. Laws § 421.27(d). [This statute was recently amended to allow for the payment of benefits for up to twenty-six (26) weeks, effective April 2, 2025.]

14. Pursuant to Mich. Comp. Laws § 421.32(a), an individual in Michigan who wishes to collect unemployment insurance benefits must file a claim in accordance with promulgated administrative rules and procedures adopted by the MUIA.

15. Claimants file claims online using the MUIA's claimant system to assert a claim initially and to provide information to indicate the basis of the claim, the name of the claimant's previous employer, the reason for the separation, work experience, and other relevant information. Mich. Comp. Laws § 421.28(1)(a); § 421.32(a); Mich. Admin. Code, R. 421.205(1) and 421.208(1).

16. The reason for separation, along with other pertinent information alleged by the claimant, is then transmitted to the claimant's employer(s) for notification of the filing (i.e., a monetary determination). Mich. Comp. Laws § 421.32(b); Mich. Admin. Code, R. 421.205(1). The employer may dispute the contents of the monetary determination, including but not limited

4

to, the reason for the separation, the reported wages earned, etc. Mich. Comp. Laws § 421.32(b); Mich. Admin. Code, R. 421.205(2).

17. Michigan law disqualifies some claimants from benefits depending on the circumstances of their separation from employment. *See* Mich. Comp. Laws § 421.29–29a. Disqualifying circumstances include termination for misconduct, aggravated misconduct, and gross misconduct. *Id.*

18. A claims examiner at the MUIA is charged with making an initial determination on the claim. Mich. Comp. Laws § 421.32(a).

19. If a claimant is determined to be monetarily eligible, if the claimant's most recent base period or benefit year separation was for a reason other than "lack of work," the agency shall issue a determination regarding non-monetary eligibility. Mich. Comp. Laws § 421.32(c).

20. If a determination involves the resolution of a dispute of material fact, the claims examiner must investigate by issuing a request for information to the employee and her employer(s). Mich. Comp. Laws § 421.32(d). Once that disputed issue is resolved, a determination must be delivered to the claimant and the employer "promptly." Mich. Comp. Laws § MCL 421.32(a). If the determination is favorable to the claimant, payments must begin "promptly."

21. A claimant or employer may file an administrative appeal within 30 days. Mich. Comp. Laws § 421.32a(1). If no appeal is filed, the MUIA may redetermine the eligibility, benefit amount, maximum benefits payable, and the decision to recover an overpayment on its own motion. Mich. Comp. Laws § 421.32a(2). If a redetermination is made, the MUIA must send notice of the redetermination to the claimant and an employer entitled to notice. Mich. Comp. Laws § 421.32a(2). A redetermination is final unless an appeal is filed, and such appeals

may proceed through administrative and then judicial review. Mich. Comp. Laws § 421.32a(3); § 421.33(1); § 421.34(2); § 421.38(1), (4).

22. The UIA's latest data indicates that approximately 300 former federal employees have applied for unemployment benefits since January 21, 2025.

23. When an employer provides the initial report of separation to the MUIA, the employer must indicate the reason for the separation, including whether the employee was fired for cause, such as misconduct. If the Agency does not receive the appropriate notice with the separation reason, it relies on the claimant's reason for separation. Later, when the federal department provides the separation information on the Agency's Form 931, the issue may need to be reconsidered resulting in a delay in processing the claim. For example, some claimants are claiming their separation as "fired." While not required to apply for unemployment benefits, some individuals have attached in their application their letter of employment termination from the federal government. Such letters indicate that these individuals were probationary employees purportedly terminated for cause. Some of these claimants chose "fired" for the separation; but the UIA Form 931 (asking for the reason for separation) from the federal department indicates: "PERMANENT LACK OF WORK DUE TO CHANGE IN PRESIDENTIAL ADMINISTRATION RECENT EXECUTIVE ORDERS REQUIRED THE AGENCY TO TERMINATE THE EMPLOYEE." This separation reason now requires the MUIA to reconsider its original decision based on "fired" and issue a nonmonetary redetermination with the corrected information.

24. When there is a dispute of material fact between the employer and the claimant, such as whether a termination was done for cause, the claims examiner must send a written notice to the claimant and the employer notifying them of a fact-finding process in which the

parties can offer evidence for the MUIA to rely on in making its decision. Mich. Comp. Laws § 421.32(a), (d).

25. Thereafter, the claims examiner must issue a written decision on the issue and deliver it to the parties. Mich. Comp. Laws § 421.32(a). From that point, either party may initiate the administrative appeals process, which consumes a great deal of time and the administrative resources of an administrative law judge and Appeals Commission members who must conduct contested case hearings, deliberate over arguments, and draft decisions.

26. This diversion of personnel will undoubtedly impede the timely processing of regular UI claims, creating significant backlogs and delays. The consequences will be far-reaching, affecting countless individuals who depend on swift resolutions to sustain their livelihoods. By diverting resources, we compromise the efficiency and responsiveness of our claims processing system, ultimately undermining public trust and exacerbating economic hardship.

27. While the MUIA is only beginning to process these claims, our staff has already begun the process of contacting relevant federal departments to request information concerning separation.

28. I anticipate, however, that given the inconsistent position between the termination letters and USDA's report, and the consistency of the termination letters across agencies, at least some federal agencies will maintain their position that the terminated probationary employees were fired for cause, and are accordingly ineligible, at least in part, for unemployment benefits under Michigan law.

29. As soon as we receive such an assertion, the MUIA will be required to follow our intensive and mandatory investigative process. And while designed to ensure fairness, the

procedures impose a significant strain on the MUIA's financial and temporal resources. Each case demanding a fact-finding proceeding necessitates staff hours for sending the fact-finding document to the claimant and employer, reviewing the response and evidence, and drafting detailed decisions. Moreover, the potential for subsequent appeals triggers a cascade of additional hearings and reviews, diverting resources from other essential departmental functions.

30. The cumulative effect of these investigations translates to substantial expenditures on personnel, administrative overhead, and the technological infrastructure required to manage the burgeoning caseload, ultimately depleting the MUIA's budget and hindering its ability to address other critical labor-related issues.

31. Recent statements of the President and other federal officials have indicated that the overwhelming majority of recent federal terminations were not for-cause firings, based on individualized assessments of performance, but instead constitute a Government-wide effort to shrink the size of the federal workforce, an effective reduction in force.

32. As a result, it is likely that the overwhelming majority of recently terminated federal employees will in fact be eligible for state unemployment benefits, because they were not terminated for cause.

33. However, the federal Government's pretextual claim that such terminations are for-cause will necessitate extensive and irreparable investigatory costs and resource expenditures by the Michigan Department of Labor and Economic Opportunity.

34. Finally, Michigan will also bear increased costs in the form of unemployment benefits of ex-federal employees. While the Federal government is generally required to reimburse Michigan for UCFE benefits, Michigan must pay such benefits in the first instance, depleting the statewide trust fund that is supported by private employers in the state.

35. Moreover, the U.S. Secretary of Labor has discretion to reimburse states for administrative costs required to conduct the state unemployment compensation program. 42 U.S.C. § 502(a). While Michigan has been and continues to expend additional resources necessary to address the uptick in federal unemployment claims, it is thus entirely speculative whether MUIA's costs will be fully reimbursed.

Executed on March 19, 2025, at Lansing, Michigan.

_____
Kimberly Breitmeyer
Legal Advisor and Legal & Compliance
Bureau Administrator
Michigan Unemployment Insurance Agency

9