# Exhibit O

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND; et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; et al.,<br><br>      Defendants. | C.A. No. |

### DECLARATION OF SARITA NAIR

I, Sarita Nair, declare as follows:

1. I am a resident of the State of New Mexico. I am over the age of 18 and have personal knowledge of all the facts stated herein, except as to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the New Mexico Department of Workforce Solutions as the Cabinet Secretary. I have been in this position since August 15, 2022.

3. As Cabinet Secretary, I am the chief executive of the Department of Workforce Solutions, and ultimately oversee all divisions, including federal contracts, federal-state programs, and federal funding.

4. The Department administers a wide range of federally funded workforce and training programs, including but not limited to those authorized by the Workforce Innovation and

1

Opportunity Act (WIOA), that are vital to New Mexico's economic stability and workforce development.

5. The Department of Workforce Solutions also is responsible for the Unemployment Insurance program, employment services, and labor market information.

6. As Cabinet Secretary, I have access to comprehensive reports and financial records that detail the state of New Mexico's labor market, including claims for unemployment benefits, and the allocation and distribution of federal funding received by the Department of Workforce Solutions.

7. The ongoing mass layoff of federal workers is irreparably harming New Mexico in several ways.

**Employment Services Expenditures**

8. The Department of Workforce Solutions oversees Rapid Response, a coordinated, multiple-partner strategy to provide immediate assistance to New Mexicans subject to mass layoffs. Rapid Response is the state entity responsible for conducting outreach and providing unemployment services required by the federal Workforce Investment Act of 1998, as amended by the federal Workforce Innovation and Opportunity Act of 2014. Specifically, a state rapid response program is required by both the federal Workforce Innovation and Opportunity Act 29 U.S.C. § 3174(A)(2)(i).

9. The Department of Workforce Solutions also oversees WIOA Title III (Wagner-Peyser) and the Reemployment Services and Eligibility Assessments (RESEA), both of which focus on career counseling and job placement.

10. The Department works in close partnership with other stakeholders, such as the 25 America's Job Centers across New Mexico, which provide localized assistance to both

employers and employees across the state in both employment services and unemployment insurance claims.

11. The purpose of Rapid Response, Title III, and RESEA is to reduce reliance on public benefit systems such as unemployment insurance; to promote economic recovery and vitality by developing an ongoing, comprehensive approach to identify, plan for, and respond to layoffs and dislocations; and to prevent or minimize the impact of mass layoffs on workers, businesses, and communities.

12. When notified of a forthcoming mass layoff, the Rapid Response team will quickly provide informational resources and reemployment services for workers, including but not limited to: information and support for filing Unemployment Insurance (UI) claims, information on the impacts of layoffs on health coverage or other benefits, information on and referral to career services, reemployment-focused workshops and services, and occupational training.

13. In addition, the Rapid Response team will contact affected businesses to collect, verify, and distribute information regarding Rapid Response activities, it will coordinate with state staff and local workforce area staff at the America's Job Centers in the affected area to provide support for the affected workers. The Division of Unemployment Insurance will mobilize to streamline and expedite the processing of unemployment claims, Title III will initiate job fairs and rapid hiring protocols, and the RESEA program will identify claimants at risk of exhausting their unemployment benefits for additional services.

14. The Rapid Response, Title III and RESEA teams also facilitate connections to partner agencies and organizations to ensure their ability to provide assistance to terminated workers and their families, such as home heating assistance, food resources, and child care.

15. Pursuant to 5 U.S.C. § 3502(d)(3)(A)(i), the federal Government is required to notify New Mexico, or "the State or entity designated by the State to carry out rapid response activities under section 134(a)(2)(A) of the Workforce Investment Act of 1998" of a plan for a reduction-in-force (RIF) of federal employees, generally at least 60 days in advance of any proposed RIF.

16. The notices required by 5 U.S.C. § 3502(d)(3)(A) are intended to trigger Rapid Response activities since it is explicitly to be given to the state entity required to carry out Rapid Response activities.

17. Upon information and belief, neither the New Mexico Department of Workforce Solutions nor any other entity in the New Mexico State Government have received notice of a federal reduction in force at any federal agency.

18. Yet, as detailed more below, the Department of Workforce Solutions has already received 195 claims by ex-federal employees for unemployment benefits since February 2, 2025.

19. Because our Rapid Response team received no notice of federal reductions in force, the Department has been required to dedicate more staff, resources, and expenditures to fulfill our statutory mission.

