# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture,

et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF MARY PLETCHER RICE

Pursuant to 28 U.S.C. § 1746, I, Mary Pletcher Rice declare as follows:

1.    I am the Acting Principal Deputy Assistant Secretary for Administration within Departmental Administration at the United States Department of Agriculture ("USDA" or "Department") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of USDA, or on information provided to me by USDA employees. I have served in this position since January 31, 2025, and I have been employed at USDA since 2018. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

2.    In my role at USDA, I currently oversee the Department's Office of Human Resources Management and I have purview over USDA subagencies' Chief Operating Officers and Human Resources Offices.

3.    As of Monday, March 17, 2025, USDA had approximately 5,714 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order. As

of that date, USDA had reinstated all 5,714 Affected Probationary Employees. On March 12, 2025, USDA reinstated all 5,714 Affected Probationary Employees by restoring them to the status they were in prior to their terminations and provided each with back pay from the date of their respective termination. As part of a phased plan for return-to-duty, upon returning to pay status, the Affected Probationary Employees were initially placed on paid administrative leave.

4.      A group of 1,070 seasonal Forest Service Affected Probationary Employees who were not in pay status at the time of their terminations (due to the off-season) have been reinstated to their prior unpaid status.  These employees will return to pay status on a rolling basis during the months of April and May.  Additionally, there are six Affected Probationary Employees in the Foreign Agricultural Service who were administratively furloughed prior to their terminations, and who have been reinstated to their prior administrative furlough status.

5.      On Friday, March 14, 2025, USDA began the process of notifying all Affected Probationary Employees that they have been reinstated. All Affected Probationary Employees have been notified of their reinstatement: (1) via an initial notification from USDA to each employee, pursuant to a March 5, 2025 Stay Order issued by the Merit Systems Protection Board ("MSPB"); (2) via a separate, subsequent notification from USDA to each employee, pursuant to the March 13, 2025 preliminary injunction issued in the case of *AFGE,* et al., v. *OPM,* et al., with said notification referring employees to a USDA press release website for updates; and (3) via the aforementioned USDA press release titled "USDA Status Update on Probationary Employees" that was published on March 11, 2025, and subsequently updated on March 19, 2025.  The update can be found at https://www.usda.gov/about-usda/news/press-releases/2025/03/11/usda-status-update-probationary-employees.

6.      Now that USDA has reinstated and notified the Affected Probationary Employees to the pay status they were in prior to their terminations, the Affected Probationary Employees who are in pay status are currently on administrative leave. USDA placed the Affected Probationary Employees on administrative leave temporarily, as an initial step as part of the phased plan to return the employees to work.

7.      USDA has developed a phased plan to return the Affected Probationary Employees to work that considers an employee's need to access and availability of information technology and other equipment; Lincpasses (badges); systems credentials; workstation readiness; and safety and security of facilities. USDA has four phases: Phase 1: Return to Duty March 24, 2025; Phase 2: Return to Duty March 31, 2025; Phase 3: Return to Duty April 7, 2025; Phase 4: U.S. Forest Service permanent seasonal employees that are currently in non-pay status with a reporting date later than April 7, 2025. In Phase 1, USDA plans to return 1,806 employees. In Phase 2, USDA plans to return 676 employees. In Phase 3, USDA plans to return 2,407 employees. In Phase 4, USDA plans to return 825 employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

MARY RICE  Digitally signed by MARY RICE
Date: 2025.03.25 11:45:13 -04'00'

MARY PLETCHER RICE

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>United States Department of Agriculture,<br><br>et al.,<br><br>        Defendants. | Case No. 1:25-cv-00748-JKB |

## DECLARATION OF JESSICA S. PALATKA

Pursuant to 28 U.S.C. § 1746, I, Jessica S. Palatka declare as follows:

1.      I am the Chief Human Capital Officer for the Department of Commerce (Commerce) headquartered in Washington, D.C.  I make this declaration based on my own personal knowledge, on information contained in the records of Commerce, or on information provided to me by Commerce employees.

2.      I have served in this position since September 2021.  In my role at Commerce, I am responsible for personnel management.  I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations.  I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.  I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.      In my previous declaration dated March 17, 2025, I stated that, between January 20, 2025, and March 3, 2025, Commerce terminated 791 probationary employees out of

approximately 9,000 probationary and trial period employees. I have subsequently learned that the correct total number of probationary employees terminated during that time period is 790. The higher figure erroneously included a probationary employee who had submitted a resignation prior to the termination action; Commerce has corrected that employee's records.

4.    My previous declaration also stated that, because 27 probationary employees had been reinstated within days of their terminations for various operational reasons, as of March 17, 2025, Commerce had 764 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order. As noted above, one probationary employee had submitted a resignation prior to the termination action and should not have been included in the total number of Affected Probationary Employees. I have also subsequently learned that another probationary employee had been terminated for conduct and received a different termination letter, and thus should not have been included in the total number of Affected Probationary Employees. Accordingly, the correct number of Commerce's Affected Probationary Employees, as of Monday, March 17, 2025, is 762.

5.    On March 17, 2025, Commerce communicated Affected Probationary Employees' reinstatement status to each by telephone, personal email, and/or other means of communication. Commerce has made contact with all 762 Affected Probationary Employees.

6.    Commerce has also cancelled the termination actions for 756 of the Affected Probationary Employees in our HR and administrative systems, thereby reinstating each of them to a paid status. For the remaining six Affected Probationary Employees, a technical issue in our HR and administrative systems has prevented us from cancelling the termination actions; we will continue working actively to address the technical issue until it is resolved. All 762 Affected

Probationary Employees have been or will be placed into administrative leave status. Reinstatement SF-50s are not required, as the actions taken are to cancel the termination actions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

/s/  JESSICA PALATKA
Digitally signed by JESSICA PALATKA
Date: 2025.03.25 12:03:53 -04'00'

Jessica S. Palatka

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>United States Department of Agriculture,<br><br>et al.,<br><br>    Defendants. | Case No. 1:25-cv-00748-JKB |

## DECLARATION OF JACQUELINE CLAY

Pursuant to 28 U.S.C. § 1746, I, Jacqueline Clay, declare as follows:

1.     I am the Chief Human Capital Officer for the U.S. Department of Education, headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the Department of Education, or on information provided to me by the Department of Education employees.