20. Because the Department has not received advance notice of which agencies are planning to conduct mass layoffs, we have been forced to rely on public reporting and word-of-mouth to conduct after-the-fact outreach to potentially affected workers. Reacting after a layoff is far more resource-intensive than the advance planning and assistance process required by law.

21. Moreover, the Department of Workforce Solutions has had to devote significant additional staff time from communications and policy staff to conduct broad-based outreach to try and identify recently terminated employees, and provide relevant resources and services.

22. Under normal circumstances, such personnel are engaged in general media strategy around connecting New Mexicans to jobs, providing round-the-clock support for New Mexico's 60-day legislative session, growing apprenticeship programs, and other affirmative efforts to help grow and support New Mexico's job market.

23. Such staff have instead been dedicated to reacting to the latest layoff news, trying to identify affected federal agency and ex-employees, provide information, and otherwise adjust procedures and resources to assist confused and unemployed New Mexicans in a complicated and rapidly evolving environment.

24. The New Mexico Department of Workforce Solutions has expended over $23,000 in personnel and operational costs between February 2, 2025, and March 10, 2025, to address these extraordinary circumstances. In addition, the New Mexico Department of Tourism expended $25,000 to assist in outreach to displaced federal workers.

25. In sum, my office and the State are devoting significant time, resources and expense, simply to identify workers subject to federal mass layoffs, conduct mass outreach, and otherwise make resources available to potentially affected individuals in new ways, all because federal agencies have failed to provide the legally required notice of mass layoffs.

**Unemployment Assistance Process**

26. The Department of Workforce Solutions manages claims for unemployment benefits in New Mexico.

27. New Mexico Unemployment Compensation benefits, created under the Social Security Act of 1935, provide for unemployment benefits for up to 26 weeks to individuals who find themselves unemployed through no fault of their own. § 51-1-3, NMSA 1978.

28. As a general matter, the federal Government is required to reimburse New Mexico for unemployment benefits provided to former federal employees. Specifically, New Mexico is party to an agreement with the United States Secretary of Labor, wherein the Secretary shall pay, as an agent of the United States, Unemployment Compensation for Federal Employees ("UCFE") pursuant to 5 U.S.C. § 8502(a).

29. Pursuant to 5 U.S.C. § 8502(b), New Mexico is reimbursed for UCFE payments to federal employees in the same amount, on the same terms, and subject to the same conditions which would be payable to them under New Mexico Unemployment Compensation Law.

30. The New Mexico Department of Workforce Solutions administers its federal-state cooperative unemployment insurance program, financed in large part by grants from the federal government pursuant to the Social Security Act. 42 U.S.C. §§ 501-503.

31. Pursuant to § 51-1-8, NMSA 1978, an individual in New Mexico who wishes to collect unemployment insurance benefits must file a claim in accordance with regulations adopted by the New Mexico Department of Workforce Solutions.

32. Claimants file initial claims online using the Department's system, via telephone, or in person, to provide information to indicate the basis of the claim, the name of the claimant's previous employer, the reason for their separation, and other relevant information. § 51-1-5, NMSA 1978; NMAC 11.3.300.301 and 11.3.300.308.

33. After an individual has filed an initial claim, DWS sends a fact-finding questionnaire to the employer to verify the information provided and allow opportunity for response to the information provided in the claim. Employers have 10 days to respond. If an employer does not submit a timely response, DWS makes a determination based on the information available at the time. NMAC 11.3.300.308 NMAC.

34. Eligibility for unemployment benefits is determined based on criteria such the circumstances of the separation from employment, whether sufficient wages have been earned in the base period, and whether the claimant is able to work, available for work and actively seeking work. §§ 51-1-4 through 51-1-8, NMSA 1978.

35. After a claim is filed, DWS reviews the information provided by the claimant and the employer through the fact-finding process and issues an eligibility determination. A non-monetary determination is made as to whether a claimant is qualified to receive benefits based on their separation from employment. If the claimant is eligible for benefits, a monetary determination is made, based on the wages earned in the base period, to ascertain the weekly benefit amount the claimant will be eligible to receive. § 51-1-8, NMSA 1978.

36. An interested party may file an appeal of any determination issued by the Department by submitting a written request via mail, email, or their online unemployment account. Unless an appeal is filed within 15 days of the determination, the original decision is deemed to be the final decision of the department. If an appeal is timely filed, a telephonic appeal hearing is scheduled before an Administrative Law Judge, at which the parties can present evidence, witnesses, and testimony for a review. § 51-1-8, NMSA 1978, and NMAC 11.3.500.