2.     I have served in this position since June 19, 2022. In my role at the Department of Education, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.     As of Monday, March 17, 2025, the Department of Education had 65 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order. As

of that date, the Department of Education had processed reinstatement of all 65 Affected Probationary Employees.

4.      By Monday, March 17, 2025, the Department of Education had communicated each Affected Probationary Employee's reinstatement status to each employee by email. I have also responded to all emails sent to me from individual Affected Probationary Employees requesting to receive further communications at a different email address.

5.      As of Friday, March 20, 2025, 0 of Affected Probationary Employees have declined reinstatement. As of that date, 65 of Affected Probationary Employees have been fully reinstated into administrative leave status including access to email, administrative leave status notification, benefits and SF-50 notification to the employee's personnel folder completed.

6.      As of Friday, March 20, 2025, all Affected Probationary Employees have been fully reinstated to administrative leave status.

7.      To date, the Agency has not been notified of any outside employment offers accepted by Affected Probationary Employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 20, 2025

JACQUELI
/s/NE CLAY

Digitally signed by
JACQUELINE CLAY
Date: 2025.03.21
14:52:34 -04'00'

Jacqueline Clay

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture,

et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF REESHA TRZNADEL

Pursuant to 28 U.S.C. § 1746, I, Reesha Trznadel declare as follows:

1.     I am the Acting Chief Human Capital Officer at the United States Department of Energy ("DOE") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of DOE, or on information provided to me by DOE employees.

2.     I have served in this position since February 28, 2025. In my Acting role at DOE, I am responsible for personnel management. I am responsible for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.     As of Monday, March 17, 2025, DOE had five hundred and fifty-five (555) Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining

Order. As of that date, DOE had reinstated all five hundred and fifty-five (555) Affected Probationary Employees.

4.      By March 18, 2025, DOE communicated the Affected Probationary Employees' reinstatement status to each employee first by telephone, then by personal email. DOE has been able to reach all of the Affected Probationary Employees. These individuals have been placed on administrative leave status while the Agency processes their credentials and reissues equipment.

5.      As of March 22, 2025, fifteen (15) of the five-hundred and fifty-five (555) Affected Probationary Employees have declined reinstatement and elected to resign. Additionally, sixty (60) of the five hundred and fifty-five (555) Affected Probationary Employees are undecided on whether they will return or will elect to resign. As next week progresses, there should be more clarity on which of the sixty (60) undecided employees will return or resign. The remaining four hundred and eighty (480) Affected Probationary Employees have chosen to continue employment with DOE.

6.      Each Departmental Element ("DE") is undergoing an expedited approach to re-onboard the affected employees that choose to continue employment with DOE. DEs are ensuring the employees are coded with administrative leave from the date of termination to when they return. Additionally, employees are following security protocols to ensure they receive a new personal identity verification ("PIV") badge. The Office of the Chief Human Capital Officer has instructed all DEs to onboard the relevant employees as soon as possible so that they do not remain on administrative leave, per the court order. DEs are making every effort to restore physical and systems access for the employees. Leave and benefits are being restored, and DOE is working with Defense Finance Accounting Service ("DFAS") on any associated pay issues.

2

7.    Regarding SF-50s; the original SF-50 termination action was cancelled in all HR systems and is being removed from employees' eOPFs. From a system perspective, such action restores the employee as if they never left. No further action is required. Reinstatement SF-50s are not required and will not be issued.

8.    As noted in paragraph 6 above, all employees have been reinstated, and DOE is undergoing all the steps necessary to restore systems and physical access for returning employees no later than March 31, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

/s/ *Reesha Trznadel*
REESHA TRZNADEL
ACTING CHIEF HUMAN CAPITAL OFFICER
US DEPARTMENT OF ENERGY

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, et al., | |
| Defendants. | |

**DECLARATION OF ROLAND EDWARDS**

Pursuant to 28 U.S.C. § 1746, I, Roland Edwards, declare as follows:

1.     I am the Chief Human Capital Officer of the Department of Homeland Security (DHS) headquartered in Washington, D.C.  I make this declaration based on my own personal knowledge, on information contained in the records of the DHS, or on information provided to me by DHS employees.

2.     I have served in this position since March 13, 2022.  In my role at the DHS, I am responsible for personnel management.  I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations.  I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.  I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.     As of Monday, March 17, 2025, the DHS had 314 Affected Probationary Employees (22 at DHS HQ, 144 at the Federal Emergency Management Agency (FEMA), 105 at

Cybersecurity and Infrastructure Security Agency (CISA), and 43 at U.S. Citizenship and Immigration Services (USCIS)), as defined in paragraph 10(c) of the Temporary Restraining Order. As of that date, the DHS had reinstated all 314 Affected Probationary Employees.

4.      By this week, the DHS communicated Affected Probationary Employees' reinstatement status to each by telephone, personal email, and/or other means of communication. Specifically:

    a.   DHS HQ and CISA contacted all Affected Probationary Employees via email with confirmed receipts for all Affected Employees.

    b.   USCIS communicated Affected Probationary Employees' reinstatement status to each by personal email, and/or telephone. As of 3/21/2025, 23 Affected Probationary Employees have indicated their desire to remain employed at USCIS. 20 Affected Probationary Employees have not responded to the email and/or phone call. USCIS is making multiple attempts to reach these employees to ensure that it continues to make all reasonable efforts to reach the outstanding 20.