**Unemployment Benefits Recent Experience and Investigatory Process**

37. The Department's latest data indicates that 195 former federal employees have applied for unemployment benefits since February 2, 2025.

38. The primary geographic locations of unemployment claims from federal employees are Albuquerque, Rio Rancho, Carlsbad, Santa Fe, and Las Cruces.

39. The federal agencies that claimants have reported most frequently as their employer are the US Department of Agriculture, the US Department of Interior – National Park

Service, and the US Department of Interior – Bureau of Indian Affairs. In total, claimants have filed claims naming 17 federal agencies as their employer.

40. As stated above, when an employer provides the initial report of separation to the Department, the employer must indicate the reason for the separation.

41. Upon information and belief, federal workers' termination notices have included statements suggesting that they were fired for poor performance.

42. The Department of Workforce Solution's procedures require that the claims adjudicator must investigate the reason for discharge.

43. Under § 51-1-7(A)(2), NMSA 1978, the standard for disqualification of a claimant is not whether they were fired "for cause" or for poor performance, but rather, whether "the individual has been discharged for misconduct connected with the individual's employment." "To be disqualifying, misconduct must evince a willful or wanton disregard for the employer's interests and must significantly infringe upon legitimate employer expectations." *Otero v. New Mexico Emp't Sec. Div.*, 1990-NMSC-007, 109 N.M. 412, 785 P.2d 1031. Employees must receive adequate warnings prior to discharge. *Chavez v. Employment Sec. Comm'n,* 1982-NMSC-077, 98 N.M. 462, 649 P.2d 1375.

44. On February 11, 2025, President Trump issued Executive Order 14222, stating, "Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs)." In addition, numerous other statements of the President and other federal officials suggest that the majority of recent federal terminations were not due to employee misconduct, but instead constitute a government-wide effort to shrink the size of the federal workforce.

45. Upon information and belief, the Department of Workforce Solutions anticipates that given the consistency of the termination letters across agencies, at least some federal

agencies will assert that the terminated probationary employees were fired for cause and are accordingly ineligible for unemployment benefits.

46. To the extent that the Department determines that recently terminated federal employees were not terminated for misconduct, they will be eligible for state unemployment benefits. In any appeal of unemployment benefits, pursuant to the New Mexico Unemployment Insurance Employer Handbook, the employer carries the burden of proof in establishing the separation was for reasons other than a layoff due to lack of work and in establishing the separation was for misconduct.

47. To the extent the federal government files timely appeals of federal workers' claims, the Department of Workforce Solutions is required to and will follow an intensive investigative process. Because they are designed to ensure fairness, the procedures impose a significant strain on the Department's financial and temporal resources. Each case demanding a fact-finding proceeding necessitates extensive staff hours for scheduling, conducting interviews, reviewing evidence, and drafting detailed decisions. The need to send notices, accommodate witness testimony, and facilitate cross-examination further escalates the time commitment. Moreover, the potential for subsequent appeals triggers a cascade of additional hearings and reviews, diverting resources from other essential departmental functions.

48. Upon information and belief, the federal Government's pretextual claim that such terminations are not reductions in force is likely to necessitate extensive and irreparable costs and resource expenditures by the Department of Workforce Solutions.

**Increased Unemployment Benefits**

49. Finally, New Mexico will also bear increased costs in the form of unemployment benefits of displaced federal employees. While the federal government is generally required to

reimburse New Mexico for UCFE benefits, New Mexico must pay such benefits in the first instance, depleting the statewide trust fund that is supported by private employers in the state.

50. Moreover, the U.S. Secretary of Labor has discretion to reimburse states for administrative costs required to conduct the state unemployment compensation program. 42 U.S.C. § 502(a). While New Mexico has been and continues to expend additional resources necessary to address the uptick in federal unemployment claims, it is thus entirely speculative whether the Department's costs will be fully reimbursed.

51. To the extent that the federal government refuses to reimburse the New Mexico Unemployment Insurance Trust Fund for adjudicated claims, the Department of Workforce Solutions will be required to expend considerable resources in collection processes. In addition, the Department may be required to seek funding to protect the UI Trust Fund from the state legislature.

Executed on March 10, 2025, at Santa Fe, New Mexico

_____
Sarita Nair, Cabinet Secretary