5.      By March 17, 2025, FEMA communicated Affected Probationary Employees' reinstatement status to each by personal email.  FEMA has confirmation that one employee allegedly did not receive their email reinstating them to employment due to an email being incorrect. FEMA verified the email address provided by the supervisor of record and reissued the reinstatement email. Eighteen (18) Affected Probationary Employees have declined reinstatement thus far (two at USCIS, three at CISA, twelve at FEMA, and one at HQ).

6.      The DHS is in process of cancelling personnel actions related to the termination of the probationary employees. The DHS has been, and will continue to be, reinstating the affected

2

probationers into an Administrative Leave Status.  Reinstated employees will not be reporting to

the worksite or performing the daily duties of their former position.  Reinstated employees will

not have access to email, badging, government furnished equipment or systems.  One reinstated

employee has elected to participate in the DHS's Deferred Resignation Program, and will therefore

resign from service at a future date.

       7.      The DHS continues to process cancellation actions in accordance with instructions

from the National Finance Center, and to remove records of termination from the employee's

electronic Official Personnel Files (eOPF).  Timeline for completion is estimated at close of

business on March 25, 2025.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: March 25, 2025

BENJAMIN R EDWARDS   Digitally signed by BENJAMIN R EDWARDS
Date: 2025.03.25 11:35:10 -04'00'

Roland Edwards

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., <br><br>        Plaintiffs, <br><br>        v. <br><br> United States Department of Agriculture, <br><br> et al., <br><br>        Defendants. | Case No. 1:25-cv-00748-JKB |

## DECLARATION OF LORI A. MICHALSKI

Pursuant to 28 U.S.C. § 1746, I, Lori A. Michalski declare as follows:

1.    I am the Chief Human Capital Officer, U.S. Department of Housing and Urban Development, headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the U.S. Department of Housing and Urban Development (HUD), or on information provided to me by HUD employees.

2.    I have served in this position since February 2021.  In my role at HUD, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.  I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.     As of Monday, March 17, 2025, HUD had 312 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.  As of that date, HUD reinstated 13 Affected Probationary Employees.

4.     Between March 17 and March 21, 2025, HUD communicated Affected Probationary Employees' reinstatement status to each of them by personal email.  Of the approximately 299 Affected Probationary Employees HUD contacted, three (3) have not responded to accept or decline the reinstatement.  HUD has reached out or will be reaching out to these employees via phone call to confirm email receipt.  In some cases, HUD resent the reinstatement notice to the employees' current personal email address.

5.     Eight (8) HUD Affected Probationary Employees declined the reinstatement.

6.     Eleven employees were reinstated effective March 10, 2025, and two were reinstated effective March 12, 2025.  These thirteen reinstated employees are onboard, have PIV cards issued, HUD email and badging/system access, and payroll processed.   Twelve have had their leave restored.  One employee received a lump sum payment; therefore, this employee will need to repay the net amount of the disbursement so annual leave hours can be restored.

7.      Additionally, the termination of the 13 reinstated employees was cancelled; therefore, an SF-50 will not be issued to reflect reinstatement.  HUD initiated reinstatement actions to approximately 296 probationary employees and placed them on administrative leave temporarily effective March 17, 2025.  As of this date, no reinstatement SF-50s has been completed.  It is estimated that the reinstated probationary employees will receive an SF-50 on or around April 3, 2025.

8.     As of this date, HUD has two Affected Probationary Employees who have accepted outside employment. The employees are working with the Office of General Counsel, Ethics Law

2

Division regarding their specific questions related to outside employment while on administrative leave.

       9.     HUD is reinstating the Affected Probationary Employees effective March 17, 2025.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

/s/ LORI MICHALSKI

Digitally signed by LORI
MICHALSKI
DN: CN = LORI MICHALSKI C =
US O = U.S. Government OU =
Department of Housing and
Urban Development
Date: 2025.03.25 08:35:40 -04'00'

Lori A. Michalski

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF STEPHANIE M. HOLMES

Pursuant to 28 U.S.C. § 1746, I, Stephanie M. Holmes, declare as follows:

1.    I am the Acting Chief Human Capital Officer for the U.S. Department of the Interior ("Department"), headquartered in Washington, D.C. I have served in this position since February 24, 2025. I make this declaration based on my own personal knowledge, on information contained in the records of the Department, or on information provided to me by Department employees.

2.    In my role at the Department, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those laws related to probationary and trial period appointees. Mark. D. Green, Deputy Assistant Secretary for Human Capital, Learning, and Safety at the U.S. Department of the Interior ("Department"), headquartered in Washington, D.C., submitted a previous declaration in

this matter on March 17, 2025. I have been provided and have reviewed Mark D. Green's declaration prior to making this declaration.

3.    I have been provided and have reviewed the temporary restraining order (TRO) issued in this litigation on March 13, 2025, requiring the Department to reinstate all Affected Probationary [and Trial Period Appointees], as such individuals are defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

4.    As of the date and time of this declaration, the Department has identified 1877 "Affected Probationary [and Trial Period Appointees]," as such individuals are defined in paragraph 10(c) of the Temporary Restraining Order. The Department has reinstated 1873 affected individuals by cancelling the termination actions for those individuals. Cancelling the termination actions for those individuals resulted in the placement of associated "cancellation" SF-50s into the respective electronic Official Personnel Folders of reinstated appointees, and the cancellations effectively and retroactively restored affected individuals, with backpay, to their status as probationary and trial period appointees on the original date of the now-cancelled termination actions. The Department did not reinstate 4 individuals defined as Affected Probationary and Trial Period Appointees because they declined to be reinstated.

5.    As of the date and time of this declaration, the Department has telephonically and/or electronically (via personal email addresses where and when known to the Department) contacted 1706 individuals whom the Department terminated during their respective probationary or trial periods on or after February 14, 2025, and has notified these affected individuals of the Department's reinstatement actions and the retroactive cancellations of the termination decisions. The Department continues to work diligently to contact the remaining 167 individuals whom the Department terminated during their respective probationary or trial periods on or after February 14, 2025, and will notify them telephonically and/or electronically (via personal email addresses

where and when known to the Department) of these reinstatement actions and the retroactive cancellations of the termination decisions.

6.    As of the date and time of this declaration, and relevant to the Department's reinstatement of 1873 individuals whom the Department terminated during their respective probationary or trial periods on or after February 14, 2025, the Department has returned 461 individuals to full-duty status.

7.    As of the date and time of this declaration, and relevant to the Department's reinstatement of 1873 individuals whom the Department terminated during their respective probationary or trial periods on or after February 14, 2025, the Department has granted to 1412 affected individuals paid administrative leave, all of which began retroactively on the respective dates of the now-cancelled termination actions and all of which continues through the present date and time. The Department continues to work diligently and expeditiously through the process of returning all remaining 1412 reinstated appointees to full-duty status, and that process (which in some instances is very labor-intensive and time-consuming) includes coordinating human resources efforts and paperwork; working closely with reinstated individuals to meet their personal preferences relevant to the timing of their return to full-duty status; issuing new security badges, uniforms, and government-furnished equipment; re-instituting applicable security clearance actions; re-establishing email accounts and access to systems; and arranging for any necessary and applicable training. Relevant to the process of returning all 1412 individuals to full-duty status, the Department also continues to take other requisite administrative actions, such as evaluating the off-duty actions of reinstated appointees during the period of separation, and auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

STEPHANIE HOLMES
Digitally signed by STEPHANIE HOLMES
Date: 2025.03.25 12:31:22 -04'00'

STEPHANIE M. HOLMES

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF SYDNEY ROSE

Pursuant to 28 U.S.C. § 1746, I, Sydney Rose, declare as follows:

1.    I am the Chief Human Capital Officer within the U.S. Department of Labor ("DOL"), Office of the Assistant Secretary for Administration and Management, Office of Human Resources, headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of DOL, or on information provided to me by DOL employees.

2.    I have served in this position since March 24, 2013. In my role at DOL, I am responsible for personnel management. I have the responsibility for overseeing the human resources enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with Federal law, including those related to probationary employees.

3.    Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring and selection process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, DOL received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      I have been provided and have reviewed the temporary restraining order ("TRO") issued in this case on March 13, 2025, requiring DOL to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

7.      With respect to DOL employees who meet the definition of "Affected Probationary Employees" set forth in the TRO, DOL notes that it issued probationary termination notices to approximately 170 probationary employees out of approximately 620 probationary and trial period employees. For approximately 167 of the 170 Affected Probationary Employees, their termination date was effective March 7, 2025; for the remaining three (3) Affected Probationary Employees, two had termination dates effective on February 20, 2025, and the third on February 21, 2025.

8.      Effective March 7, 2025, DOL rescinded the approximately 167 probationary termination notices of Affected Probationary Employees whose effective termination date was March 7, 2025. For the remaining three (3) probationary employees whose effective termination dates were prior to March 7, 2025, DOL rescinded their terminations and reinstated their

2

employment with no loss of pay prior to March 7, 2025.  Accordingly, as of this time, DOL has

no Affected Probationary Employees who have not either returned to work or voluntarily separated

from DOL.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: March 17, 2025

/s/

Sydney Rose

Chief Human Capital Officer

U.S. Department of Labor

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, | |
| et al., | |
| Defendants. | |

## DECLARATION OF TREVOR NORRIS

Pursuant to 28 U.S.C. § 1746, I, Trevor Norris, declare as follows:

1.      I am the Deputy Assistant Secretary (DAS) for Human Resources (HR) for the United States Department of the Treasury ("Treasury"), headquartered in Washington, D.C.  I make this declaration based on my own personal knowledge, on information contained in the records of the United States Department of the Treasury, or on information provided to me by Treasury employees.

2.      I have served in this position since October 2017.  In my role at Treasury, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.  I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.    As of Monday, March 17, 2025, Treasury had 7,611 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order. As of that date, Treasury had reinstated 7,560 Affected Probationary Employees.

4.    Between March 17 and March 20, Treasury notified all Affected Probationary Employees of their reinstatement, either by email or letter.

5.    Fifty-one Affected Probationary Employees declined reinstatement or requested to resign.

6.    All Affected Probationary Employees have had their Removal Personnel Action Requests cancelled and have been placed in a paid Administrative Leave status. As is the agency's regular practice, employees in an Administrative Leave status continue to have their access to Treasury duty locations, computer networks, and email suspended pending their return to regular duty status.

7.    Treasury's three operating personnel offices are at different stages of documenting cancellation of termination actions; the Office of the Comptroller of the Currency never processed termination actions for their 72 Affected Probationary Employees and so will not generate any SF-50s; the IRS manually processed cancellation actions and generated cancellation SF-50s for all 7,315 of its Affected Probationary Employees with a remark stating "Reinstatement of Probationary Employee." Treasury's Administrative Resource Center has processed cancellation actions for the 225 Affected Probationary Employees from its customer organizations (Bureau of Engraving and Printing, Bureau of the Fiscal Service and the U.S. Mint) but the resulting SF-50s have not yet been generated. They anticipate the cancellation SF-50s being generated by April 3.

8.    Affected Probationary Employees who have been reinstated and who have had or continue to have other employment have been instructed to coordinate with their bureau's Ethics

2

Office to discuss outside employment restrictions and to seek supervisory approval for outside employment under appropriate circumstances.

9.    Regarding the next steps toward processing employees into the next stage of reinstatement to full duty status, the Treasury Department has not issued prescriptive guidance, as circumstances vary considerably between and within its bureaus. Logistics concerns, such as the availability of office space and equipment, and the time required for reissuance of identity credentials, are non-uniform across the Department. In addition, the Department is finalizing plans in response to President Trump's February 11, 2025 Executive Order *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*. These plans will be tailored for each bureau, and in many cases will require separations of substantial numbers of employees through reductions in force (RIFs). Because RIFs are seniority-based, a RIF in any particular competitive area will disproportionately affect reinstated probationary employees. In some case, bureaus may determine that the likelihood of certain reinstated probationary employees being separated is sufficiently high that restoring them to full duties in advance of the planned RIF would be unduly disruptive to both the employees and the bureau.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

TREVOR NORRIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., <br><br> Plaintiffs, <br><br> v. <br><br> United States Department of Agriculture, <br> et al., <br><br> Defendants. | Case No. 1:25-cv-00748-JKB |

## DECLARATION OF MARK ENGELBAUM

Pursuant to 28 U.S.C. § 1746, I, Mark Engelbaum declare as follows:

1.      I am the Assistant Secretary for Human Resources and Administration/Operations, Security, and Preparedness, headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the Department of Veterans Affairs (VA), or on information provided to me by VA employees.

2.      I have served in this position since February 13, 2025. In my role at VA, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.      As of Monday, March 17, 2025, VA had 1,683 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.  As of that date, VA had reinstated all Affected Probationary Employees to a pay status.

4.      By March 21, 2025, VA identified approximately 10 additional Affected Probationary Employees and reinstated them to a pay status. If VA identifies any additional Affected Probationary Employees, it will expeditiously reinstate them to a pay status effective March 17, 2025.

5.      By or between March 17 and March 21, 2025, VA communicated Affected Probationary Employees' reinstatement status to each by telephone, personal email, regular mail, and/or other means of communication. VA is continuing this notification process to reach all Affected Probationary Employees.

6.      VA has taken the following steps to process all reinstatements: cancelling all SF-50s reflecting termination and placed all identified Affected Probationary Employees in an initial paid status using administrative leave. VA re-enabled the user accounts of the Affected Probationary Employees in its system and applied temporary exemptions to the requirement for a Personal Identity Verification (PIV) card.

7.      VA is now in the process of returning Affected Probationary employees to their respective duty stations.  Employees are receiving Return to Duty Instructions directing them to contact their supervisor to arrange for a return to duty. Each supervisor is also being directed to reach out to their employees and they will provide their respective Affected Probationary Employee(s) with a date to return to duty and provide direction on the completion of all required on-boarding tasks such as receiving government furnished equipment, obtaining a Personal

2

Identity Verification (PIV) card, and identifying office space among numerous other administrative tasks.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

/s/ Mark Engelbaum

Mark Engelbaum

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>United States Department of Agriculture,<br><br>et al.,<br><br>     Defendants. | Case No. 1:25-cv-00748-JKB |

## DECLARATION OF ADAM MARTINEZ

Pursuant to 28 U.S.C. § 1746, I, Adam Martinez declare as follows:

1.      I am the Acting Chief Human Capital Officer of the Consumer Financial Protection Bureau ("Bureau" or "CFPB") headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the CFPB, or on information provided to me by CFPB employees.

2.      I have served in this position since approximately, Monday, October 21, 2024. In my role at the CFPB, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.    As of Monday, March 17, 2025, CFPB had 117 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.  As of that date, CFPB had reinstated 117 Affected Probationary Employees.

4.    On Sunday, March 16, 2025, CFPB transmitted reinstatement notices to 117 employees via personal email.  96 employees have acknowledged receipt of the reinstatement notice.  CFPB will continue to attempt contact with the 21 employees who have not acknowledged receipt by resending the reinstatement notices to personal email addresses and contacting employees via personal phone numbers.

5.    Two employees have notified CFPB that they have accepted other employment.  These employees will receive back pay through the date they accepted new employment.

6.    The Human Capital Staff has coordinated on-boarding efforts with the Bureau's Security and Technology and Innovations (T&I) teams.  A full list of reinstatement employees was distributed on Monday, March 17, 2025, to begin re-onboarding staff members.  T&I is working with each employee to reinstate access to the Bureau's network, systems, and applications (email, Teams, etc.) and has determined if assets need to be re-provisioned (i.e., the individual returned their equipment, and it must be reissued).  Security has already begun the process to reissue/print PIV cards for impacted individuals.

7.    CFPB is working with its external human resources processing shared service provider and was able to cancel the termination action from the human resources system of records and employee personnel files.  113 out of 117 reinstatements have applied in the system.  Four reinstated employee returned suspense errors and were reapplied in the system.  There is no record of separation having occurred for these individuals.  Consequently, there is not an SF-50 to effectuate a reinstatement, as there is no longer any record of them being terminated.  Once

employees have full access to CFPB systems, they will be able to review their personnel profile in our human resources information system and their individual electronic official personnel file (eOPF).

8.      The CFPB continues to work with its external human resources processing shared service provider to develop a plan for the transmission of payroll. Pay period 3 (PP03)(February 9 – 22, 2025) and pay period 4 (PP04)(February 23 – March 8, 2025) correction timesheets are being processed and are set for transmission by Monday, March 24, 2025. Employees have been reinstated effective pay period 5 (PP05)(March 9 – 22, 2025) and can resume normal timekeeping functions for the submission of payroll as of that pay period. All payroll dating back to the separation date of the individuals is set to run and pay out with the PP05 processing. We expect all employees will receive their electronic funds transfer (EFT) of back pay, and resumption of pay by March 31, 2025.

9.      All employees have been reinstated under administrative leave providing the CFPB an opportunity to code timesheets for back pay and getting equipment and PIV cards reissued. Once employees are fully re-onboarded and have system access, they will be able to resume approved work activities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 24, 2025

ADAM MARTINEZ    Digitally signed by ADAM MARTINEZ
Date: 2025.03.24 16:40:45 -04'00'

Adam Martinez

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, et al., | |
| Defendants. | |

## DECLARATION OF KRYSTI J. WELLS

Pursuant to 28 U.S.C. § 1746, I, Krysti J. Wells declare as follows:

1.     I am the Director of the Office of Human Capital Operations, Office of Mission Support, at the U.S. Environmental Protection Agency ("EPA") headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the EPA, or on information provided to me by EPA employees.

2.     I have served in this position since October 22, 2023. In my role at the EPA, I am responsible for operational personnel management. I have the responsibility for overseeing the recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.     As of Monday, March 17, 2025, EPA reinstated all Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.

4.      On March 16, 2025, between 5-6 P.M. ET, EPA sent emails to the personal email addresses of all the Affected Probationary Employees notifying them that their terminations were rescinded, as required by the TRO.

5.      As of March 21, 2025, EPA identified two former probationary employees who are not being reinstated because records show they resigned prior to February 14, 2025. Personnel actions have been processed to properly reflect those resignations. This leaves approximately 417 Affected Probationary Employees.

6.      EPA uses the Department of Interior's HR processing system, Federal Personnel and Payroll System ("FPPS"). As of March 19, 2025, EPA processed all of the cancellations for the relevant termination actions in FPPS. We are working to remove all the cancelled termination actions from the Affected Probationary Employees' electronic official personnel folders (eOPFs). Additionally, all of the timecards were updated to change the Affected Probationary Employees' statuses and, as noted above, Affected Probationary Employees all received a notice that their termination was rescinded on March 16, 2025.

7.      On March 21, 2025, EPA emailed all Affected Probationary Employees to verify their preferences for their Federal Employee Health Benefits (FEHB) election since they have had a Qualifying Life Event (QLE) and they are entitled to make a new election for benefits. This communication gave them the option to reinstate their prior FEHB coverage, select a new FEHB plan, or decline coverage. We are working to restore FEHB coverage for the Affected Probationary Employees, according to their elections, as their responses are received.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 24, 2025

KRYSTI     Digitally signed by
KRYSTI WELLS
WELLS     Date: 2025.03.24
12:47:09 -04'00'

Krysti J. Wells

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF DANIEL H. BENDLER

Pursuant to 28 U.S.C. § 1746, I, Daniel H. Bendler, declare as follows:

1.     I am the Deputy to the Acting Chairman and Chief Operating Officer of the Federal Deposit Insurance Corporation ("FDIC") headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the FDIC, or on information provided to me by FDIC employees.

2.     I have served in this position since February 2022. In my role at the FDIC, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.     As of Monday, March 24, 2025, the FDIC had 156 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order. As of that date, the

FDIC had reinstated 152 Affected Probationary Employees. Four employees were not reinstated because they were already in the process of being terminated due to documented performance/conduct issues. These are the agency's most recent numbers, which are updated compared with my March 17, 2025 declaration, which stated that there had been 151 reinstatements and that five employees were not reinstated based on individualized performance/conduct issues.

4.    By Monday, March 18, 2025, the FDIC communicated Affected Probationary Employees' reinstatement status to each by personal email. The FDIC requested that each probationer acknowledge receipt of the email. As of March 20, 2025, we have received replies from all 152 impacted employees.

5.    A total of 7 employees declined reinstatement. The FDIC is still cancelling the termination personnel action for these 7 employees and reprocessing the action as a voluntary resignation.

6.    All 152 employees were placed on Administrative Leave effective February 18, 2025.

7.    The 152 impacted employees' cancellation of personnel actions will be processed no later than Thursday, March 27, 2025. Once processed, the Standard Form 50 takes approximately two weeks to be created by the system. The FDIC expects the SF-50 to be available by April 11, 2025.

8.    The FDIC advised all 152 employees in the reinstatement email of their statutory and regulatory ethics requirements, including those related to the acceptance of outside employment, and instructed them to contact the Ethics Unit with any questions on those requirements. Of the 152 employees, 8 have contacted the Ethics Unit and received specific

2

guidance related to compliance with outside employment, acquisition of securities, and financial disclosure requirements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

/s/ DANIEL BENDLER

Digitally signed by DANIEL BENDLER
Date: 2025.03.25 10:13:19 -04'00'

Daniel H. Bendler

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

    Plaintiffs,

v.

United States Department of Agriculture,

et al.,

    Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF JEREMY TAYLOR

Pursuant to 28 U.S.C. § 1746, I, Jeremy Taylor declare as follows:

1.    I am the Deputy Chief Human Capital Officer, Office of Human Resources Management, at the General Services Administration headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the General Services Administration, or on information provided to me by General Services Administration, Office of Human Resources Management employees.

2.    I have served in this position since July 2024. In my role at the General Services Administration, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.      As of Monday, March 17, 2025, the General Services Administration had 366 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.   As of that date, the General Services Administration had reinstated 364 Affected Probationary Employees.

4.      By March 17, 2025, the General Services Administration communicated Affected Probationary Employees' reinstatement status to each by personal email.  The General Services Administration was able to reach 366 of Affected Probationary Employees.

5.      The General Services Administration reinstated all its 366 Affected Probationary Employees, with the exception of two, who declined to be reinstated.

6.      The General Services Administration has placed the 364 reinstated probationary employees on paid administrative leave.

7.      By March 17, 2025, the General Services Administration processed all of its SF-50s to reinstate the Affected Probationary Employees.

8.      Of the 364 Affected Probationary Employees who were reinstated, the General Services Administration is not aware of any having other employment.


        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

                                        Dated: March 24, 2025


                                        Signed by:
                                        /s/ Jeremy Taylor
                                        646749BC69944EC...

                                        Jeremy Taylor


2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, et al., | |
| Defendants. | |

**DECLARATION OF BEATRICE (JULIE) BRILL**

Pursuant to 28 U.S.C. § 1746, I, Beatrice (Julie) Brill declare as follows:

1.    I am SBA's Acting Chief Human Capital Officer headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the Small Business Administration (SBA), or on information provided to me by SBA employees.

2.    I have served in this position since February 12, 2025. In my role at the SBA, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.    As of Monday, March 21, 2025, SBA had 297 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order. As of that date, SBA had

reinstated 297 Affected Probationary Employees.   One of the original 298 employees had voluntarily resigned and should not have been counted in the original number.

4.      Between March 17, 2025, and March 21, 2025, SBA communicated Affected Probationary Employees' reinstatement status to each by telephone, personal email, and/or other means of communication.

5.      None of the affected employees have declined reinstatement as of March 21, 2025.

6.      127 Affected Probationary Employees were reinstated and placed on Administrative Leave without access to the building or system.  For these employees we are cancelling the termination action, removing the cancellation and termination SF-50 from the employees' eOPFs, processing timesheets and providing retroactive pay, reviewing/reinstating benefits, conducting leave audits, sending debt letters for those that received an annual leave lump sum payment, and restoring employees' leave balances.  170 Affected Probationary Employees were placed back into the intermittent work schedule in a non-pay status, which is what they were when they were released.  We will continue to do quality assurance reviews of these employees to ensure the records reflect accurately.

7.      SBA is cancelling the termination actions and not issuing reinstatement SF-50s.

8.      The SBA will work with the agency's Ethics Office to address instances of outside employment that materially affects reinstatement. There has only been one such instance identified, and the employee must decide by Thursday, March 27, 2025, if they will accept the reinstatement or voluntarily resign.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

BEATRICE
BRILL

Digitally signed by
BEATRICE BRILL
Date: 2025.03.25
08:14:25 -04'00'

Beatrice (Julie) Brill

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, et al., | |
| Defendants. | |

## DECLARATION OF [INSERT NAME]

Pursuant to 28 U.S.C. § 1746, I, Sepideh Keyvanshad, declare as follows:

1.      I am the Senior Deputy Administrator at the Office of Human Capital and Talent Management at the US Agency for International Development (USAID) headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the USAID, or on information provided to me by USAID employees.

2.      I have served in this position since approximately April 2024. In my role at USAID, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.      As of Monday, March 17, 2025, USAID had 270 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.  As of that date, USAID had reinstated 270 Affected Probationary Employees.

4.      On Monday, March 17, 2025, USAID communicated Affected Probationary Employees' reinstatement status to each by personal email. There were approximately 6 probationary employees whom we were unable to reach because we did not have their personal emails. The Agency has subsequently been able to provide them with the reinstatement notice upon getting their personal email address. If the Agency is notified that there are any others who did not get the notice, we will ensure they do once we are provided their personal email address. One individual provided their resignation upon being reinstated.

5.      Historical personnel records corrections were made to cancel termination actions for all Affected Probationary Employees. By cancelling their termination actions, they will be reinstated back with the Agency and payroll processing will resume for Pay Period 05. The SF-50 documenting the cancellation of these actions will be generated in their Electronic Official Personnel Folder the week of March 31, 2025.

6.      All Affected Probationary Employees have regained access to their USAID system.  They are currently on paid Administrative Leave.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 24, 2025

Sepideh
Keyvanshad

Digitally signed by Sepideh
Keyvanshad
Date: 2025.03.24 14:54:22 -04'00'

Sepideh Keyvanshad

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF JOHNATHAN J. GARDNER

Pursuant to 28 U.S.C. § 1746, I, Johnathan J. Gardner declare as follows:

1.　　I am the Acting Associate Deputy Assistant Secretary for Human Capital, Department of Health and Human Services headquartered in Washington, D.C. I make this declaration based on my own personal knowledge, on information contained in the records of the United States Department of Health and Human Services ("HHS"), or on information provided to me by the Department's Human Resources Directors or their designees.

2.　　I have served in this position since August 12, 2024. In my role at the HHS, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration. However, since March 17, 2025, I learned that not all Affected Probationary Employees received notification by March 17,

2025. Since March 17, 2025, HHS took action to ensure all Affected Probationary Employees received notice and by March 21, 2025, notification was completed.

3.     As of Monday, March 17, 2025, HHS had 3,248 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.  As of that date, HHS had reinstated 88 Affected Probationary Employees who were terminated before the end of their probationary period, between February 15 and March 13, 2025, and extended the administrative leave status of 2,855 probationary and trial period employees who were previously scheduled to be terminated on or after March 14, 2025.

4.     By March 17, 2025, the National Institutes of Health ("NIH") sent email messages to all of its 837 Affected Probationary Employees at their personal and NIH email addresses. NIH received undeliverable messages for 12 of these employees and thereafter, asked the impacted Institute and Center Executive Officers to contact these employees directly. NIH placed the Affected Probationary Employees in active status in its personnel system, and all Affected Probationary Employees are in a pay status.  Employee leave status is being handled internally within each Institute or Center at NIH, but centralized communication was provided to ensure consistency in approach. NIH was able to cancel all termination actions in its system so it does not need to issue SF-50s for reinstatement. At NIH, 37 Affected Probationary Employees were terminated in its system and received lump sum payments for annual leave; all 37 terminations were cancelled.  Of those 37, two have elected to resign so NIH will process those resignations; 25 employees have accepted reinstatement and NIH has submitted tickets to its payroll provider to recover the annual leave payout for these employees. Of those 25, 12 have been fully authorized to return to work as they were approved through an exceptions process. NIH is still waiting for a response from the remaining 10 employees regarding whether they will accept reinstatement.

2

5.    As of 1:00 p.m. on March 17, 2025, the Food and Drug Administration ("FDA") had notified all 402 Affected Probationary Employees. By Sunday, March 16, 2025, at 1:15 p.m., FDA had sent an email notification, via personal email addresses, to 392 employees. The remaining 10 employees were contacted at their personal phone numbers on or before 1:00 p.m. on Monday, March 17, 2025. As of March 21, 2025, of the 402 Affected Probationary Employees at FDA, 5 have requested to resign. Nine have been provided email and security access and are working (3 of the 9 are currently going through the badging reinstatement process). 388 are on administrative leave without IT or physical security access. FDA has submitted tickets to rescind the nine terminations and to process one resignation to HHS's payroll provider, DFAS. FDA anticipates that SF-50s will be generated for these actions this week.

6.    The Health Resources and Services Administration ("HRSA") notified all 179 of its Affected Probationary Employees via personal email by 11:55 a.m. on Monday, March 17, 2025. At present, no employees at HRSA have declined reinstatement. However, HRSA has seven employees who intend to resign from their positions. HRSA extended administrative leave for these employees and is awaiting receipt of formal resignation letters. HRSA is working to restore leave that may have been paid out and to reinstate accounts for Affected Probationary Employees who were terminated and subsequently reinstated. HRSA is working to determine whether six employees received termination SF-50s. At this time, the SF-50s are not in employees' eOPFs so HRSA is unsure if employees will receive the termination SF-50s. If the HRSA employee receives the termination SF-50, HRSA will take all necessary actions to cancel and issue an SF-50 that shows cancellation of the termination action.

7.    As of March 19, 2025, at 4:35 p.m., the Centers for Disease Control and Prevention ("CDC") notified all 457 of its Affected Probationary Employees by email sent to the employee's

3

personal email address that they would continue on administrative leave until March 21, 2025. On March 21, 2025, an updated notice was subsequently emailed to all 457 Affected Probationary Employees that they would continue on administrative leave until further notice. One CDC employee declined to be continued on administrative leave. CDC took all necessary actions to extend the Affected Probationary Employees' administrative leave. Their logical and physical access remains revoked. They remain active in CDC's payroll and employment systems. CDC does not have any pending SF-50s.

8.     The Centers for Medicare and Medicaid Services ("CMS") notified all Affected Probationary Employees that their administrative leave would continue by 1:30 p.m., on March 17, 2025. Notification was provided by phone call with a follow-up email to employees' personal email addresses if they could not be immediately reached by phone. Out of 289 Affected Probationary Employees, CMS offered full reinstatement to duty status to 106 employees. 94 employees accepted and 12 of these employees indicated they did not want to return. CMS has restored IT access for these 94 employees. 61 employees have had all access restored and have returned to work. 33 of these employees are currently awaiting badge reissuance and remaining systems access and will remain on administrative leave until they can fully return to work. Of the remaining 183 Affected Probationary Employees, 10 have indicated they do not want to return, and 173 will continue to be placed on administrative leave. CMS does not have any remaining reinstatement SF-50s to complete and has canceled all termination actions. CMS has one Affected Probationary Employee who is currently employed by a Federal contractor but is seeking reinstatement. CMS is consulting with its Ethics officials to determine next steps.

9.     The Administration for Children and Families ("ACF") notified 8 Affected Probationary Employees that they would be reinstated and placed on administrative leave on

March 17, 2025. The remaining 152 Affected Probationary Employees were notified of the extension of their administrative leave status on March 18, 2025, at approximately 12:20 p.m. These notifications were made by email to the employees' personal email addresses and by telephone call.  This administrative leave was entered into the ACF time and attendance system on March 19, 2025.

10.    For all other Operating Divisions (Administration for Community Living ("ACL"), Agency for Healthcare and Research Quality ("AHRQ"), Substance Abuse and Mental Health Administration ("SAMHSA"), Administration for Strategic Preparedness and Response ("ASPR"), and Staff Divisions within the Office of the Secretary serviced by the Department's Staffing, Recruitment, and Operations Center ("SROC"), Affected Probationary Employees were notified between March 17, 2025, and March 21, 2025, that they would be reinstated and/or continued to be placed on administrative leave. Notification was made by either email or phone. Approximately 5 Affected Probationary Employees declined reinstatement.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

JOHNATHAN
J. GARDNER -S

Digitally signed by
JOHNATHAN J. GARDNER -S
Date: 2025.03.25 12:36:43
-04'00'

Johnathan J. Gardner

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, | |
| et al., | |
| Defendants. | |

## DECLARATION OF ANNE BYRD

Pursuant to 28 U.S.C. § 1746, I, Anne Byrd, declare as follows:

1.      I am the Assistant Secretary for Administration for the United States Department of Transportation ("DOT"), which is headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in DOT records, or on information provided to me by DOT employees.

2.      I have served in this position since February 25, 2025. In my role at DOT, I serve as DOT's Chief Human Capital Officer pursuant to Secretarial delegation. 49 C.F.R. § 1.38. I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. Prior to my appointment, I served as a Senior Advisor to the Secretary of Transportation since February 3, 2025. I submitted a previous declaration in this matter on March 17, 2025, and rely on and incorporate my prior declaration testimony in making this declaration.

3.      As of Monday, March 17, 2025, DOT had 775 Affected Probationary Employees, as defined in paragraph 10(c) of the Temporary Restraining Order.  On that date, DOT contacted all 775 Affected Probationary Employees by telephone, personal email, and/or other means of communication, informing them that DOT was rescinding their terminations and reinstating them. DOT successfully contacted all 775 Affected Probationary Employees.  The 775 Affected Probationary Employees were reinstated with pay and benefits to their previous positions with DOT and the federal service, and they will receive their regular compensation for the period from February 15, 2025, to their reinstatement.

4.      In order to effectuate an orderly return to DOT, the Affected Probationary Employes were placed on paid administrative leave for a short period upon their reinstatement and were returned to active duty on March 20, 2025.  As of March 24, 2025, 92 Affected Probationary Employees have tendered voluntary resignations.  The remaining 683 Affected Probationary Employees are all either on active duty or have elected to take voluntary leave, such as annual leave or sick leave.

5.      DOT officials—including human resources, security, facilities, and information technology officials, as well as officials in the Department's operating administrations—have taken extensive actions on an accelerated timetable to facilitate the return to duty of the Affected Probationary Employees.  Returning employees have been given access to government systems and email.  They are working with their local offices to obtain Personal Identification Verification cards and to return to or locate workspaces.  DOT human resources offices have canceled the probationary terminations, which is a necessary first step for payroll processing, updating the agency leave record, and addressing the employee's Thrift Saving Plans.  DOT also created

guidance on finalizing benefits restoration and similar actions, and it anticipates completing these actions within the next two pay periods.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2025

Anne Byrd