```
 1               IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                      NORTHERN DIVISION

 3    STATE of MARYLAND, et al.,)
           Plaintiffs,        )
 4                            )
           v.                 )   CASE NUMBER: 1:25-cv-00748-JKB
 5    UNITED STATES DEPARTMENT )
      OF AGRICULTURE, et al.,  )
 6              ,             )
           Defendants.        )
 7    _____ )

 8        TRANSCRIPT OF PROCEEDINGS - PRELIMINARY INJUNCTION
              BEFORE THE HONORABLE JAMES K. BREDAR
 9                UNITED STATES DISTRICT JUDGE
                   Wednesday, March 26, 2025
10                      Courtroom 5A

11                   A P P E A R A N C E S
      FOR THE PLAINTIFFS:
12         BY: VIRGINIA WILLIAMSON, ESQUIRE
               MARYLAND OFFICE OF THE ATTORNEY GENERAL
13             200 St. Paul Place
               Baltimore, Maryland  21202
14
           BY: PAMELA DISNEY, ESQUIRE
15         BY: ANNE DENG, ESQUIRE
           BY: RYAN WILSON, ESQUIRE
16         BY: CHARLES SINKS, ESQUIRE
               OFFICE OF THE ATTORNEY GENERAL
17             FOR THE DISTRICT OF COLUMBIA
               400 6th Street NW
18             Washington, DC  20001

19    FOR THE DEFENDANTS:
           BY: ERIC HAMILTON, ESQUIRE
20             U.S. DEPARTMENT OF JUSTICE
               CIVIL DIVISION
21             950 Pennsylvania Avenue NW
               Washington, DC  20530
22
           BY: STEVEN CHASIN, ESQUIRE
23         BY: CHRISTOPHER HALL, ESQUIRE
               U.S. DEPARTMENT OF JUSTICE
24             CIVIL DIVISION, FEDERAL PROGRAMS
               1100 L Street, NW
25             Washington, DC  20530
```

1            **P R O C E E D I N G S**

2       **(9:37 a.m.)**

3            **THE COURTROOM DEPUTY:**  The matter now pending before

4       this Court is civil matter JKB-25-00748, State of Maryland, et

5       al., v. United States Department of Agriculture, et al.  This

6       matter comes before this Court for the purposes of a

7       preliminary injunction.

8            Counsel for the record, starting with the plaintiff.

9            **MS. WILLIAMSON:**  Virginia Williamson for the State

10      of Maryland.

11           **THE COURT:**  Good morning.

12           **MR. SINKS:**  Charles Sinks, District of Columbia.

13           **MS. DISNEY:**  Pamela Disney, District of Columbia.

14           **MR. WILSON:**  Ryan Wilson, District of Columbia.

15           **MS. DENG:**  Anne Deng, District of Columbia.

16           **THE COURT:**  Good morning.

17           And for the defendants?

18           **MR. HAMILTON:**  Good morning, Your Honor.  Eric

19      Hamilton, Department of Justice, for defendants.

20           **THE COURT:**  Good morning.

21           **MR. CHASIN:**  Good morning, Your Honor.  Steve Chasin

22      from the Department of Justice for the defendants.

23           **THE COURT:**  Good morning.

24           **MR. HALL:**  Your Honor, Christopher Hall, from the

25      Department of Justice, Federal Programs Branch, for same

```
 1      group.

 2              THE COURT:  Good morning.  Good to see counsel

 3      again.

 4          So let's introduce the matter.  Plaintiffs, which include

 5      19 states and the District of Columbia, filed suit against 41

 6      defendants which included cabinet agencies, which I should say

 7      include cabinet agencies, secretaries, other federal agencies,

 8      the heads of those agencies.  The states challenged the

 9      Government's termination of probationary federal employees

10      specifically asserting that rights and interests of the states

11      themselves were compromised by the manner in which the Federal

12      Government proceeded.  The states allege violations of the

13      Administrative Procedures Act and they generally accuse the

14      Government of engaging in activities that are ultra vires.

15          On March the 7th, the plaintiffs filed a motion for a

16      Temporary Restraining Order.  The Court held a hearing on

17      March the 12th and then granted the motion and issued a TRO on

18      March the 13th.  The TRO has a duration of 14 days, and

19      accordingly expires tomorrow at I think about 8:15 p.m.

20          On the 20th of March the states filed the motion that's

21      technically before the Court now which is a request for a

22      § 705 stay and a Preliminary Injunction.  The states have also

23      asked that the TRO be extended.

24          The parties helpfully proposed a briefing schedule which

25      the Court adopted and then after some activity in the Court of
```

1    Appeals, the Court directed the parties to also address the

2    scope of any injunctive relief should the Court conclude that

3    any preliminary injunction was, in fact, in order.  And the

4    parties complied and I've received your briefs and they're

5    docketed at papers 101 and 102 in the electronic case file.

6        The Government separately filed a notice of appeal on the

7    14th of March.  The Government sought an administrative stay

8    or a stay pending the resolution of the appeal.  The Court of

9    Appeals denied the request and in fairness, their denial was

10   tied to the following statement:  Given the District Court's

11   stated intention to hold a hearing on March 26, 2025 and to

12   promptly grant or deny preliminary injunctive relief

13   thereafter, the panel decided that it was appropriate to deny

14   the request for a stay.  So that's my sense and understanding

15   of where we are.

16       First of all, Ms. Williamson, any quarrel with the

17   Court's statement of our procedural history and status?

18           **MS. WILLIAMSON:**  I believe the Court got it right,

19   Your Honor.  Thank you.

20           **THE COURT:**  Mr. Hamilton, how does it sound to you?

21           **MR. HAMILTON:**  No concerns, Your Honor.

22           **THE COURT:**  Okay.  Well then let's go ahead and

23   proceed.  The plaintiffs obviously go first.

24       Do you have any evidence or testimony you want to present

25   today or merely argument?

```
 1              MS. WILLIAMSON:  No evidence or testimony today,
 2    Your Honor; just argument.
 3              THE COURT:  Okay, I'll hear from you.  I should have
 4    directed the clerk to move the standing desk in the position I
 5    thought it would be there.  Let's take a second to get that
 6    properly set up.  Are we plugged in?  Check those mics.
 7              MS. WILLIAMSON:  Testing one, two, three.
 8              THE COURT:  Sounds good.
 9              MS. WILLIAMSON:  Thank you, Your Honor.
10              THE COURT:  Thank you.
11              MS. WILLIAMSON:  As set out in plaintiffs' motion,
12    the Court should convert the Temporary Restraining Order to a
13    Preliminary Injunction covering all defendants.  The analysis
14    for a Temporary Restraining Order and a Preliminary Injunction
15    as the Court knows are the same.  The plaintiffs continue to
16    meet all four factors.  They supplied even more argument --
17    even more evidence indicating why a Preliminary Injunction is
18    warranted at this stage.
19        I would like to address, in particular, three arguments
20    of the defendant agencies in arguing against continued relief
21    in this case at this preliminary stage.
22        First, the defendants' primary and truly only merits
23    argument here is that these -- this mass termination of nearly
24    25,000 people defendants say was not a reduction in force.
25    Defendants say that instead, they describe it as in one point
```

```
1     of their brief as an assessment of an employee's utility to

2     the agency in light of resource constraints and agency

3     priorities.  They describe it in another place in their brief

4     as a decision that paying the salaries is unwarranted given

5     the agency's current priorities.  But Your Honor, all of these

6     descriptions no matter the term or phrase are RIFs, they are

7     reductions in force.

8          We know that because there are regulatory provisions that

9     OPM established to tell an agency when it is conducting a

10    reduction in force.  And one such occasion is a

11    reorganization.  That's the planned elimination, addition, or

12    redistribution of functions or duties in an organization.  And

13    "function" is defined in these regulations as all or a clearly

14    identifiable segment of an agency's mission.

15         So if an agency alters its mission such that it needs to

16    reduce the number of employees or change the positions of

17    employees, that is by definition a reduction in force whether

18    that is described by the express terms of the regulation or

19    described in some other similar term.

20         So this is a reduction in force.  The evidence -- not

21    only does the regulation support that, but the evidence before

22    the Court supports that.

23         The defendant agencies relatedly argue that they may have

24    some freestanding, independent authority to fire probationary

25    employees through a mechanism that isn't written in the
```

1    regulations.

2         Your Honor, there are at least two problems with this

3    argument.  The first is that if there were a mechanism to fire

4    probationary employees for no reason at all, for any reason,

5    it doesn't make sense that OPM would then have regulations

6    setting out specific procedures where certain types of

7    termination decisions were made.  The defendant agencies would

8    merely every time say, I just want to fire this person if it

9    were that easy to fire a probationary employee for absolutely

10   no reason.

11        But even more importantly, Your Honor, the evidence here

12   today certainly does not suggest that the defendant agencies

13   relied on some freestanding authority.  The evidence shows in

14   the letters that the probationary employees received, as well

15   as in the declarations of the hiring authorities at these

16   agencies that these were decisions, these were purportedly

17   decisions to terminate for cause because of performance

18   issues.

19        So it's merely a post hoc rationalization to say that

20   there's some sort of freestanding authority that the agencies

21   might have apart from the OPM regulations.  There's no support

22   for that in the record before you or in the regulations.

23        Your Honor, I'd also like to address defendants' argument

24   on standing.  In the defendants' filing in opposition to

25   plaintiffs' motion for preliminary injunction, defendants make

 1    the argument that there isn't a close enough tie between the

 2    relief that defendants seek, essentially the recision of the

 3    reductions in force, and the injuries that plaintiffs

 4    suffered.

 5         It's sort of curious that they make that argument here

 6    because in their previous filing at the TRO stage, defendants,

 7    their own brief stated that the states' asserted injuries can

 8    only be conceivably redressed by the reinstatement.

 9              THE COURT:  Four times.

10              MS. WILLIAMSON:  Yes, Your Honor. So it seems they

11    understood the direct link between the injuries that the

12    states are suffering and the remedy here which is to remedy

13    the harms that the state suffered because the defendant

14    agencies went through these unlawful RIFs without notice.

15         So *Laufer* doesn't provide otherwise.  Informational

16    injuries are a viable form of injury as the Court recognized

17    in its TRO opinion.  And that is the sort of injury that the

18    plaintiffs suffered here, along with downstream harms stemming

19    from those injuries and they seek redress for those downstream

20    harms.

21         The final issue I'd like to address with the Court is why

22    uniform relief is warranted at this preliminary stage.

23         So the harms to the state, Your Honor, the plaintiff

24    states' harms, they are integrated into what a RIF actually

25    looks like in practice and the fact that there's no way to

 1    sort of --

 2         THE COURT:  I think we need to more formally

 3    introduce this issue because this is a critical issue.  Not

 4    all 50 states plus the District of Columbia have come before

 5    this Court.  The majority of the states in the country have

 6    not joined this lawsuit; only 19 did, plus DC.  And as the

 7    Court has attempted to make clear at every opportunity when it

 8    was appropriate to do so, that despite the views of some that

 9    the employees themselves were treated unlawfully, cruelly,

10    inappropriately, they are not parties in this case.  They are

11    not before this Court.  And to the extent that they were

12    wronged, A, this Court makes no finding in this regard; and B,

13    this isn't the forum.  They go elsewhere.

14         Other Courts have looked at it.  The strong indication is

15    that their remedy lies in an administrative agency, at least

16    initially, in the Merit Systems Protection Board.  This case

17    is not The Probationary Employees v. The United States.  Much

18    as some people would like to make it that case and much as

19    some people who feel wronged and aggrieved believe it should

20    be that case, it isn't.  It is the states, the states that

21    specifically sued.

22         So my question is how does a national injunction, uniform

23    relief across the entire country or better yet, why is such an

24    order, such an injunction, necessary to provide the relief

25    that you contend the 19 states and DC are entitled to?  Why do

1   I have to sweep beyond the parties actually in this case,

2   beyond the geography of these 19 states and the District of

3   Columbia in order to remedy the harms experienced and endured

4   by these 20 parties?  That's the problem.  That's the issue

5   that has to be faced by anyone who is contending that a

6   national injunction is appropriate in this case.

7        So help me with that.

8        **MS. WILLIAMSON:**  Yes, Your Honor.  And absolutely,

9   Your Honor, the issue here is the harm to the plaintiff

10  states.  And the harm to the plaintiff states here before you

11  today can only be remedied through a uniform preliminary

12  injunctive relief at this stage.  There are two --

13       **THE COURT:**  Why can't I enter an injunction that

14  just stops the Government's, from your perspective at least,

15  illegal conduct vis-a-vis these 19 states and the District of

16  Columbia?  And then that's it.  And then there's no contention

17  that the Court has exceeded its jurisdiction, gone places that

18  it didn't need to go, engaged in an unnecessary battle for

19  whatever reasons with the Government, but exceeded what Courts

20  should do which is confine themselves to the issues and the

21  parties that are right in front of them.

22       **MS. WILLIAMSON:**  Yes, Your Honor.  The harms to the

23  plaintiff states don't flow merely from the particular firings

24  with the duty stations in their jurisdiction.  The harms to

25  the plaintiff states flow from the way that these RIFs were

```
 1    conducted unlawfully across the country.
 2         So I'll give you a couple of examples, Your Honor.  There
 3    are people who may work at a duty station in the state of
 4    Virginia which is not a plaintiff state, but may live in the
 5    District of Columbia or Maryland, two plaintiff jurisdictions.
 6    That individual, if that individual is not part of the Court's
 7    preliminary relief at this stage, that individual's
 8    termination would continue under the unlawful RIF and that
 9    individual would continue --
10         THE COURT:  Well, why can't I define the group of
11    terminations that are violative to include exactly that
12    termination by virtue of tying it to that employee's state or
13    place of residence?
14         MS. WILLIAMSON:  Your Honor, because there still is
15    the issue of the defendants' intention to conduct future RIFs
16    and the way that affects the relief the Court would issue.
17         THE COURT:  So, no future RIFs that impact people
18    more than 50 perhaps, maybe not more than 50, we have to get
19    to that, who reside in DC or reside in Virginia such that
20    there would be this inappropriate impact on an actual party,
21    the state of Maryland, the District of Columbia.  Because
22    again, it's not the person, it's the state.
23         And the Court's responsibility and objective here if it
24    deems a PI to be appropriate upon a conclusion that the
25    Federal Government did break the law, is to protect these
```

```
 1     parties from the harms that flow from that, i.e., the burdens
 2     cast upon them.
 3         So why is it impossible to right an injunction in such a
 4     way as to make sure that these 20 parties are protected going
 5     forward without the need of the Court to go off into the other
 6     31 states or for the Court to impose restrictions that affect
 7     those other 31 states only to the extent necessary to make
 8     sure that there's compliance vis-a-vis these 20?
 9         MS. WILLIAMSON:  Yes, Your Honor.  So, for example,
10     the answer to Your Honor's question is that the plaintiff
11     states' harms will continue if there's not uniform preliminary
12     relief at this stage.
13         THE COURT:  So show me how that is true.
14         MS. WILLIAMSON:  Yes.  So, for example, as another
15     example, an individual who works remotely, but lives in the
16     state of California but works remotely in a state like Texas,
17     not a plaintiff state.  If that individual remains --
18         THE COURT:  So where do they live?
19         MS. WILLIAMSON:  Texas.
20         THE COURT:  So they live in Texas.  Okay, so they
21     get laid off, they lose their job.  The burden that is imposed
22     on a state by virtue of that is imposed on the state of Texas.
23         MS. WILLIAMSON:  The burden associated with other
24     social services continues to be on the home state of that,
25     that individual in California.
```

```
 1              THE COURT:  I thought you said he lived in Texas.

 2              MS. WILLIAMSON:  I'm sorry, the other way around.

 3              THE COURT:  So the person lives in California, a

 4      plaintiff state.

 5              MS. WILLIAMSON:  I meant the other way around as in

 6      my -- so the person lives in Texas, works in California.  The

 7      duty station in California is covered, but if the Court were

 8      to issue relief that did not include Texas where the person

 9      lives but doesn't work, then the relief would not -- there

10      would still be issues as to social services, coverage of other

11      forms of provision of resources that the state has to provide.

12              THE COURT:  Why?  He lives in Texas.  Texas is not

13      complaining.  Texas is apparently completely happy and their

14      position is they didn't feel any impact or if they did, they

15      didn't join this lawsuit.  And the federal probationary

16      employees who happen to reside in Texas, they may be upset

17      about their situation, but they're not parties to this case so

18      their interests are not squarely before the Court.  The state

19      of Texas isn't in here.  Maybe they are going to have all

20      kinds of burdens in the form of increased unemployment

21      insurance claims, increased dependence on social services, et

22      cetera.  But that's for Texas to decide and they have not

23      asserted those interests, rights.  They haven't alleged a

24      violation of the law by the Federal Government as it affects

25      them and they haven't come here.  So what's the problem?
```

```
 1              MS. WILLIAMSON:  Your Honor, in a situation where

 2     someone lives in one jurisdiction and works in another, the

 3     jurisdiction that would provide social services like, for

 4     example, processing Medicaid applications and the like, that

 5     would be the jurisdiction that the person lives in and then

 6     the jurisdiction that they work in would also suffer harms in

 7     the form of increased applications for unemployment benefits.

 8              THE COURT:  So you're saying--

 9              MS. WILLIAMSON:  So jurisdictions are affected in

10     both situations.

11              THE COURT:  So you're telling me that the way that

12     state unemployment law works, unemployment insurance law works

13     is that if he holds the job in California, but is permitted to

14     work remotely and lives actually in Texas, that when he now

15     needs Medicaid services, or assistance in finding a new job,

16     all the things that the workforce statute provide for, he goes

17     to his state agencies in Texas to get that help, but that he

18     is entitled to unemployment insurance coverage from the state

19     of California?

20              MS. WILLIAMSON:  He's entitled to, for example, he

21     would apply for Medicaid services and the like in the state in

22     which he lives.

23              THE COURT:  Texas.

24              MS. WILLIAMSON:  I'm confusing it.  Essentially,

25     Your Honor, my point is that both jurisdictions in this case
```

1    are affected and harmed by the continued failure to rescind

2    the --

3            **THE COURT:**  I get that point.  I'm trying to get you

4    to a more granular level.  Explain to me the harms endured and

5    cast upon the state of California where the -- okay, let's

6    come up with a hypothetical so we've all got a better image of

7    it.  These are complex issues and they're hard to handle on

8    the fly, but I need help with this.

9        So we've got an office that's in the state of California.

10   Let's say it's the Bureau of Land Management, an agency of the

11   United States Department of the Interior, a defendant in this

12   case.  And the BLM has decided that they need IT assistance.

13   And so they employ IT technicians, but IT work being what it

14   is, even though this is the Bureau of Land Management, you

15   don't actually have to be out on the land to do IT work for

16   the BLM and the agency has made decisions that say it's okay

17   for people to work remotely in this job.  They're technically

18   working for the BLM office, let's say, in Sacramento,

19   California.  But for whatever reasons they want to live in

20   Dallas, Texas.  And so they live in Dallas, Texas.  That's

21   where their family is.  That's where their house is.  That's

22   where their kids go to school and that's where they physically

23   go to work every day in their home office and they have for

24   years.  And they perform IT services very satisfactorily --

25   well, I guess we can't say for years -- for less than a year.

1    They're a probationary employee.

2        So now the BLM decides that they are going to reorganize

3    and they're not going to have remote workers anymore, they're

4    not going to have probationary workers, they're not going to,

5    you know, need the number of people that they have previously

6    had.  The new administration, there's a new philosophy

7    animating the Government, we're going in a different

8    direction.  And accordingly, you're terminated.  All right?

9        We're living in Dallas, we work for the BLM office in

10   Sacramento, an IT worker.  All right, you're out of work and

11   you need social services.  You're not applying for those

12   social services in Sacramento, California.  You're applying in

13   Dallas, Texas and you're going to the local agencies there to

14   get help.

15       My question is, where do you apply for unemployment

16   insurance?  I don't know the answer to that question off the

17   top of my head.  Do you apply in Texas or do you apply in

18   California because that's where you were employed?

19           MS. WILLIAMSON:  Your Honor, the answer would

20   typically be California, the state in which you're employed.

21           THE COURT:  All right, well --

22           MS. WILLIAMSON:  And so essentially --

23           THE COURT:  Do we have that in the record?

24           MS. WILLIAMSON:  I am not certain, Your Honor, that

25   it's in the record on that particular point.  I'd have to

1    check.

2           **THE COURT:**  All right, fair enough.  The Court

3    didn't demand it previously.  Within 24 hours I would like the

4    parties to supplement the record on that question of where do

5    -- where are remote workers by law to go to seek the panoply

6    of benefits that they might be entitled to as a suddenly

7    unemployed person.  You can see my issue.

8           **MS. WILLIAMSON:**  Yes, Your Honor.

9           **THE COURT:**  Because this Court has great reluctance

10   to issue a national injunction.  There's a lot of things wrong

11   with national injunctions just on a jurisprudential level.

12   And courts and commentators are all over the issue and it's

13   very current.  That doesn't mean the Court won't enter one if

14   the circumstances and law in this case compel it.

15          **MS. WILLIAMSON:**  Yes, Your Honor.

16          **THE COURT:**  But I'm going to resist doing it.

17   You're going to have to show me that it's essential to

18   remedying any harms that your clients are specifically

19   experiencing.

20          **MS. WILLIAMSON:**  Yes, Your Honor.  And I believe

21   there are fact-specific circumstances warranted here as we've

22   discussed, the effect on multiple states of a remote worker or

23   a worker who works in one jurisdiction and lives in another,

24   as well as, Your Honor, the defendants have indicated that

25   they intend to continue to conduct RIFs in the future.  And so

1    if the Court were not to unwind the entire unlawful RIF here,

2    it would have the effect of while the agencies go through the

3    process of conducting future RIFs, they would not be in a

4    position to account for the employees who, some of them have

5    been reinstated, some of them have not been reinstated.

6        **THE COURT:**  Tell me how that adversely impacts these

7    19 states and the District of Columbia.  That might be

8    absolutely true and it might be completely chaotic and an

9    unintelligent way to run a national Government, but that's not

10   the issue.  The issue here is how their proceeding in that

11   manner causes the 20 parties, the 20 plaintiffs in this case

12   to experience less than the full remedy to which you contend

13   they're entitled.

14       **MS. WILLIAMSON:**  And it does, Your Honor, because

15   the parties in this case would continue to perform rapid

16   response services for people who live in other jurisdictions,

17   but work within their jurisdiction.  So, for example, the

18   parties would have to sort of perform rapid response services

19   for people who might not ultimately be terminated under proper

20   RIF procedures.

21       **THE COURT:**  Okay, so your example on that in the

22   DC/Maryland/Virginia area would be residents of Maryland or DC

23   who work at an agency in Northern Virginia and because

24   Virginia is not a party and because the Court didn't issue a

25   national injunction, the Government goes ahead and with no

1    notice terminates everybody that works at that or all the

2    probationary employees or some significant number of them,

3    more than 50, at that Government office in Northern Virginia.

4         **MS. WILLIAMSON:**   Yes.

5         **THE COURT:**   Some of them live in Maryland.  And as a

6    consequence, the burden of their sudden unemployment is cast

7    upon the state of Maryland and the District of Columbia.

8         Well, why can't the injunction be drawn in such a way as

9    to prohibit that circumstance without it necessarily applying

10   to people who live and work for a Government agency in Dallas,

11   Texas?  Is it impossible to craft an injunction that addresses

12   that interest that you've described without it being a

13   national injunction?

14        **MS. WILLIAMSON:**   Your Honor, I think an injunction

15   crafted more narrowly would lead to a situation where full

16   relief couldn't be offered to the parties at the end of the

17   case and would lead to a circumstance where at least in some

18   instances, the plaintiff states would likely continue to

19   suffer harm from their need to continue to provide for

20   employees who are not reinstated who have some connection to

21   their jurisdiction.

22        **THE COURT:**   So I don't think this has been

23   adequately addressed in the briefs and I'm going to expand

24   what I said a moment ago in terms of the supplementation

25   that's due at 10:00 tomorrow morning, and that is to this

```
1    exact question of why nothing less than a national injunction
2    forbidding what allegedly has occurred here would be
3    sufficient to remedy in the short term or protect in the short
4    term or stay, however we're going to refer to it, to protect
5    the interests of these exact 20 parties, these governmental
6    units; not persons, but governmental units.  We need more on
7    this.
8              MS. WILLIAMSON:  Yes, Your Honor.
9              THE COURT:  Do you have other argument?
10             MS. WILLIAMSON:  I don't, Your Honor.  We would just
11   ask that the Court enter the preliminary injunction.
12             THE COURT:  Well, I have one more area that I want
13   to get into and that is what technically triggers the
14   obligation to give the notice?  What triggers it?  Is it 50
15   people in the competitive area?  Is it 50 people in the state?
16   And this is a complex question, particularly in densely packed
17   metropolitan areas like the DC metropolitan area vis-a-vis
18   Virginia.
19             MS. WILLIAMSON:  Yes.  Your Honor, it's 50 people in
20   a competitive area.  And a competitive area can be defined to
21   include up to the entire agency.  So a competitive area may be
22   Baltimore, but it may be, for example, all of the Department
23   of Homeland Security.
24             THE COURT:  So let's suppose that the office is in
25   Alexandria.  100 people -- 100 probationary workers work there
```

1    and the Government wants to terminate those 100 probationary

2    workers.  And 60 of them live in Virginia, and 20 live in DC,

3    and 20 live in Maryland.  But the competitive area for

4    purposes of my hypothetical it's defined as, you know, this

5    agency office or region which is headquartered in that office

6    in Alexandria.  So no questions, more than 50 people involved.

7    There's 100 people involved, but the majority of them live in

8    Virginia; 60 of them.  Only 20 live in DC, only 20 live in

9    Maryland.  Does Maryland as a state have notice rights in

10   those circumstances?

11           **MS. WILLIAMSON:**  Your Honor, the rule -- I just want

12   to get the language specifically.  So the statute itself says

13   just a significant number of people.  So query whether the

14   statute itself might in that situation trigger the obligation

15   because 20 might be considered a significant number.  Under

16   the regulation, the agency would -- I believe the agency would

17   require -- would supply notice to Virginia, but not to

18   Maryland and DC.

19           But Your Honor, I should add that in this case the

20   agencies proceeded with RIFs that were not so limited in

21   geographic scope.  They were RIFs that were nationwide of

22   hundreds and thousands of people across multiple

23   jurisdictions.  So there was not -- because the agencies

24   didn't go through the process of attempting to comply with the

25   RIF procedures, they didn't themselves define a competitive

1    area.

2         **THE COURT:**  It's just because, though, the Maryland

3    and DC could be impacted by RIFs that are focused in Virginia

4    or some other nonparty state that we get into complicated

5    issues about scope of relief.  Congress didn't make

6    competitive areas congruent with state boundaries.

7         **MS. WILLIAMSON:**  Exactly.

8         **THE COURT:**  Which makes it hard for the Court to

9    honor its clear ambition to hold this -- hold any relief back

10   so that it is only directed at the 20 plaintiffs.

11        **MS. WILLIAMSON:**  Yes, Your Honor.  In this case

12   there was no attempt to define competitive area in some narrow

13   fashion and instead, you see agencies like the treasury

14   department firing several thousand people at once across the

15   country.

16        **THE COURT:**  Well, one of the problems that the Court

17   faces in all of this is if it concludes that, in fact, these

18   were RIFs, then it's really impaired by the fact that the

19   Government didn't take the steps that the law requires,

20   including defining competitive areas first before they acted.

21        **MS. WILLIAMSON:**  Yes, Your Honor.

22        **THE COURT:**  And it's no excuse on the Government's

23   part to say well, we didn't think it was a RIF so we didn't do

24   it and we still don't have to do it.  Well, once the Court

25   finds that it was a RIF, then the Government is in a jam.

```
 1            All right, anything else, Ms. Williamson?
 2            MS. WILLIAMSON:  No, Your Honor.
 3            THE COURT:  Thank you.
 4            MS. WILLIAMSON:  Thank you.
 5            THE COURT:  Good morning, Mr. Hamilton.
 6            MR. HAMILTON:  Good morning, Your Honor.
 7            THE COURT:  Why don't we go right to the heart of my
 8    biggest problem today.
 9            MR. HAMILTON:  Sure thing.
10            THE COURT:  Which is that just imagine
11    hypothetically that the Court is generally not persuaded by
12    your arguments on standing and the merits, but is deeply
13    concerned about this issue of scope of relief.  I know you
14    don't subscribe to the theoretical position of the Court or
15    the hypothetical position of the Court on the merits and
16    standing, but humor me.  And help me to understand how I would
17    craft an order, craft an injunction that got the 20 parties
18    the relief that they're entitled to under my theory, but then
19    didn't extend in this sweeping way across the country without
20    attention to the fact that 31 states presumably looked at this
21    issue and decided not to join the case.  How do I draft that?
22            MR. HAMILTON:  Yes, Your Honor.  Let me see if I can
23    help with that.  So -- and this is something we can try to
24    expand on in what we submit by 10 a.m. tomorrow, but the
25    notice requirement that the states are suing on in 3502 says
```

 1     why there is a notice required.  And it is so that the state

 2     can carry out rapid response activities under § 134(a)(2)(A)

 3     of the Workforce Investment Act.  So the dispute really would

 4     center on whether the state has Workforce Investment Act

 5     obligations.  And that's distinct from the other things that a

 6     state law might obligate the state to do in connection with an

 7     employee becoming unemployed.

 8         And it should be enough for the states to know whether

 9     they do or do not have these rapid response requirements.  The

10     reinstating of employees is a separate issue that as Your

11     Honor knows from our briefing it's our position that there's

12     an entirely different way for those issues to be litigated

13     through the Merit Service[sic] Protection --

14             **THE COURT:**  Absolutely.  But if I don't stop

15     Virginia, if I don't stop you from doing what I say

16     hypothetically are illegal RIFs in Virginia, and there are

17     many Maryland residents who work at federal offices in

18     Virginia.  So you go ahead and terminate them and they are

19     then as I've said in my opinion, cast upon the state of

20     Maryland, one of the parties in this case as a burden, they

21     now have a responsibility to them that the Federal Government,

22     Congress, imposed on them.

23         So don't I have to come up with something that says

24     listen, Federal Government, to protect the interests of

25     Maryland and DC which I find are protectable in this

1    situation, you can't do this in Virginia.

2         **MR. HAMILTON:**  Well, Your Honor, I'm not sure I

3    agree that the Workforce Investment Act casts these people

4    upon the states.  What that act does is it creates this

5    program that obligates states to participate in providing

6    rapid response activities which I think are --

7         **THE COURT:**  But that's only triggered by virtue of

8    the fact that the people got terminated.  I mean, the state

9    doesn't have to do anything if the people haven't lost their

10   jobs in significant numbers and come sweeping into the state

11   agencies with a need for help.

12        **MR. HAMILTON:**  So as far from what I understand the

13   rapid response program is where states send individuals to

14   provide information to persons who have been separated as part

15   of large layoffs.  This is something that happens both with

16   private and public sector mass layoffs and that is distinct

17   from whether employees are being reinstated to whatever

18   employment they had before the mass layoff in question.

19        **THE COURT:**  Well, the whole mission is to serve the

20   suddenly unemployed who exist in sufficient numbers.

21        **MR. HAMILTON:**  Yes, but I think the distinction is

22   that whatever injury the states can complain about should be

23   addressed by saying that the states can't be held liable by

24   the Federal Government for not complying with the Workforce

25   Investment Act.  Really, this lawsuit should have been able to

```
1    be dealt with if the states had reached out to the Department
2    of Labor and inquired about if there are other agencies, I
3    believe it's Labor that administers the Workforce Investment
4    Act.  I might not be correct about that.  But anyways, there's
5    a federal program that the states work under and it seems like
6    a lot of this could have been sorted out through communication
7    between the agency and the states.
8         But an additional point that Your Honor noted earlier in
9    the hearing is the fact that not all reductions in force under
10   the reduction in force statute require notice to states.  It's
11   only those that the statute says is a significant number and
12   then the OPM regulations add to that that it would be where
13   there are 50 people or more in a competitive area.
14              THE COURT:  Yeah, but in a competitive area, not in
15   a state.  That's another thing -- that creates a real problem
16   for the Court because they're not congruent.
17              MR. HAMILTON:  Right.  And competitive area is
18   defined under 351.402 and it can be quite small.  That
19   regulation says exactly what the minimum competitive area must
20   be.  The minimum competitive area is one, a subdivision of the
21   agency; two, under separate administration; three, within the
22   local commuting area.  And it's only when that competitive
23   area exceeds 50 employees --
24              THE COURT:  But that's easily imagined in
25   DC/Maryland/Virginia.
```

```
 1            MR. HAMILTON:  I'm not so sure.  The 18 agencies

 2   that had to comply with the Temporary Restraining Order, the

 3   declarations that we've submitted show a variety in what

 4   happened with probationary employees.  I think I counted ten

 5   had fewer than 500 probationers terminated agency wide.  And

 6   so once we -- and, you know, this hasn't been borne out in the

 7   declaration --

 8            THE COURT:  We're only at the preliminary

 9   injunction.

10            MR. HAMILTON:  Exactly.  And we submitted

11   information for compliance, not separate fact issues.  But I

12   don't know the extent to -- if those were measured on a,

13   again, subdivision of an agency under separate administration

14   within those subdivisions, then broken out by commuting areas,

15   I don't know the extent to which the competitive area would

16   have been triggered.  And the record --

17            THE COURT:  Well, I think the Court unfortunately

18   has to do some reasonable projection from the evidence that we

19   do have, recognizing that we're at a very preliminary stage of

20   the litigation, but I've still got to make a fundamental

21   decision about whether relief is appropriate or not.  And

22   there may be some relatively small ones.  There are also some

23   enormous ones, many thousands.  The IRS comes to mind.

24        So I'm still stuck with the problem of action that the

25   Federal Government takes in a nonparty state that spills back
```

 1    onto a party state.  And if I'm determined to protect the
 2    party state from that impact because I find that it otherwise
 3    meets the criteria that I have identified, I'm struggling with
 4    how I would design the injunction to forbid the Government
 5    from doing that in Virginia, an example you and I have been
 6    using, without sweeping more broadly than I need to do that.
 7    And, of course, it's when these national injunctions -- I'm of
 8    the view that sometimes a national injunction is entirely
 9    appropriate and there are circumstances when that's crystal
10    clear.  This isn't such a situation.  This is murky.  And the
11    Court unfortunately has the responsibility to kind of wade
12    into the swamp here and figure out if it can't draft something
13    more restrictive that is not just easily sweeping across the
14    country.
15        That's a simple solution and easy to write, but as I
16    discussed with your opponent, profound implications.  This is
17    a single district court in one district and I'm very sensitive
18    to the issue that judges should not step beyond the authority
19    that they have been explicitly granted.
20        At the same time, judges have a responsibility to remedy
21    the harms that are properly before them and to not shrink from
22    doing that when the evidence, law and circumstances otherwise
23    make it clear that that's appropriate.  I think that the
24    instinct should be on the side of modesty, and caution, and
25    that's where mine is.  But in that regard, I need help from

1    the Government in seeing how the lines can be drawn short of

2    all 50 states.

3         **MR. HAMILTON:**  Yes, Your Honor.  And we'll try to

4    expand on that in what we submit tomorrow morning.  But we

5    agree that there can't be a nationwide injunction here where

6    30 states have decided against litigating this at all and

7    another state --

8         **THE COURT:**  There can't be unless the Court finds

9    that there's no way not to do that and protect the interests

10   of these 20 parties.

11        **MR. HAMILTON:**  Right, right.  And the interest of

12   these 20 parties we start with the statute, 3502 and the

13   notice provision in that statute which says that states are

14   entitled to this notice when there's a reduction in force and

15   it is specific in saying what the purpose is of the notice.

16   It is to carry out the rapid response activities under § 134

17   of the Workforce Investment Act.

18        **THE COURT:**  Yeah, but the problem is that the states

19   are -- these 20 states are unquestionably impacted by

20   terminations that occur in nonparty states.  There's just no

21   way around that.

22        **MR. HAMILTON:**  That may be, Your Honor, but I think

23   that's distinct from what the Workforce Investment Act

24   requires.  And once plaintiffs start talking about lost tax

25   revenue, providing unemployment insurance, those are

```
 1    downstream issues that --

 2         THE COURT:  I'm not impressed by those issues from

 3    the plaintiff and I think my writing has indicated that.  I'm

 4    much more concerned about the impact on the capacity of states

 5    to bring immediate services to the benefit of people who are

 6    suddenly and unexpectedly unemployed.  And that, to me, is

 7    with crystal clarity what the congressional intent and purpose

 8    was.  And accordingly, those are the Court's marching orders.

 9    I've got to be faithful to that law.

10         MR. HAMILTON:  Yes, Your Honor.  The only thing I

11    would add is that we read that statute to specify those state

12    issues as the Workforce Investment Act, not the other things

13    that state law might obligate a state to do when someone

14    becomes unemployed, whether that be as part of a mass layoff

15    or not like enrolling someone in unemployment insurance.

16         THE COURT:  You have a very cabin confined view of

17    the purpose of the notice.

18         MR. HAMILTON:  We think it's the best reading of the

19    statute and of the regulations.  And again, I would make the

20    point that it isn't all reductions in force under the statute

21    that require notice to the states.  It's only under these

22    certain circumstances and the regulations give agencies

23    decision-making authority in crafting that competitive area

24    which would then determine whether or not a state is even

25    entitled to notice in the first place.  But --
```

1          THE COURT:  Well, you know, I think we're far enough

2     down the road now to know that there's some variance between

3     how the Government and the Court view that and interpret that

4     and I respect the hard work that the Government has put into

5     this and the arguments that they've made, but at the end of

6     the day it's the Court's responsibility to make that decision

7     because in our system of Government, ultimately Courts

8     interpret the law.

9          MR. HAMILTON:  Of course, Your Honor.

10          THE COURT:  So that's what I'll do.

11     Well, you can see the spot that I am most hung up on.  I

12     will look forward to your submission on that on scope of

13     relief and I'll hear you on anything else that you want to

14     argue this morning.  And perhaps there are other issues that

15     are going to spark my interest and reaction, but the scope of

16     relief issue is a big issue.

17          MR. HAMILTON:  Yes.  Thank you, Your Honor.  I'll

18     highlight just a few points because I think we have sharpened

19     our arguments since the TRO opposition brief that we filed.

20          I'll start with standing.  We think the plaintiffs lack

21     standing here, all 19 states, as well as the District of

22     Columbia.  The plaintiffs are focusing on this informational

23     injury, but their theory of standing in connection with that

24     is quite unusual because they aren't seeking the information

25     from the Federal Government; they're, of course, seeking the

1    reinstatement of these employees.  That isn't going to address

2    them not getting the information that they claim they should

3    have received when the Federal Government separated these

4    employees.  Now there's a different --

5              THE COURT:  Well, if the employees are reinstated

6    they no longer need the information.  They no longer need the

7    notice.

8              MR. HAMILTON:  But --

9              THE COURT:  Because they don't -- if there's no

10   fire, there's no need for the fire department to respond.

11             MR. HAMILTON:  I suppose, but the plaintiffs are

12   complaining about not having gotten information, not -- I

13   suppose I just see that as distinct.  You think about a lot of

14   informational cases might be FOIA litigation and someone, a

15   plaintiff might say I'm entitled to receive a document and

16   then the plaintiff has standing because they're seeking that

17   document.  And that isn't what the plaintiffs are seeking

18   here.

19        As for the future terminations of probationers that might

20   happen, plaintiffs can't satisfy the injury in fact element of

21   standing.  These separations haven't even happened and that's

22   also a problem under the Administrative Procedure Act because

23   the APA allows review of agency actions, but plaintiffs can't

24   even specify what these agency actions are with respect to the

25   termination of future probationers.  And so I won't rehash our

```
1        United States against Texas argument, but in the end we think
2        the states are relying on these downstream injuries that
3        Footnote 3 of Texas precludes.
4            On the merits, something I'd note, you know, a new
5        argument that we've raised at the PI stage is that the RIF
6        statute does not apply to anything that might colloquially be
7        called a reduction in force or a reorganization or something
8        like that.
9            There is that subsection (d) in 3502.  We read that as
10       really a sequencing sentence that is saying that when the
11       statutory RIF section is implicated, the notice needs to
12       precede the termination of employees.  But there isn't
13       anything in 3502 that says that the statutory RIF procedure is
14       mandatory whenever something might colloquially be called a
15       reduction in force.  Instead, that statute begins by telling
16       OPM that it needs to promulgate regulations that give agencies
17       this pathway and this forum to go through prioritizing
18       different employees through this process for carrying out a
19       reduction in force.
20           And on the merits, our notice argument which is of course
21       part of also our scope of relief argument, but the states of
22       course are -- their claims ride on the premise that they were
23       entitled to receive notice for each of the 21 agency
24       defendants' reductions in force and they haven't carried their
25       burden of showing that as so.  Because in the end, the need
```

 1    for a notice rides on there being a competitive area that was

 2    50 or more people and that's the agency's discretion to set

 3    that competitive area.

 4         **THE COURT:**  So if the agency decides, ahhh, we just

 5    won't define competitive areas and if we do that, then we're

 6    exempt from all of these other obligations.  A hypertechnical

 7    interpretation, but it gets us out of having to conform to

 8    what was the obvious congressional purpose which was to

 9    insulate states and let them have the opportunity to get

10    prepared for the wave of unemployed people cast upon them when

11    there's an in mass firing.  I just don't think it's plausible.

12         **MR. HAMILTON:**  I think the congressional purpose of

13    3502 is actually for OPM to have a reduction in force process

14    that agencies can pick up off the rack and follow if they want

15    to go in that direction for executing a reduction in force.

16         **THE COURT:**  But Congress didn't have a generalized

17    purpose of trying to protect states like these 20 parties from

18    the consequences of just suddenly terminating 24,000 people.

19    That wasn't their purpose.

20         **MR. HAMILTON:**  I don't think that's a main purpose

21    of 3502.  There is the notice requirement as part of 3502 and

22    that has this tie into the Workforce Investment Act, but I

23    don't read that as an overarching purpose of § 3502 of Title

24    V.

25         On the balance of the equities and public interest

1     factors, these sharply point against injunctive relief.  The

2     plaintiffs have complained of some monetary injuries that

3     they're suffering.  Monetary injuries that the defendants are

4     suffering are so much greater.  Reinstating 24,000

5     probationary employees is an enormous expense for the Federal

6     Government that does not compare to the injuries that the

7     plaintiffs are complaining about.

8             **THE COURT:**  Courts sitting in equity whether it's at

9     the TRO stage or a PI stage has the responsibility to start

10    with the status quo, the status quo ante in this circuit.  And

11    the status quo ante in this circuit is that those 24,000

12    people were employed at their Government jobs.  And then the

13    Government is the one that engaged in this sudden, and

14    dramatic, and highly consequential action.

15        It's not appropriate to try to flip that around and

16    somehow say please, Court, don't impose this massive burden on

17    us of reinstating all these people.  Think of the expense.

18    Think of the logistics.  Think of the fact that all of their

19    computers have been turned off and so forth.  Hey, if you were

20    so worried about that you shouldn't have done it in the first

21    place.  So I'm not buying that one.

22        What else?

23            **MR. HAMILTON:**  That is the last factor under the

24    Winter test.  I'm happy to address any other questions the

25    Court might have.  If not, we ask the Court would deny

```
 1    plaintiffs' motion for a preliminary injunction.
 2              THE COURT:  Thank you, Mr. Hamilton.  Appreciate
 3    your argument.
 4              MR. HAMILTON:  Thank you, Your Honor.
 5              THE COURT:  And demeanor here in the courtroom in
 6    difficult circumstances.
 7         Ms. Williamson, you're the plaintiff.  I'll give you
 8    brief rebuttal.
 9              MS. WILLIAMSON:  Yes, Your Honor.  Just two quick
10    points.  First, Your Honor, my friend on the other side
11    suggests that the states should have taken a different
12    approach instead of seeking relief and the Court should have
13    notified the agencies themselves of the issue.  But, of
14    course, we know that 3502 places the burden on the Federal
15    Government, the agencies, to notify in advance of the action.
16         So here the states seek relief because of the agency's
17    failure to follow that statute.  It wasn't -- there isn't a
18    provision or a mechanism for the states to relieve themselves
19    of their rapid response duties through some sort of
20    communication with the Government.
21         The second point I'd like, Your Honor, is on the issue of
22    remedy and particularly as it relates to my friend's standing
23    argument, as Your Honor recognized, the notice here is no
24    longer needed, but the question is how to remedy the plaintiff
25    states' harm as a result of the defendant agency's failure to
```

```
 1    provide the notice in the first instance.

 2        So here, the reason that the particular remedy is needed

 3    is because the failure to provide notice caused harms to the

 4    states.  So the information itself is sort of beside the point

 5    at this point, as the Court recognized.  It's a question of

 6    what would remedy the harms from the failure in the first

 7    instance.

 8            THE COURT:  Thank you.  Give me a moment, counsel.

 9        I'm going to have both counsel address one last issue.  I

10    did come in here with a laundry list of things that I wanted

11    to cover and then as happens in hearings, we've jumped around

12    a bit.

13        Reinstatement as a remedy.  Let me hear first from the

14    Government on why reinstatement specifically is precluded

15    because as I think you argue, it's not in the list of

16    traditional equitable remedies that are authorized.  What

17    precludes it?

18            MR. HAMILTON:  Thank you, Your Honor.  That's

19    exactly right.  We don't think that reinstatement is a remedy

20    that federal courts are able to provide.  And that just really

21    goes back to history and it being a remedy that there isn't

22    much precedent for federal courts ordering federal agencies to

23    reinstate federal employees to their work.  And that is all

24    highlighted by the FSLMRS.  Congress anticipated this issue of

25    there being employees who face personnel actions from a
```

1    federal agency and there being a need for there to be some

2    sort of process for that to go through.  And Congress decided

3    it would not be Article III Courts.  Instead, Congress decided

4    that some of those issues would be able to be litigated before

5    the Merit Services[sic] Protection Board.

6          **THE COURT:**  So your point is channeling is all that

7    is authorized.  That because of channeling, the pathway to the

8    agency is all that is authorized.

9          **MR. HAMILTON:**  I think it's a little more than our

10   channeling argument.  I think we just look at history and we

11   don't really see precedent for this.  And the fact that there

12   is an additional statute that actually anticipates this

13   question sort of adds an exclamation mark on that.

14         **THE COURT:**  So what is the remedy?  Assume that

15   despite your best arguments and compelling briefs and

16   spectacular performance here in oral argument you lose on the

17   merits.  Then what remedy, what's the remedy?

18         **MR. HAMILTON:**  Well, plaintiffs at most could I

19   think seek some sort of declaratory judgment about their

20   obligations under the Workforce Investment Act, but, I mean,

21   that is so distinct from what they're seeking here when trying

22   to reinstate 24,000 probationers to Federal Government

23   service.

24         **THE COURT:**  Well, how else do you get the pressure

25   off of the states, the pressure that at least in the TRO phase

1    I found was inappropriately thrust upon them?  How do you

2    relieve that pressure?  How do you get that load off of them

3    but by putting them back into their jobs?

4         **MR. HAMILTON:**  For better or worse, Congress created

5    a system under which there isn't a way for states to get

6    relieved of their administrative burden --

7         **THE COURT:**  So there's no remedy?

8         **MR. HAMILTON:**  There is no remedy for -- depending

9    on the injury we're talking about.  I mean, I question whether

10   the Workforce Investment Act would even give the declaratory

11   judgment possibility, but that really is what this --

12        **THE COURT:**  For decades, if not centuries, trial

13   Courts have been told by their appellate superiors if there's

14   a right, presumably there's a remedy.  And it's the district

15   court's job to find it.  It's not enough to just say well,

16   they carved out a right here but, you know, there's no obvious

17   remedy.  Done, leave them, marooned.  That is not our law.  As

18   a general principle, it's not.

19        Now, you know, there can be circumstances where immunity,

20   justiciability, this Court was involved heavily in

21   gerrymandering litigation for years.  Ultimately the Supreme

22   Court decided that whatever the evils of gerrymandering might

23   or might not be is just can't be fixed by courts.  I

24   understand that.  But there certainly is an absolute duty and

25   effort to try to find a remedy before coming to that throw up

1    your hand position.

2         I'm not going to casually conclude that Congress set up

3    this whole statutory process designed to protect states from

4    the consequences of large federal layoffs and then just

5    casually said oh, but if they don't -- if the Federal

6    Government doesn't follow the law, disobeys the law, there's

7    nothing that the states can do about it.

8         So what's the remedy?

9         **MR. HAMILTON:**  That's what I was attempting to

10   address with my suggestion that at most, the states would be

11   able to seek some sort of declaratory judgment about their

12   obligations under the Workforce Investment Act which is the

13   statute that this notice statute is expressly referencing.

14        **THE COURT:**  So they get a DJ that basically says

15   well, because the Federal Government didn't do what they're

16   supposed to do, the states are relieved of their statutory

17   responsibilities otherwise imposed on them by Congress.

18        **MR. HAMILTON:**  I'd probably frame it more as they

19   didn't have an obligation to do rapid response in the first

20   place.

21        **THE COURT:**  And then the whole purpose that caused

22   Congress to act in the first place which was to protect the

23   states and make sure that they can take care of their citizens

24   is just sort of out the window.  The Feds didn't do what they

25   were supposed to do and the Court then gives the state

41

```
1    Government permission to not do what they were supposed to do

2    and everybody is fine, except nobody got the services that

3    Congress said they were supposed to receive in the

4    circumstance of a mass layoff.  That can't be right.

5         Anything else, Mr. Hamilton?

6         MR. HAMILTON:  No, Your Honor.  Thank you.

7         THE COURT:  Thank you.

8    Ms. Williamson?

9         MS. WILLIAMSON:  Yes, Your Honor.  I would point the

10   Court to Wilcox v. Trump which is a case in the District of

11   Columbia District Court, an opinion issued just 20 days ago

12   resolving the issue of reinstatement explaining that it's an

13   appropriate remedy where an executive has effected an unlawful

14   termination in collecting at least half a dozen cases ruling

15   that way, including cases from the Supreme Court.  For

16   example, Vitarelli v. Seaton which is Supreme Court --

17        THE COURT:  Did you give us the Wilcox cite in --

18   I'm sorry, where is that reported?

19        MS. WILLIAMSON:  I have the Westlaw cite for it.

20        THE COURT:  That's fine.

21        MS. WILLIAMSON:  It's 2025 Westlaw 720914.

22        THE COURT:  Thank you.

23        MS. WILLIAMSON:  Yes.  And Judge Howell goes into

24   great detail about why reinstatement would be appropriate.

25        THE COURT:  All right.  Anything else, ma'am?
```

1          **MS. WILLIAMSON:**  Nothing else, Your Honor.

2          **THE COURT:**  All right, the case stands submitted

3   subject to the responsibility of counsel to get those

4   supplemental filings in here by 10:00 tomorrow addressing the

5   issue that I described and I don't think we've had enough

6   attention to.

7          The TRO expires at 8:00 or 8:15 tomorrow night.  Counsel

8   should expect that the Court will extend that at least briefly

9   because I think it's doubtful that given the work that still

10  has to be accomplished that I can complete my opinion and any

11  orders related to this before that TRO runs out.  So I will

12  address that issue in writing, but expect to find that there's

13  good cause to extend it for the period necessary to fully

14  address the motion that's currently before the Court.

15         Counsel are excused; court is in recess.

16              **(Proceeding concluded at 10:46 a.m.)**

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

I, Nadine M. Bachmann, Certified Realtime Reporter and Registered Merit Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this <u>26th</u> day of <u>March, 2025.</u>

-S-

_____

NADINE M. BACHMANN, CRR, RMR
FEDERAL OFFICIAL COURT REPORTER

1

## 1

**10** [1] - 23:24
**100** [4] - 20:25, 21:1, 21:7
**101** [1] - 4:5
**102** [1] - 4:5
**10:00** [2] - 19:25, 42:4
**10:46** [1] - 42:16
**1100** [1] - 1:24
**12th** [1] - 3:17
**134** [1] - 29:16
**134(a)(2)(A** [1] - 24:2
**13th** [1] - 3:18
**14** [1] - 3:18
**14th** [1] - 4:7
**18** [1] - 27:1
**19** [7] - 3:5, 9:6, 9:25, 10:2, 10:15, 18:7, 31:21
**1:25-cv-00748-JKB** [1] - 1:4

## 2

**20** [18] - 10:4, 12:4, 12:8, 18:11, 20:5, 21:2, 21:3, 21:8, 21:15, 22:10, 23:17, 29:10, 29:12, 29:19, 34:17, 41:11
**200** [1] - 1:13
**20001** [1] - 1:18
**2025** [4] - 1:9, 4:11, 41:21, 43:14
**20530** [2] - 1:21, 1:25
**20th** [1] - 3:20
**21** [1] - 33:23
**21202** [1] - 1:13
**24** [1] - 17:3
**24,000** [4] - 34:18, 35:4, 35:11, 38:22
**25,000** [1] - 5:24
**26** [2] - 1:9, 4:11
**26th** [1] - 43:14
**28** [1] - 43:8

## 3

**3** [1] - 33:3
**30** [1] - 29:6
**31** [3] - 12:6, 12:7, 23:20
**3502** [9] - 23:25, 29:12, 33:9, 33:13, 34:13, 34:21, 34:23, 36:14
**351.402** [1] - 26:18

## 4

**400** [1] - 1:17
**41** [1] - 3:5

## 5

**50** [12] - 9:4, 11:18, 19:3, 20:14, 20:15, 20:19, 21:6, 26:13, 26:23, 29:2, 34:2
**500** [1] - 27:5
**5A** [1] - 1:10

## 6

**60** [2] - 21:2, 21:8
**6th** [1] - 1:17

## 7

**705** [1] - 3:22
**720914** [1] - 41:21
**753** [1] - 43:8
**7th** [1] - 3:15

## 8

**8:00** [1] - 42:7
**8:15** [2] - 3:19, 42:7

## 9

**950** [1] - 1:21
**9:37** [1] - 2:2

## A

**a.m** [3] - 2:2, 23:24, 42:16
**able** [4] - 25:25, 37:20, 38:4, 40:11
**above-entitled** [1] - 43:10
**absolute** [1] - 39:24
**absolutely** [4] - 7:9, 10:8, 18:8, 24:14
**accomplished** [1] - 42:10
**accordingly** [3] - 3:19, 16:8, 30:8
**account** [1] - 18:4
**accuse** [1] - 3:13
**act** [2] - 25:4, 40:22
**Act** [14] - 3:13, 24:3, 24:4, 25:3, 25:25, 26:4, 29:17, 29:23, 30:12, 32:22, 34:22, 38:20, 39:10, 40:12
**acted** [1] - 22:20

**action** [3] - 27:24, 35:14, 36:15
**actions** [3] - 32:23, 32:24, 37:25
**activities** [4] - 3:14, 24:2, 25:6, 29:16
**activity** [1] - 3:25
**actual** [1] - 11:20
**add** [3] - 21:19, 26:12, 30:11
**addition** [1] - 6:11
**additional** [2] - 26:8, 38:12
**address** [10] - 4:1, 5:19, 7:23, 8:21, 32:1, 35:24, 37:9, 40:10, 42:12, 42:14
**addressed** [2] - 19:23, 25:23
**addresses** [1] - 19:11
**addressing** [1] - 42:4
**adds** [1] - 38:13
**adequately** [1] - 19:23
**administers** [1] - 26:3
**administration** [3] - 16:6, 26:21, 27:13
**Administrative** [2] - 3:13, 32:22
**administrative** [3] - 4:7, 9:15, 39:6
**adopted** [1] - 3:25
**advance** [1] - 36:15
**adversely** [1] - 18:6
**affect** [1] - 12:6
**affected** [2] - 14:9, 15:1
**affects** [2] - 11:16, 13:24
**agencies** [26] - 3:6, 3:7, 3:8, 5:20, 6:23, 7:7, 7:12, 7:16, 7:20, 8:14, 14:17, 16:13, 18:2, 21:20, 21:23, 22:13, 25:11, 26:2, 27:1, 30:22, 33:16, 34:14, 36:13, 36:15, 37:22
**agency** [23] - 6:2, 6:9, 6:15, 9:15, 15:10, 15:16, 18:23, 19:10, 20:21, 21:5, 21:16, 26:7, 26:21, 27:5, 27:13, 32:23, 32:24, 33:23, 34:4, 38:1, 38:8
**agency's** [5] - 6:5, 6:14, 34:2, 36:16, 36:25
**aggrieved** [1] - 9:19
**ago** [2] - 19:24, 41:11

**agree** [2] - 25:3, 29:5
**AGRICULTURE** [1] - 1:5
**Agriculture** [1] - 2:5
**ahead** [3] - 4:22, 18:25, 24:18
**ahhh** [1] - 34:4
**al** [4] - 1:3, 1:5, 2:5
**Alexandria** [2] - 20:25, 21:6
**allege** [1] - 3:12
**alleged** [1] - 13:23
**allegedly** [1] - 20:2
**allows** [1] - 32:23
**alters** [1] - 6:15
**ambition** [1] - 22:9
**analysis** [1] - 5:13
**animating** [1] - 16:7
**ANNE** [1] - 1:15
**Anne** [1] - 2:15
**answer** [2] - 12:10, 16:16, 16:19
**ante** [2] - 35:10, 35:11
**anticipated** [1] - 37:24
**anticipates** [1] - 38:12
**anyways** [1] - 26:4
**APA** [1] - 32:23
**apart** [1] - 7:21
**appeal** [2] - 4:6, 4:8
**Appeals** [2] - 4:1, 4:9
**appellate** [1] - 39:13
**applications** [2] - 14:4, 14:7
**apply** [5] - 14:21, 16:15, 16:17, 33:6
**applying** [5] - 16:11, 16:12, 19:9
**appreciate** [1] - 36:2
**approach** [1] - 36:12
**appropriate** [10] - 4:13, 9:8, 10:6, 11:24, 27:21, 28:9, 28:23, 35:15, 41:13, 41:24
**area** [21] - 18:22, 20:12, 20:15, 20:17, 20:20, 20:21, 21:3, 22:1, 22:12, 26:13, 26:14, 26:17, 26:19, 26:20, 26:22, 26:23, 27:15, 30:23, 34:1, 34:3
**areas** [5] - 20:17, 22:6, 22:20, 27:14, 34:5
**argue** [3] - 6:23, 31:14, 37:15
**arguing** [1] - 5:20
**argument** [17] - 4:25, 5:2, 5:16, 5:23, 7:3, 7:23, 8:1, 8:5, 20:9,

33:1, 33:5, 33:20, 33:21, 36:3, 36:23, 38:10, 38:16
**arguments** [5] - 5:19, 23:12, 31:5, 31:19, 38:15
**Article** [1] - 38:3
**asserted** [2] - 8:7, 13:23
**asserting** [1] - 3:10
**assessment** [1] - 6:1
**assistance** [2] - 14:15, 15:12
**associated** [1] - 12:23
**assume** [1] - 38:14
**attempt** [1] - 22:12
**attempted** [1] - 9:7
**attempting** [2] - 21:24, 40:9
**attention** [2] - 23:20, 42:6
**ATTORNEY** [1] - 1:12, 1:16
**authorities** [1] - 7:15
**authority** [5] - 6:24, 7:13, 7:20, 28:18, 30:23
**authorized** [3] - 37:16, 38:7, 38:8
**Avenue** [1] - 1:21

## B

**Bachmann** [1] - 43:5
**BACHMANN** [1] - 43:18
**balance** [1] - 34:25
**Baltimore** [2] - 1:13, 20:22
**battle** [1] - 10:18
**becomes** [1] - 30:14
**becoming** [1] - 24:7
**BEFORE** [1] - 1:8
**begins** [1] - 33:15
**benefit** [1] - 30:5
**benefits** [2] - 14:7, 17:6
**beside** [1] - 37:4
**best** [2] - 30:18, 38:15
**better** [3] - 9:23, 15:6, 39:4
**between** [4] - 8:1, 8:11, 26:7, 31:2
**beyond** [2] - 10:1, 10:2, 28:18
**big** [1] - 31:16
**biggest** [1] - 23:8
**bit** [1] - 37:12
**BLM** [5] - 15:12, 15:16, 15:18, 16:2,

16:9
**Board** [2] - 9:16, 38:5
**borne** [1] - 27:6
**boundaries** [1] - 22:6
**Branch** [1] - 2:25
**break** [1] - 11:25
**BREDAR** [1] - 1:8
**brief** [5] - 6:1, 6:3, 8:7, 31:19, 36:8
**briefing** [2] - 3:24, 24:11
**briefly** [1] - 42:8
**briefs** [3] - 4:4, 19:23, 38:15
**bring** [1] - 30:5
**broadly** [1] - 28:6
**broken** [1] - 27:14
**burden** [8] - 12:21, 12:23, 19:6, 24:20, 33:25, 35:16, 36:14, 39:6
**burdens** [2] - 12:1, 13:20
**Bureau** [2] - 15:10, 15:14
**buying** [1] - 35:21
**BY** [8] - 1:12, 1:14, 1:15, 1:15, 1:16, 1:19, 1:22, 1:23

**C**

**cabin** [1] - 30:16
**cabinet** [2] - 3:6, 3:7
**California** [13] - 12:16, 12:25, 13:3, 13:6, 13:7, 14:13, 14:19, 15:5, 15:9, 15:19, 16:12, 16:18, 16:20
**capacity** [1] - 30:4
**care** [1] - 40:23
**carried** [1] - 33:24
**carry** [2] - 24:2, 29:16
**carrying** [1] - 33:18
**carved** [1] - 39:16
**CASE** [1] - 1:4
**case** [21] - 4:5, 5:21, 9:10, 9:16, 9:18, 9:20, 10:1, 10:6, 13:17, 14:25, 15:12, 17:14, 18:11, 18:15, 19:17, 21:19, 22:11, 23:21, 24:20, 41:10, 42:2
**cases** [3] - 32:14, 41:14, 41:15
**cast** [5] - 12:2, 15:5, 19:6, 24:19, 34:10
**casts** [1] - 25:3
**casually** [2] - 40:2,

40:5
**caused** [2] - 37:3, 40:21
**causes** [1] - 18:11
**caution** [1] - 28:24
**center** [1] - 24:4
**centuries** [1] - 39:12
**certain** [3] - 7:6, 16:24, 30:22
**certainly** [2] - 7:12, 39:24
**CERTIFICATE** [1] - 43:1
**Certified** [1] - 43:5
**certify** [1] - 43:8
**cetera** [1] - 13:22
**challenged** [1] - 3:8
**change** [1] - 6:16
**channeling** [3] - 38:6, 38:7, 38:10
**chaotic** [1] - 18:8
**Charles** [1] - 2:12
**CHARLES** [1] - 1:16
**CHASIN** [1] - 1:22, 2:21
**Chasin** [1] - 2:21
**check** [2] - 5:6, 17:1
**CHRISTOPHER** [1] - 1:23
**Christopher** [1] - 2:24
**circuit** [2] - 35:10, 35:11
**circumstance** [3] - 19:9, 19:17, 41:4
**circumstances** [8] - 17:14, 17:21, 21:10, 28:9, 28:22, 30:22, 36:6, 39:19
**cite** [2] - 41:17, 41:19
**citizens** [1] - 40:23
**CIVIL** [2] - 1:20, 1:24
**civil** [1] - 2:4
**claim** [1] - 32:2
**claims** [2] - 13:21, 33:22
**clarity** [1] - 30:7
**clear** [4] - 9:7, 22:9, 28:10, 28:23
**clearly** [1] - 6:13
**clerk** [1] - 5:4
**clients** [1] - 17:18
**close** [1] - 8:1
**collecting** [1] - 41:14
**colloquially** [2] - 33:6, 33:14
**COLUMBIA** [1] - 1:17
**Columbia** [14] - 2:12, 2:13, 2:14, 2:15, 3:5, 9:4, 10:3, 10:16,

11:5, 11:21, 18:7, 19:7, 31:22, 41:11
**coming** [1] - 39:25
**commentators** [1] - 17:12
**communication** [2] - 26:6, 36:20
**commuting** [2] - 26:22, 27:14
**compare** [1] - 35:6
**compel** [1] - 17:14
**compelling** [1] - 38:15
**competitive** [20] - 20:15, 20:20, 20:21, 21:3, 21:25, 22:6, 22:12, 22:20, 26:13, 26:14, 26:17, 26:19, 26:20, 26:22, 27:15, 30:23, 34:1, 34:3, 34:5
**complain** [1] - 25:22
**complained** [1] - 35:2
**complaining** [3] - 13:13, 32:12, 35:7
**complete** [1] - 42:10
**completely** [2] - 13:13, 18:8
**complex** [2] - 15:7, 20:16
**compliance** [2] - 12:8, 27:11
**complicated** [1] - 22:4
**complied** [1] - 4:4
**comply** [2] - 21:24, 27:2
**complying** [1] - 25:24
**compromised** [1] - 3:11
**computers** [1] - 35:19
**conceivably** [1] - 8:8
**concerned** [2] - 23:13, 30:4
**concerns** [1] - 4:21
**conclude** [2] - 4:2, 40:2
**concluded** [1] - 42:16
**concludes** [1] - 22:17
**conclusion** [1] - 11:24
**conduct** [3] - 10:15, 11:15, 17:25
**conducted** [1] - 11:1
**conducting** [2] - 6:9, 18:3
**Conference** [1] - 43:12
**confine** [1] - 10:20
**confined** [1] - 30:16
**conform** [1] - 34:7
**conformance** [1] - 43:11

**confusing** [1] - 14:24
**Congress** [11] - 22:5, 24:22, 34:16, 37:24, 38:2, 38:3, 39:4, 40:2, 40:17, 40:22, 41:3
**congressional** [3] - 30:7, 34:8, 34:12
**congruent** [2] - 22:6, 26:16
**connection** [3] - 19:20, 24:6, 31:23
**consequence** [1] - 19:6
**consequences** [2] - 34:18, 40:4
**consequential** [1] - 35:14
**considered** [1] - 21:15
**constraints** [1] - 6:2
**contend** [2] - 9:25, 18:12
**contending** [1] - 10:5
**contention** [1] - 10:16
**continue** [8] - 5:15, 11:8, 11:9, 12:11, 17:25, 18:15, 19:18, 19:19
**continued** [2] - 5:20, 15:1
**continues** [1] - 12:24
**convert** [1] - 5:12
**correct** [2] - 26:4, 43:9
**counsel** [7] - 2:8, 3:2, 37:8, 37:9, 42:3, 42:7, 42:15
**counted** [1] - 27:4
**country** [6] - 9:5, 9:23, 11:1, 22:15, 23:19, 28:14
**couple** [1] - 11:2
**course** [6] - 28:7, 31:9, 31:25, 33:20, 33:22, 36:14
**Court** [57] - 2:4, 2:6, 3:16, 3:21, 3:25, 4:1, 4:2, 4:8, 4:18, 5:12, 5:15, 6:22, 8:16, 8:21, 9:5, 9:7, 9:11, 9:12, 10:17, 11:16, 12:5, 12:6, 13:7, 13:18, 17:2, 17:9, 17:13, 18:1, 18:24, 20:11, 22:8, 22:16, 22:24, 23:11, 23:14, 23:15, 26:16, 27:17, 28:11, 29:8, 31:3, 35:16, 35:25, 36:12, 37:5, 39:20, 39:22, 40:25, 41:10, 41:11,

41:15, 41:16, 42:8, 42:14, 43:7
**court** [2] - 28:17, 42:15
**COURT** [81] - 1:1, 2:11, 2:16, 2:20, 2:23, 3:2, 4:20, 4:22, 5:3, 5:8, 5:10, 8:9, 9:2, 10:13, 11:10, 11:17, 12:13, 12:18, 12:20, 13:1, 13:3, 13:12, 14:8, 14:11, 14:23, 15:3, 16:21, 16:23, 17:2, 17:9, 17:16, 18:6, 18:21, 19:5, 19:22, 20:9, 20:12, 20:24, 22:2, 22:8, 22:16, 22:22, 23:3, 23:5, 23:7, 23:10, 24:14, 25:7, 25:19, 26:14, 26:24, 27:8, 27:17, 29:8, 29:18, 30:2, 30:16, 31:1, 31:10, 32:5, 32:9, 34:4, 34:16, 35:8, 36:2, 36:5, 37:8, 38:6, 38:14, 38:24, 39:7, 39:12, 40:14, 40:21, 41:7, 41:17, 41:20, 41:22, 41:25, 42:2, 43:18
**court's** [1] - 39:15
**Court's** [6] - 4:10, 4:17, 11:6, 11:23, 30:8, 31:6
**COURTROOM** [1] - 2:3
**Courtroom** [1] - 1:10
**courtroom** [1] - 36:5
**courts** [5] - 17:12, 35:8, 37:20, 37:22, 39:23
**Courts** [5] - 9:14, 10:19, 31:7, 38:3, 39:13
**cover** [1] - 37:11
**coverage** [2] - 13:10, 14:18
**covered** [1] - 13:7
**covering** [1] - 5:13
**craft** [3] - 19:11, 23:17
**crafted** [1] - 19:15
**crafting** [1] - 30:23
**created** [1] - 39:4
**creates** [2] - 25:4, 26:15
**criteria** [1] - 28:3
**critical** [1] - 9:3
**CRR** [1] - 43:18
**cruelly** [1] - 9:9

**crystal** [2] - 28:9, 30:7
**curious** [1] - 8:5
**current** [2] - 6:5, 17:13

## D

**Dallas** [5] - 15:20, 16:9, 16:13, 19:10
**Dated** [1] - 43:14
**days** [2] - 3:18, 41:11
**DC** [13] - 1:18, 1:21, 1:25, 9:6, 9:25, 11:19, 18:22, 20:17, 21:2, 21:8, 21:18, 22:3, 24:25
**DC/Maryland/ Virginia** [2] - 18:22, 26:25
**dealt** [1] - 26:1
**decades** [1] - 39:12
**decide** [1] - 13:22
**decided** [7] - 4:13, 15:12, 23:21, 29:6, 38:2, 38:3, 39:22
**decides** [2] - 16:2, 34:4
**decision** [4] - 6:4, 27:21, 30:23, 31:6
**decision-making** [1] - 30:23
**decisions** [4] - 7:7, 7:16, 7:17, 15:16
**declaration** [1] - 27:7
**declarations** [2] - 7:15, 27:3
**declaratory** [3] - 38:19, 39:10, 40:11
**deems** [1] - 11:24
**deeply** [1] - 23:12
**defendant** [7] - 5:20, 6:23, 7:7, 7:12, 8:13, 15:11, 36:25
**Defendants** [1] - 1:6
**DEFENDANTS** [1] - 1:19
**defendants** [12] - 2:17, 2:19, 2:22, 3:6, 5:13, 5:24, 5:25, 7:25, 8:2, 8:6, 17:24, 35:3
**defendants'** [5] - 5:22, 7:23, 7:24, 11:15, 33:24
**define** [4] - 11:10, 21:25, 22:12, 34:5
**defined** [4] - 6:13, 20:20, 21:4, 26:18
**defining** [1] - 22:20
**definition** [1] - 6:17
**demand** [1] - 17:3

**demeanor** [1] - 36:5
**DENG** [2] - 1:15, 2:15
**Deng** [1] - 2:15
**denial** [1] - 4:9
**denied** [1] - 4:9
**densely** [1] - 20:16
**deny** [3] - 4:12, 4:13, 35:25
**DEPARTMENT** [3] - 1:5, 1:20, 1:23
**department** [2] - 22:14, 32:10
**Department** [7] - 2:5, 2:19, 2:22, 2:25, 15:11, 20:22, 26:1
**dependence** [1] - 13:21
**DEPUTY** [1] - 2:3
**describe** [2] - 5:25, 6:3
**described** [4] - 6:18, 6:19, 19:12, 42:5
**descriptions** [1] - 6:6
**design** [1] - 28:4
**designed** [1] - 40:3
**desk** [1] - 5:4
**despite** [2] - 9:8, 38:15
**detail** [1] - 41:24
**determine** [1] - 30:24
**determined** [1] - 28:1
**different** [5] - 16:7, 24:12, 32:4, 33:18, 36:11
**difficult** [1] - 36:6
**direct** [1] - 8:11
**directed** [3] - 4:1, 5:4, 22:10
**direction** [2] - 16:8, 34:15
**discretion** [1] - 34:2
**discussed** [2] - 17:22, 28:16
**Disney** [1] - 2:13
**DISNEY** [2] - 1:14, 2:13
**disobeys** [1] - 40:6
**dispute** [1] - 24:3
**distinct** [5] - 24:5, 25:16, 29:23, 32:13, 38:21
**distinction** [1] - 25:21
**district** [3] - 28:17, 39:14
**DISTRICT** [4] - 1:1, 1:1, 1:9, 1:17
**District** [18] - 2:12, 2:13, 2:14, 2:15, 3:5, 4:10, 9:4, 10:2, 10:15, 11:5, 11:21,

18:7, 19:7, 31:21, 41:10, 41:11, 43:7
**DIVISION** [3] - 1:2, 1:20, 1:24
**DJ** [1] - 40:14
**docketed** [1] - 4:5
**document** [2] - 32:15, 32:17
**done** [2] - 35:20, 39:17
**doubtful** [1] - 42:9
**down** [1] - 31:2
**downstream** [4] - 8:18, 8:19, 30:1, 33:2
**dozen** [1] - 41:14
**draft** [2] - 23:21, 28:12
**dramatic** [1] - 35:14
**drawn** [2] - 19:8, 29:1
**due** [1] - 19:25
**duration** [1] - 3:18
**duties** [2] - 6:12, 36:19
**duty** [4] - 10:24, 11:3, 13:7, 39:24

## E

**easily** [2] - 26:24, 28:13
**easy** [2] - 7:9, 28:15
**effect** [2] - 17:22, 18:2
**effected** [1] - 41:13
**effort** [1] - 39:25
**electronic** [1] - 4:5
**element** [1] - 32:20
**elimination** [1] - 6:11
**elsewhere** [1] - 9:13
**employ** [1] - 15:13
**employed** [3] - 16:18, 16:20, 35:12
**employee** [3] - 7:9, 16:1, 24:7
**employee's** [2] - 6:1, 11:12
**employees** [23] - 3:9, 6:16, 6:17, 6:25, 7:4, 7:14, 9:9, 13:16, 18:4, 19:2, 19:20, 24:10, 25:17, 26:23, 27:4, 32:1, 32:4, 32:5, 33:12, 33:18, 35:5, 37:23, 37:25
**Employees** [1] - 9:17
**employment** [1] - 25:18
**end** [4] - 19:16, 31:5, 33:1, 33:25
**endured** [2] - 10:3, 15:4

**engaged** [2] - 10:18, 35:13
**engaging** [1] - 3:14
**enormous** [2] - 27:23, 35:5
**enrolling** [1] - 30:15
**enter** [3] - 10:13, 17:13, 20:11
**entire** [3] - 9:23, 18:1, 20:21
**entirely** [2] - 24:12, 28:8
**entitled** [11] - 9:25, 14:18, 14:20, 17:6, 18:13, 23:18, 29:14, 30:25, 32:15, 33:23, 43:10
**equitable** [1] - 37:16
**equities** [1] - 34:25
**equity** [1] - 35:8
**ERIC** [1] - 1:19
**Eric** [1] - 2:18
**ESQUIRE** [8] - 1:12, 1:14, 1:15, 1:15, 1:16, 1:19, 1:22, 1:23
**essential** [1] - 17:17
**essentially** [3] - 8:2, 14:24, 16:22
**established** [1] - 6:9
**et** [5] - 1:3, 1:5, 2:4, 2:5, 13:21
**evidence** [9] - 4:24, 5:1, 5:17, 6:20, 6:21, 7:11, 7:13, 27:18, 28:22
**evils** [1] - 39:22
**exact** [2] - 20:1, 20:5
**exactly** [5] - 11:11, 22:7, 26:19, 27:10, 37:19
**example** [10] - 12:9, 12:14, 12:15, 14:4, 14:20, 18:17, 18:21, 20:22, 28:5, 41:16
**examples** [1] - 11:2
**exceeded** [2] - 10:17, 10:19
**exceeds** [1] - 26:23
**except** [1] - 41:2
**exclamation** [1] - 38:13
**excuse** [1] - 22:22
**excused** [1] - 42:15
**executing** [1] - 34:15
**executive** [1] - 41:8
**exempt** [1] - 34:6
**exist** [1] - 25:20
**expand** [3] - 19:23, 23:24, 29:4

**expect** [2] - 42:8, 42:12
**expense** [2] - 35:5, 35:17
**experience** [1] - 18:12
**experienced** [1] - 10:3
**experiencing** [1] - 17:19
**expires** [2] - 3:19, 42:7
**explain** [1] - 15:4
**explaining** [1] - 41:12
**explicitly** [1] - 28:19
**express** [1] - 6:18
**expressly** [1] - 40:13
**extend** [3] - 23:19, 42:8, 42:13
**extended** [1] - 3:23
**extent** [4] - 9:11, 12:7, 27:12, 27:15

## F

**face** [1] - 37:25
**faced** [1] - 10:5
**faces** [1] - 22:17
**fact** [12] - 4:3, 8:25, 17:21, 22:17, 22:18, 23:20, 25:8, 26:9, 27:11, 32:20, 35:18, 38:11
**fact-specific** [1] - 17:21
**factor** [1] - 35:23
**factors** [2] - 5:16, 35:1
**failure** [5] - 15:1, 36:17, 36:25, 37:3, 37:6
**fair** [1] - 17:2
**fairness** [1] - 4:9
**faithful** [1] - 30:9
**family** [1] - 15:21
**far** [2] - 25:12, 31:1
**fashion** [1] - 22:13
**Federal** [15] - 2:25, 3:11, 11:25, 13:24, 24:21, 24:24, 25:24, 27:25, 31:25, 32:3, 35:5, 36:14, 38:22, 40:5, 40:15
**FEDERAL** [2] - 1:24, 43:18
**federal** [11] - 3:7, 3:9, 13:15, 24:17, 26:5, 37:20, 37:22, 37:23, 38:1, 40:4
**Feds** [1] - 40:24
**few** [1] - 31:18
**fewer** [1] - 27:5
**figure** [1] - 28:12

**file** [1] - 4:5
**filed** [5] - 3:5, 3:15, 3:20, 4:6, 31:19
**filing** [2] - 7:24, 8:6
**filings** [1] - 42:4
**final** [1] - 8:21
**fine** [2] - 41:2, 41:20
**fire** [6] - 6:24, 7:3, 7:8, 7:9, 32:10
**firing** [2] - 22:14, 34:11
**firings** [1] - 10:23
**first** [13] - 4:16, 4:23, 5:22, 7:3, 22:20, 30:25, 35:20, 36:10, 37:1, 37:6, 37:13, 40:19, 40:22
**fixed** [1] - 39:23
**flip** [1] - 35:15
**flow** [3] - 10:23, 10:25, 12:1
**fly** [1] - 15:8
**focused** [1] - 22:3
**focusing** [1] - 31:22
**FOIA** [1] - 32:14
**follow** [3] - 34:14, 36:17, 40:6
**following** [1] - 4:10
**Footnote** [1] - 33:3
**FOR** [4] - 1:1, 1:11, 1:17, 1:19
**forbid** [1] - 28:4
**forbidding** [1] - 20:2
**force** [16] - 5:24, 6:7, 6:10, 6:17, 6:20, 8:3, 26:9, 26:10, 29:14, 30:20, 33:7, 33:15, 33:19, 33:24, 34:13, 34:15
**foregoing** [1] - 43:8
**form** [3] - 8:16, 13:20, 14:7
**formally** [1] - 9:2
**format** [1] - 43:11
**forms** [1] - 13:11
**forth** [1] - 35:19
**forum** [2] - 9:13, 33:17
**forward** [2] - 12:5, 31:12
**four** [2] - 5:16, 8:9
**frame** [1] - 40:18
**freestanding** [3] - 6:24, 7:13, 7:20
**friend** [1] - 36:10
**friend's** [1] - 36:22
**front** [1] - 10:21
**FSLMRS** [1] - 37:24
**full** [2] - 18:12, 19:15
**fully** [1] - 42:13

**function** [1] - 6:13
**functions** [1] - 6:12
**fundamental** [1] - 27:20
**future** [6] - 11:15, 11:17, 17:25, 18:3, 32:19, 32:25

## G

**GENERAL** [2] - 1:12, 1:16
**general** [1] - 39:18
**generalized** [1] - 34:16
**generally** [2] - 3:13, 23:11
**geographic** [1] - 21:21
**geography** [1] - 10:2
**gerrymandering** [2] - 39:21, 39:22
**given** [3] - 4:10, 6:4, 42:9
**Government** [36] - 3:12, 3:14, 4:6, 4:7, 10:19, 11:25, 13:24, 16:7, 18:9, 18:25, 19:3, 19:10, 21:1, 22:19, 22:25, 24:21, 24:24, 25:24, 27:25, 28:4, 29:1, 31:3, 31:4, 31:7, 31:25, 32:3, 35:6, 35:12, 35:13, 36:15, 36:20, 37:14, 38:22, 40:6, 40:15, 41:1
**Government's** [3] - 3:9, 10:14, 22:22
**governmental** [2] - 20:5, 20:6
**grant** [1] - 4:12
**granted** [2] - 3:17, 28:19
**granular** [1] - 15:4
**great** [2] - 17:9, 41:24
**greater** [1] - 35:4
**group** [2] - 3:1, 11:10
**guess** [1] - 15:25

## H

**half** [1] - 41:14
**Hall** [1] - 2:24
**HALL** [2] - 1:23, 2:24
**hamilton** [4] - 4:20, 23:5, 36:2, 41:5
**HAMILTON** [33] - 1:19, 2:18, 4:21, 23:6, 23:9, 23:22, 25:2, 25:12, 25:21, 26:17,

27:1, 27:10, 29:3, 29:11, 29:22, 30:10, 30:18, 31:9, 31:17, 32:8, 32:11, 34:12, 34:20, 35:23, 36:4, 37:18, 38:9, 38:18, 39:4, 39:8, 40:9, 40:18, 41:6
**Hamilton** [2] - 2:19
**hand** [1] - 40:1
**handle** [1] - 15:7
**happy** [2] - 13:13, 35:24
**hard** [3] - 15:7, 22:8, 31:4
**harm** [4] - 10:9, 10:10, 19:19, 36:25
**harmed** [1] - 15:1
**harms** [16] - 8:13, 8:18, 8:20, 8:23, 8:24, 10:3, 10:22, 10:24, 12:1, 12:11, 14:6, 15:4, 17:18, 28:21, 37:3, 37:6
**head** [1] - 16:17
**headquartered** [1] - 21:5
**heads** [1] - 3:8
**hear** [5] - 5:3, 31:13, 37:13
**hearing** [3] - 3:16, 4:11, 26:9
**hearings** [1] - 37:11
**heart** [1] - 23:7
**heavily** [1] - 39:20
**held** [3] - 3:16, 25:23, 43:10
**help** [8] - 9:17, 14:17, 15:8, 16:14, 23:16, 23:23, 25:11, 28:25
**helpfully** [1] - 3:24
**hereby** [1] - 43:7
**highlight** [1] - 31:18
**highlighted** [1] - 37:24
**highly** [1] - 35:14
**hiring** [1] - 7:15
**history** [3] - 4:17, 37:21, 38:10
**hoc** [1] - 7:19
**hold** [3] - 4:11, 22:9
**holds** [1] - 14:13
**home** [2] - 12:24, 15:23
**Homeland** [1] - 20:23
**Honor** [56] - 2:18, 2:21, 2:24, 4:19, 4:21, 5:2, 5:9, 6:5, 7:2, 7:11, 7:23, 8:10, 8:23, 10:8, 10:9, 10:22, 11:2, 11:14,

12:9, 14:1, 14:25, 16:19, 16:24, 17:8, 17:15, 17:20, 17:24, 18:14, 19:14, 20:8, 20:10, 20:19, 21:11, 21:19, 22:11, 22:21, 23:2, 23:6, 23:22, 24:11, 25:2, 26:8, 29:3, 29:22, 30:10, 31:9, 31:17, 36:4, 36:9, 36:10, 36:21, 36:23, 37:18, 41:6, 41:9, 42:1
**honor** [1] - 22:9
**Honor's** [1] - 12:10
**HONORABLE** [1] - 1:8
**hours** [1] - 17:3
**house** [1] - 15:21
**Howell** [1] - 41:23
**humor** [1] - 23:16
**hundreds** [1] - 21:22
**hung** [1] - 31:11
**hypertechnical** [1] - 34:6
**hypothetical** [3] - 15:6, 21:4, 23:15
**hypothetically** [2] - 23:11, 24:16

## I

**i.e** [1] - 12:1
**identifiable** [1] - 6:14
**identified** [1] - 28:3
**Ill** [1] - 38:3
**illegal** [2] - 10:15, 24:16
**image** [1] - 15:6
**imagine** [1] - 23:10
**imagined** [1] - 26:24
**immediate** [1] - 30:5
**immunity** [1] - 39:19
**impact** [5] - 11:17, 11:20, 13:14, 28:2, 30:4
**impacted** [2] - 22:3, 29:19
**impacts** [1] - 18:6
**impaired** [1] - 22:18
**implicated** [1] - 33:11
**implications** [1] - 28:16
**importantly** [1] - 7:11
**impose** [2] - 12:6, 35:16
**imposed** [4] - 12:21, 12:22, 24:22, 40:17
**impossible** [2] - 12:3, 19:11
**impressed** [1] - 30:2

**IN** [1] - 1:1
**inappropriate** [1] - 11:20
**inappropriately** [2] - 9:10, 39:1
**include** [5] - 3:4, 3:7, 11:11, 13:8, 20:21
**included** [1] - 3:6
**including** [2] - 22:20, 41:15
**increased** [3] - 13:20, 13:21, 14:7
**independent** [1] - 6:24
**indicated** [2] - 17:24, 30:3
**indicating** [1] - 5:17
**indication** [1] - 9:14
**individual** [6] - 11:6, 11:9, 12:15, 12:17, 12:25
**individual's** [1] - 11:7
**individuals** [1] - 25:13
**information** [7] - 25:14, 27:11, 31:24, 32:2, 32:6, 32:12, 37:4
**informational** [3] - 8:15, 31:22, 32:14
**injunction** [22] - 2:7, 4:3, 7:25, 9:22, 9:24, 10:6, 10:13, 12:3, 17:10, 18:25, 19:8, 19:11, 19:13, 19:14, 20:1, 20:11, 23:17, 27:9, 28:4, 28:8, 29:5, 36:1
**Injunction** [4] - 3:22, 5:13, 5:14, 5:17
**INJUNCTION** [1] - 1:8
**injunctions** [2] - 17:11, 28:7
**injunctive** [4] - 4:2, 4:12, 10:12, 35:1
**injuries** [9] - 8:3, 8:7, 8:11, 8:16, 8:19, 33:2, 35:2, 35:3, 35:6
**injury** [6] - 8:16, 8:17, 25:22, 31:23, 32:20, 39:9
**inquired** [1] - 26:2
**instance** [2] - 37:1, 37:7
**instances** [1] - 19:18
**instead** [5] - 5:25, 22:13, 33:15, 36:12, 38:3
**instinct** [1] - 28:24
**insulate** [1] - 34:9
**insurance** [6] - 13:21,

14:12, 14:18, 16:16, 29:25, 30:15
**integrated** [1] - 8:24
**intend** [1] - 17:25
**intent** [1] - 30:7
**intention** [2] - 4:11, 11:15
**interest** [4] - 19:12, 29:11, 31:15, 34:25
**interests** [6] - 3:10, 13:18, 13:23, 20:5, 24:24, 29:9
**Interior** [1] - 15:11
**interpret** [2] - 31:3, 31:8
**interpretation** [1] - 34:7
**introduce** [2] - 3:4, 9:3
**Investment** [12] - 24:3, 24:4, 25:3, 25:25, 26:3, 29:17, 29:23, 30:12, 34:22, 38:20, 39:10, 40:12
**involved** [3] - 21:6, 21:7, 39:20
**IRS** [1] - 27:23
**issue** [27] - 8:21, 9:3, 10:4, 10:9, 11:15, 11:16, 13:8, 17:7, 17:10, 17:12, 18:10, 18:24, 23:13, 23:21, 24:10, 28:18, 31:16, 36:13, 36:21, 37:9, 37:24, 41:12, 42:5, 42:12
**issued** [2] - 3:17, 41:11
**issues** [12] - 7:18, 10:20, 13:10, 15:7, 22:5, 24:12, 27:11, 30:1, 30:2, 30:12, 31:14, 38:4
**IT** [6] - 15:12, 15:13, 15:15, 15:24, 16:10
**itself** [3] - 21:12, 21:14, 37:4

### J

**jam** [1] - 22:25
**JAMES** [1] - 1:8
**JKB-25-00748** [1] - 2:4
**job** [5] - 12:21, 14:13, 14:15, 15:17, 39:15
**jobs** [3] - 25:10, 35:12, 39:3
**join** [2] - 13:15, 23:21
**joined** [1] - 9:6
**JUDGE** [1] - 1:9
**Judge** [1] - 41:23

**judges** [2] - 28:18, 28:20
**judgment** [3] - 38:19, 39:11, 40:11
**Judicial** [1] - 43:12
**jumped** [2] - 37:11
**jurisdiction** [9] - 10:17, 10:24, 14:2, 14:3, 14:5, 14:6, 17:23, 18:17, 19:21
**jurisdictions** [5] - 11:5, 14:9, 14:25, 18:16, 21:23
**jurisprudential** [1] - 17:11
**JUSTICE** [2] - 1:20, 1:23
**Justice** [3] - 2:19, 2:22, 2:25
**justiciability** [1] - 39:20

### K

**kids** [1] - 15:22
**kind** [1] - 28:11
**kinds** [1] - 13:20
**knows** [2] - 5:15, 24:11

### L

**Labor** [2] - 26:2, 26:3
**lack** [1] - 31:20
**laid** [1] - 12:21
**Land** [2] - 15:10, 15:14
**land** [1] - 15:15
**language** [1] - 21:12
**large** [2] - 25:15, 40:4
**last** [2] - 35:23, 37:9
**Laufer** [1] - 8:15
**laundry** [1] - 37:10
**law** [15] - 11:25, 13:24, 14:12, 17:5, 17:14, 22:19, 24:6, 28:22, 30:9, 30:13, 31:8, 39:17, 40:6
**lawsuit** [3] - 9:6, 13:15, 25:25
**layoff** [3] - 25:18, 30:14, 41:4
**layoffs** [3] - 25:15, 25:16, 40:4
**lead** [2] - 19:15, 19:17
**least** [5] - 7:2, 9:15, 10:14, 19:17, 38:25, 41:14, 42:8
**leave** [1] - 39:17
**less** [3] - 15:25, 18:12,

20:1
**letters** [1] - 7:14
**level** [2] - 15:4, 17:11
**liable** [1] - 25:23
**lies** [1] - 9:15
**light** [1] - 6:2
**likely** [1] - 19:18
**limited** [1] - 21:20
**lines** [1] - 29:1
**link** [1] - 8:11
**list** [2] - 37:10, 37:15
**listen** [1] - 24:24
**litigated** [2] - 24:12, 38:4
**litigating** [1] - 29:6
**litigation** [3] - 27:20, 32:14, 39:21
**live** [14] - 11:4, 12:18, 12:20, 15:19, 15:20, 18:16, 19:5, 19:10, 21:2, 21:3, 21:7, 21:8
**lived** [1] - 13:1
**lives** [10] - 12:15, 13:3, 13:6, 13:9, 13:12, 14:2, 14:5, 14:14, 14:22, 17:23
**living** [1] - 16:9
**load** [1] - 39:2
**local** [2] - 16:13, 26:22
**logistics** [1] - 35:18
**look** [2] - 31:12, 38:10
**looked** [2] - 9:14, 23:20
**looks** [1] - 8:25
**lose** [2] - 12:21, 38:16
**lost** [2] - 25:9, 29:24

### M

**ma'am** [1] - 41:25
**main** [1] - 34:20
**majority** [2] - 9:5, 21:7
**Management** [2] - 15:10, 15:14
**mandatory** [1] - 33:14
**manner** [2] - 3:11, 18:11
**March** [8] - 1:9, 3:15, 3:17, 3:18, 3:20, 4:7, 4:11, 43:14
**marching** [1] - 30:8
**mark** [1] - 38:13
**marooned** [1] - 39:17
**MARYLAND** [3] - 1:1, 1:3, 1:12
**Maryland** [17] - 1:13, 2:4, 2:10, 11:5, 11:21, 18:22, 19:5, 19:7, 21:3, 21:9,

21:18, 22:2, 24:17, 24:20, 24:25, 43:7
**mass** [6] - 5:23, 25:16, 25:18, 30:14, 34:11, 41:4
**massive** [1] - 35:16
**matter** [6] - 2:3, 2:4, 2:6, 3:4, 6:6, 43:10
**mean** [4] - 17:13, 25:8, 38:20, 39:9
**meant** [1] - 13:5
**measured** [1] - 27:12
**mechanism** [3] - 6:25, 7:3, 36:18
**Medicaid** [3] - 14:4, 14:15, 14:21
**meet** [1] - 5:16
**meets** [1] - 28:3
**merely** [4] - 4:25, 7:8, 7:19, 10:23
**Merit** [4] - 9:16, 24:13, 38:5, 43:6
**merits** [6] - 5:22, 23:12, 23:15, 33:4, 33:20, 38:17
**metropolitan** [2] - 20:17
**mics** [1] - 5:6
**might** [18] - 7:21, 17:6, 18:7, 18:8, 18:19, 21:14, 21:15, 24:6, 26:4, 30:13, 32:14, 32:15, 32:19, 33:6, 33:14, 35:25, 39:22, 39:23
**mind** [1] - 27:23
**mine** [1] - 28:25
**minimum** [2] - 26:19, 26:20
**mission** [3] - 6:14, 6:15, 25:19
**modesty** [1] - 28:24
**moment** [2] - 19:24, 37:8
**monetary** [2] - 35:2, 35:3
**morning** [12] - 2:11, 2:16, 2:18, 2:20, 2:21, 2:23, 3:2, 19:25, 23:5, 23:6, 29:4, 31:14
**most** [3] - 31:11, 38:18, 40:10
**motion** [7] - 3:15, 3:17, 3:20, 5:11, 7:25, 36:1, 42:14
**move** [1] - 5:4
**MR** [36] - 2:12, 2:14, 2:18, 2:21, 2:24, 4:21, 23:6, 23:9,

23:22, 25:2, 25:12, 25:21, 26:17, 27:1, 27:10, 29:3, 29:11, 29:22, 30:10, 30:18, 31:9, 31:17, 32:8, 32:11, 34:12, 34:20, 35:23, 36:4, 37:18, 38:9, 38:18, 39:4, 39:8, 40:9, 40:18, 41:6
**MS** [46] - 2:9, 2:13, 2:15, 4:18, 5:1, 5:7, 5:9, 5:11, 8:10, 10:8, 10:22, 11:14, 12:9, 12:14, 12:19, 12:23, 13:2, 13:5, 14:1, 14:9, 14:20, 14:24, 16:19, 16:22, 16:24, 17:8, 17:15, 17:20, 18:14, 19:4, 19:14, 20:8, 20:10, 20:19, 21:11, 22:7, 22:11, 22:21, 23:2, 23:4, 36:9, 41:9, 41:19, 41:21, 41:23, 42:1
**multiple** [2] - 17:22, 21:22
**murky** [1] - 28:10
**must** [1] - 26:19

### N

**Nadine** [1] - 43:5
**NADINE** [1] - 43:18
**narrow** [1] - 22:12
**narrowly** [1] - 19:15
**national** [10] - 9:22, 10:6, 17:10, 17:11, 18:9, 18:25, 19:13, 20:1, 28:7, 28:8
**nationwide** [2] - 21:21, 29:5
**nearly** [1] - 5:23
**necessarily** [1] - 19:9
**necessary** [3] - 9:24, 12:7, 42:13
**need** [17] - 9:2, 10:18, 12:5, 15:8, 15:12, 16:5, 16:11, 19:19, 20:6, 25:11, 28:6, 28:25, 32:6, 32:10, 33:25, 38:1
**needed** [2] - 36:24, 37:2
**needs** [4] - 6:15, 14:15, 33:11, 33:16
**new** [4] - 14:15, 16:6, 33:4
**night** [1] - 42:7
**nobody** [1] - 41:2

nonparty [3] - 22:4, 27:25, 29:20
NORTHERN [1] - 1:2
Northern [2] - 18:23, 19:3
note [1] - 33:4
noted [1] - 26:8
nothing [3] - 20:1, 40:7, 42:1
notice [25] - 4:6, 8:14, 19:1, 20:14, 21:9, 21:17, 23:25, 24:1, 26:10, 29:13, 29:14, 29:15, 30:17, 30:21, 30:25, 32:7, 33:11, 33:20, 33:23, 34:1, 34:21, 36:23, 37:1, 37:3, 40:13
notified [1] - 36:13
notify [1] - 36:15
number [6] - 6:16, 16:5, 19:2, 21:13, 21:15, 26:11
NUMBER [1] - 1:4
numbers [2] - 25:10, 25:20
NW [3] - 1:17, 1:21, 1:24

O

objective [1] - 11:23
obligate [2] - 24:6, 30:13
obligates [1] - 25:5
obligation [3] - 20:14, 21:14, 40:19
obligations [4] - 24:5, 34:6, 38:20, 40:12
obvious [2] - 34:8, 39:16
obviously [1] - 4:23
occasion [1] - 6:10
occur [1] - 29:20
occurred [1] - 20:2
OF [9] - 1:1, 1:5, 1:8, 1:12, 1:16, 1:17, 1:20, 1:23, 43:1
offered [1] - 19:16
OFFICE [2] - 1:12, 1:16
office [8] - 15:9, 15:18, 15:23, 16:9, 19:3, 20:24, 21:5
offices [1] - 24:17
OFFICIAL [2] - 43:1, 43:18
once [4] - 22:14, 22:24, 27:6, 29:24
one [14] - 5:7, 5:25,

6:10, 14:2, 17:13, 17:23, 20:12, 22:16, 24:20, 26:20, 28:17, 35:13, 35:21, 37:9
ones [2] - 27:22, 27:23
opinion [4] - 8:17, 24:19, 41:11, 42:10
OPM [6] - 6:9, 7:5, 7:21, 26:12, 33:16, 34:13
opponent [1] - 28:16
opportunity [2] - 9:7, 34:9
opposition [2] - 7:24, 31:19
oral [1] - 38:16
order [4] - 4:3, 9:24, 10:3, 23:17
Order [4] - 3:16, 5:12, 5:14, 27:2
ordering [1] - 37:22
orders [2] - 30:8, 42:11
organization [1] - 6:12
otherwise [4] - 8:15, 28:2, 28:22, 40:17
overarching [1] - 34:23
own [1] - 8:7

P

p.m [1] - 3:19
packed [1] - 20:16
page [1] - 43:11
Pamela [1] - 2:13
PAMELA [1] - 1:14
panel [1] - 4:13
panoply [1] - 17:5
papers [1] - 4:5
part [6] - 11:6, 22:23, 25:14, 30:14, 33:21, 34:21
participate [1] - 25:5
particular [4] - 5:19, 10:23, 16:25, 37:2
particularly [2] - 20:16, 36:22
parties [21] - 3:24, 4:1, 4:4, 9:10, 10:1, 10:4, 10:21, 12:1, 12:4, 13:17, 17:4, 18:11, 18:15, 18:18, 19:16, 20:5, 23:17, 24:20, 29:10, 29:12, 34:17
party [1] - 11:20, 18:24, 28:1, 28:2
pathway [2] - 33:17, 38:7
Paul [1] - 1:13

paying [1] - 6:4
pending [2] - 2:3, 4:8
Pennsylvania [1] - 1:21
people [29] - 5:24, 9:18, 9:19, 11:3, 11:17, 15:17, 16:5, 18:16, 18:19, 19:10, 20:15, 20:19, 20:25, 21:6, 21:7, 21:13, 21:22, 22:14, 25:3, 25:8, 25:9, 26:13, 30:5, 34:2, 34:10, 34:18, 35:12, 35:17
perform [3] - 15:24, 18:15, 18:18
performance [2] - 7:17, 38:16
perhaps [2] - 11:18, 31:14
period [1] - 42:13
permission [1] - 41:1
permitted [1] - 14:13
person [7] - 7:8, 11:22, 13:3, 13:6, 13:8, 14:5, 17:7
personnel [1] - 37:25
persons [2] - 20:6, 25:14
perspective [1] - 10:14
persuaded [2] - 23:11
phase [1] - 38:25
philosophy [1] - 16:6
phrase [1] - 6:6
physically [1] - 15:22
PI [3] - 11:24, 33:5, 35:9
pick [1] - 34:14
Place [1] - 1:13
place [6] - 6:3, 11:13, 30:25, 35:21, 40:20, 40:22
places [2] - 10:17, 36:14
plaintiff [17] - 2:8, 8:23, 10:9, 10:10, 10:23, 10:25, 11:4, 11:5, 12:10, 12:17, 13:4, 19:18, 30:3, 32:15, 32:16, 36:7, 36:24
plaintiffs [18] - 3:4, 3:15, 4:23, 5:15, 8:3, 8:18, 8:11, 22:10, 29:24, 31:20, 31:22, 32:11, 32:17, 32:20, 32:23, 35:2, 35:7, 38:18
Plaintiffs [1] - 1:3

PLAINTIFFS [1] - 1:11
plaintiffs' [3] - 5:11, 7:25, 36:1
planned [1] - 6:11
plausible [1] - 34:11
plugged [1] - 5:6
plus [2] - 9:4, 9:6
point [12] - 5:25, 14:25, 15:3, 16:25, 26:8, 30:20, 35:1, 36:21, 37:4, 37:5, 38:6, 41:9
points [2] - 31:18, 36:10
position [7] - 5:4, 13:14, 18:4, 23:14, 23:15, 24:11, 40:1
positions [1] - 6:16
possibility [1] - 39:11
post [1] - 7:19
practice [1] - 8:25
precede [1] - 33:12
precedent [2] - 37:22, 38:11
precluded [1] - 37:14
precludes [2] - 33:3, 37:17
preliminary [13] - 2:7, 4:3, 4:12, 5:21, 7:25, 8:22, 10:11, 11:7, 12:11, 20:11, 27:8, 27:19, 36:1
PRELIMINARY [1] - 1:8
Preliminary [4] - 3:22, 5:13, 5:14, 5:17
premise [1] - 33:22
prepared [1] - 34:10
present [1] - 4:24
pressure [3] - 38:24, 38:25, 39:2
presumably [2] - 23:20, 39:14
previous [1] - 8:6
previously [2] - 16:5, 17:3
primary [1] - 5:22
principle [1] - 39:18
priorities [2] - 6:3, 6:5
prioritizing [1] - 33:17
private [1] - 25:16
Probationary [1] - 9:17
probationary [13] - 3:9, 6:24, 7:4, 7:9, 7:14, 13:15, 16:1, 16:4, 19:2, 20:25, 21:1, 27:4, 35:5
probationers [4] - 27:5, 32:19, 32:25,

38:22
problem [7] - 10:4, 13:25, 23:8, 26:15, 27:24, 29:18, 32:22, 32:16
problems [2] - 7:2, 22:16
procedural [1] - 4:17
Procedure [1] - 32:22
procedure [1] - 33:13
procedures [3] - 7:6, 18:20, 21:25
Procedures [1] - 3:13
proceed [1] - 4:23
proceeded [2] - 3:12, 21:20
proceeding [1] - 18:10
Proceeding [1] - 42:16
PROCEEDINGS [1] - 1:8
proceedings [1] - 43:10
process [6] - 18:3, 21:24, 33:18, 34:13, 38:2, 40:3
processing [1] - 14:4
profound [1] - 28:16
program [3] - 25:5, 25:13, 26:5
Programs [1] - 2:25
PROGRAMS [1] - 1:24
prohibit [1] - 19:9
projection [1] - 27:18
promptly [1] - 4:12
promulgate [1] - 33:16
proper [1] - 18:19
properly [2] - 5:6, 28:21
proposed [1] - 3:24
protect [11] - 11:25, 20:3, 20:4, 24:24, 28:1, 29:9, 34:17, 40:3, 40:22
protectable [1] - 24:25
protected [1] - 12:4
Protection [3] - 9:16, 24:13, 38:5
provide [10] - 8:15, 9:24, 13:11, 14:3, 14:16, 19:19, 25:14, 37:1, 37:3, 37:20
providing [2] - 25:5, 29:25
provision [3] - 13:11, 29:13, 36:18
provisions [1] - 6:8
public [2] - 25:16, 34:25
purportedly [1] - 7:16

**purpose** [10] - 29:15, 30:7, 30:17, 34:8, 34:12, 34:17, 34:19, 34:20, 34:23, 40:21
**purposes** [2] - 2:6, 21:4
**pursuant** [1] - 43:8
**put** [1] - 31:4
**putting** [1] - 39:3

**Q**

**quarrel** [1] - 4:16
**query** [1] - 21:13
**questions** [2] - 21:6, 35:24
**quick** [1] - 36:9
**quite** [2] - 26:18, 31:24
**quo** [3] - 35:10, 35:11

**R**

**rack** [1] - 34:14
**raised** [1] - 33:5
**rapid** [9] - 18:15, 18:18, 24:2, 24:9, 25:6, 25:13, 29:16, 36:19, 40:19
**rationalization** [1] - 7:19
**reached** [1] - 26:1
**reaction** [1] - 31:15
**read** [3] - 30:11, 33:9, 34:23
**reading** [1] - 30:18
**real** [1] - 26:15
**really** [7] - 22:18, 24:3, 25:25, 33:10, 37:20, 38:11, 39:11
**Realtime** [1] - 43:5
**reason** [4] - 7:4, 7:10, 37:2
**reasonable** [1] - 27:18
**reasons** [2] - 10:19, 15:19
**rebuttal** [1] - 36:8
**receive** [3] - 32:15, 33:23, 41:3
**received** [3] - 4:4, 7:14, 32:3
**recess** [1] - 42:15
**recision** [1] - 8:2
**recognized** [3] - 8:16, 36:23, 37:5
**recognizing** [1] - 27:19
**record** [6] - 2:8, 7:22, 16:23, 16:25, 17:4, 27:16

**redistribution** [1] - 6:12
**redress** [1] - 8:19
**redressed** [1] - 8:8
**reduce** [1] - 6:16
**reduction** [11] - 5:24, 6:10, 6:17, 6:20, 26:10, 29:14, 33:7, 33:15, 33:19, 34:13, 34:15
**reductions** [5] - 6:7, 8:3, 26:9, 30:20, 33:24
**refer** [1] - 20:4
**referencing** [1] - 40:13
**regard** [2] - 9:12, 28:25
**region** [1] - 21:5
**Registered** [1] - 43:6
**regulation** [4] - 6:18, 6:21, 21:16, 26:19
**regulations** [10] - 6:13, 7:1, 7:5, 7:21, 7:22, 26:12, 30:19, 30:22, 33:16, 43:11
**regulatory** [1] - 6:8
**rehash** [1] - 32:25
**reinstate** [2] - 37:23, 38:22
**reinstated** [5] - 18:5, 19:20, 25:17, 32:5
**reinstatement** [7] - 8:8, 32:1, 37:13, 37:14, 37:19, 41:12, 41:24
**reinstating** [3] - 24:10, 35:4, 35:17
**related** [1] - 42:11
**relatedly** [1] - 6:23
**relates** [1] - 36:22
**relatively** [1] - 27:22
**relied** [1] - 7:13
**relief** [25] - 4:2, 4:12, 5:20, 8:2, 8:22, 9:23, 9:24, 10:12, 11:7, 11:16, 12:12, 13:8, 13:9, 19:16, 22:5, 22:9, 23:13, 23:18, 27:21, 31:13, 31:16, 33:21, 35:1, 36:12, 36:16
**relieve** [2] - 36:18, 39:2
**relieved** [2] - 39:6, 40:16
**reluctance** [1] - 17:9
**relying** [1] - 33:2
**remains** [1] - 12:17
**remedied** [1] - 10:11
**remedies** [1] - 37:16

**remedy** [24] - 8:12, 9:15, 10:3, 18:12, 20:3, 28:20, 36:22, 36:24, 37:2, 37:6, 37:13, 37:19, 37:21, 38:14, 38:17, 39:7, 39:8, 39:14, 39:17, 39:25, 40:8, 41:13
**remedying** [1] - 17:18
**remote** [3] - 16:3, 17:5, 17:22
**remotely** [4] - 12:15, 12:16, 14:14, 15:17
**reorganization** [2] - 6:11, 33:7
**reorganize** [1] - 16:2
**reported** [2] - 41:18, 43:9
**REPORTER** [2] - 43:1, 43:18
**Reporter** [2] - 43:5, 43:6
**request** [3] - 3:21, 4:9, 4:14
**require** [3] - 21:17, 26:10, 30:21
**required** [1] - 24:1
**requirement** [2] - 23:25, 34:21
**requirements** [1] - 24:9
**requires** [2] - 22:19, 29:24
**rescind** [1] - 15:1
**reside** [3] - 11:19, 13:16
**residence** [1] - 11:13
**residents** [2] - 18:22, 24:17
**resist** [1] - 17:16
**resolution** [1] - 4:8
**resolving** [1] - 41:12
**resource** [1] - 6:2
**resources** [1] - 13:11
**respect** [2] - 31:4, 32:24
**respond** [1] - 32:10
**response** [9] - 18:16, 18:18, 24:2, 24:9, 25:6, 25:13, 29:16, 36:19, 40:19
**responsibilities** [1] - 40:17
**responsibility** [7] - 11:23, 24:21, 28:11, 28:20, 31:6, 35:9, 42:3
**Restraining** [4] - 3:16, 5:12, 5:14, 27:2
**restrictions** [1] - 12:6

**restrictive** [1] - 28:13
**result** [1] - 36:25
**revenue** [1] - 29:25
**review** [1] - 32:23
**ride** [1] - 33:22
**rides** [1] - 34:1
**RIF** [10] - 8:24, 11:8, 18:1, 18:20, 21:25, 22:23, 22:25, 33:5, 33:11, 33:13
**RIFs** [12] - 6:6, 8:14, 10:25, 11:15, 11:17, 17:25, 18:3, 21:20, 21:21, 22:3, 22:18, 24:16
**rights** [3] - 3:10, 13:23, 21:9
**RMR** [1] - 43:18
**road** [1] - 31:2
**rule** [1] - 21:11
**ruling** [1] - 41:14
**run** [1] - 18:9
**runs** [1] - 42:11
**RYAN** [1] - 1:15
**Ryan** [1] - 2:14

**S**

**Sacramento** [3] - 15:18, 16:10, 16:12
**salaries** [1] - 6:4
**satisfactorily** [1] - 15:24
**satisfy** [1] - 32:20
**schedule** [1] - 3:24
**school** [1] - 15:22
**scope** [7] - 4:2, 21:21, 22:5, 23:13, 31:12, 31:15, 33:21
**Seaton** [1] - 41:16
**second** [2] - 5:5, 36:21
**secretaries** [1] - 3:7
**section** [1] - 33:11
**sector** [1] - 25:16
**Security** [1] - 20:23
**see** [7] - 3:2, 17:7, 22:13, 23:22, 31:11, 32:13, 38:11
**seeing** [1] - 29:1
**seek** [6] - 8:2, 8:19, 17:5, 36:16, 38:19, 40:11
**seeking** [6] - 31:24, 31:25, 32:16, 32:17, 36:12, 38:21
**segment** [1] - 6:14
**send** [1] - 25:13
**sense** [2] - 4:14, 7:5
**sensitive** [1] - 28:17

**sentence** [1] - 33:10
**separate** [4] - 24:10, 26:21, 27:11, 27:13
**separated** [2] - 25:14, 32:3
**separately** [1] - 4:6
**separations** [1] - 32:21
**sequencing** [1] - 33:10
**serve** [1] - 25:19
**service** [1] - 38:23
**Service[sic** [1] - 24:13
**services** [13] - 12:24, 13:10, 13:21, 14:3, 14:15, 14:21, 15:24, 16:11, 16:12, 18:16, 18:18, 30:5, 41:2
**Services[sic** [1] - 38:5
**set** [4] - 5:6, 5:11, 34:2, 40:2
**setting** [1] - 7:6
**several** [1] - 22:14
**sharpened** [1] - 31:18
**sharply** [1] - 35:1
**short** [3] - 20:3, 29:1
**show** [3] - 12:13, 17:17, 27:3
**showing** [1] - 33:25
**shows** [1] - 7:13
**shrink** [1] - 28:21
**side** [2] - 28:24, 36:10
**significant** [5] - 19:2, 21:13, 21:15, 25:10, 26:11
**similar** [1] - 6:19
**simple** [1] - 28:15
**single** [1] - 28:17
**SINKS** [2] - 1:16, 2:12
**Sinks** [1] - 2:12
**sitting** [1] - 35:8
**situation** [6] - 13:17, 14:1, 19:15, 21:14, 25:1, 28:10
**situations** [1] - 14:10
**small** [2] - 26:18, 27:22
**social** [6] - 12:24, 13:10, 13:21, 14:3, 16:11, 16:12
**solution** [1] - 28:15
**someone** [4] - 14:2, 30:13, 30:15, 32:14
**sometimes** [1] - 28:8
**sorry** [2] - 13:2, 41:18
**sort** [12] - 7:20, 8:5, 8:17, 9:1, 18:18, 36:19, 37:4, 38:2, 38:13, 38:19, 40:11, 40:24

**sorted** [1] - 26:6
**sought** [1] - 4:7
**sound** [1] - 4:20
**sounds** [1] - 5:8
**spark** [1] - 31:15
**specific** [3] - 7:6, 17:21, 29:15
**specifically** [5] - 3:10, 9:21, 17:18, 21:12, 37:14
**specify** [2] - 30:11, 32:24
**spectacular** [1] - 38:16
**spills** [1] - 27:25
**spot** [1] - 31:11
**squarely** [1] - 13:18
**St** [1] - 1:13
**stage** [11] - 5:18, 5:21, 8:6, 8:22, 10:12, 11:7, 12:12, 27:19, 33:5, 35:9
**standing** [10] - 5:4, 7:24, 23:12, 23:16, 31:20, 31:21, 31:23, 32:16, 32:21, 36:22
**stands** [1] - 42:2
**start** [4] - 29:12, 29:24, 31:20, 35:9
**starting** [1] - 2:8
**state** [45] - 8:13, 8:23, 11:3, 11:4, 11:12, 11:21, 11:22, 12:16, 12:17, 12:22, 12:24, 13:4, 13:11, 13:18, 14:12, 14:17, 14:18, 14:21, 15:5, 15:9, 16:20, 19:7, 20:15, 21:9, 22:4, 22:6, 24:1, 24:4, 24:6, 24:19, 25:8, 25:10, 26:15, 27:25, 28:1, 28:2, 29:7, 30:11, 30:13, 30:24, 40:25
**State** [2] - 2:4, 2:9
**STATE** [1] - 1:3
**statement** [2] - 4:10, 4:17
**states** [59] - 3:5, 3:8, 3:10, 3:12, 3:20, 3:22, 8:12, 9:4, 9:5, 9:20, 9:25, 10:2, 10:10, 10:15, 10:23, 10:25, 12:6, 12:7, 17:22, 18:7, 19:18, 23:20, 23:25, 24:8, 25:4, 25:5, 25:13, 25:22, 25:23, 26:1, 26:5, 26:7, 26:10, 29:2, 29:6, 29:13,

29:18, 29:19, 29:20, 30:4, 30:21, 31:21, 33:2, 33:21, 34:9, 34:17, 36:11, 36:16, 36:18, 37:4, 38:25, 39:5, 40:3, 40:7, 40:10, 40:16, 40:23
**States** [6] - 2:5, 9:17, 15:11, 33:1, 43:6, 43:12
**STATES** [3] - 1:1, 1:5, 1:9
**states'** [4] - 8:7, 8:24, 12:11, 36:25
**station** [2] - 11:3, 13:7
**stations** [1] - 10:24
**status** [4] - 4:17, 35:10, 35:11
**statute** [16] - 14:16, 21:12, 21:14, 26:10, 26:11, 29:12, 29:13, 30:11, 30:19, 30:20, 33:6, 33:15, 36:17, 38:12, 40:13
**statutory** [4] - 33:11, 33:13, 40:3, 40:16
**stay** [5] - 3:22, 4:7, 4:8, 4:14, 20:4
**stemming** [1] - 8:18
**stenographically** [1] - 43:9
**stenographically-reported** [1] - 43:9
**step** [1] - 28:18
**steps** [1] - 22:19
**Steve** [1] - 2:21
**STEVEN** [1] - 1:22
**still** [6] - 11:14, 13:10, 22:24, 27:20, 27:24, 42:9
**stop** [2] - 24:14, 24:15
**stops** [1] - 10:14
**Street** [2] - 1:17, 1:24
**strong** [1] - 9:14
**struggling** [1] - 28:3
**stuck** [1] - 27:24
**subdivision** [2] - 26:20, 27:13
**subdivisions** [1] - 27:14
**subject** [1] - 42:3
**submission** [1] - 31:12
**submit** [2] - 23:24, 29:4
**submitted** [3] - 27:3, 27:10, 42:2
**subscribe** [1] - 23:14
**subsection** [1] - 33:9
**sudden** [2] - 19:6,

35:13
**suddenly** [4] - 17:6, 25:20, 30:6, 34:18
**sued** [1] - 9:21
**suffer** [2] - 14:6, 19:19
**suffered** [3] - 8:4, 8:13, 8:18
**suffering** [3] - 8:12, 35:3, 35:4
**sufficient** [2] - 20:3, 25:20
**suggest** [1] - 7:12
**suggestion** [1] - 40:10
**suggests** [1] - 36:11
**suing** [1] - 23:25
**suit** [1] - 3:5
**superiors** [1] - 39:13
**supplement** [1] - 17:4
**supplemental** [1] - 42:4
**supplementation** [1] - 19:24
**supplied** [1] - 5:16
**supply** [1] - 21:17
**support** [2] - 6:21, 7:21
**supports** [1] - 6:22
**suppose** [3] - 20:24, 32:11, 32:13
**supposed** [4] - 40:16, 40:25, 41:1, 41:3
**Supreme** [3] - 39:21, 41:15, 41:16
**swamp** [1] - 28:12
**sweep** [1] - 10:1
**sweeping** [4] - 23:19, 25:10, 28:6, 28:13
**system** [2] - 31:7, 39:5
**Systems** [1] - 9:16

---
**T**
---

**tax** [1] - 29:24
**technically** [3] - 3:21, 15:17, 20:13
**technicians** [1] - 15:13
**Temporary** [4] - 3:16, 5:12, 5:14, 27:2
**ten** [1] - 27:4
**term** [4] - 6:6, 6:19, 20:3, 20:4
**terminate** [3] - 7:17, 21:1, 24:18
**terminated** [4] - 16:8, 18:19, 25:8, 27:5
**terminates** [1] - 19:1
**terminating** [1] - 34:18
**termination** [8] - 3:9,

5:23, 7:7, 11:8, 11:12, 32:25, 33:12, 41:14
**terminations** [3] - 11:11, 19:20, 32:19
**terms** [2] - 6:18, 19:24
**test** [1] - 35:24
**testimony** [2] - 4:24, 5:1
**testing** [1] - 5:7
**Texas** [23] - 12:16, 12:19, 12:20, 12:22, 13:1, 13:6, 13:8, 13:12, 13:13, 13:16, 13:19, 13:22, 14:14, 14:17, 14:23, 15:20, 16:13, 16:17, 19:11, 33:1, 33:3
**THE** [88] - 1:1, 1:1, 1:8, 1:11, 1:12, 1:16, 1:17, 1:19, 2:3, 2:11, 2:16, 2:20, 2:23, 3:2, 4:20, 4:22, 5:3, 5:8, 5:10, 8:9, 9:2, 10:13, 11:10, 11:17, 12:13, 12:18, 12:20, 13:1, 13:3, 13:12, 14:8, 14:11, 14:23, 15:3, 16:21, 16:23, 17:2, 17:9, 17:16, 18:6, 18:21, 19:5, 19:22, 20:9, 20:12, 20:24, 22:2, 22:8, 22:16, 22:22, 23:3, 23:5, 23:7, 23:10, 24:14, 25:7, 25:19, 26:14, 26:24, 27:8, 27:17, 29:8, 29:18, 30:2, 30:16, 31:1, 31:10, 32:5, 32:9, 34:4, 34:16, 35:8, 36:2, 36:5, 37:8, 38:6, 38:14, 38:24, 39:7, 39:12, 40:14, 40:21, 41:7, 41:17, 41:20, 41:22, 41:25, 42:2
**themselves** [6] - 3:11, 9:9, 10:20, 21:25, 36:13, 36:18
**theoretical** [1] - 23:14
**theory** [2] - 23:18, 31:23
**thereafter** [1] - 4:13
**they've** [1] - 31:5
**thousand** [1] - 22:14
**thousands** [2] - 21:22, 27:23
**three** [3] - 5:7, 5:19, 26:21
**throw** [1] - 39:25

**thrust** [1] - 39:1
**tie** [2] - 8:1, 34:22
**tied** [1] - 4:10
**Title** [1] - 34:23
**today** [5] - 4:25, 5:1, 7:12, 10:11, 23:8
**tomorrow** [6] - 3:19, 19:25, 23:24, 29:4, 42:4, 42:7
**top** [1] - 16:17
**traditional** [1] - 37:16
**TRANSCRIPT** [1] - 1:8
**transcript** [2] - 43:9, 43:11
**treasury** [1] - 22:13
**treated** [1] - 9:9
**trial** [1] - 39:12
**trigger** [1] - 21:14
**triggered** [2] - 25:7, 27:16
**triggers** [2] - 20:13, 20:14
**TRO** [10] - 3:17, 3:18, 3:23, 8:6, 8:17, 31:19, 35:9, 38:25, 42:7, 42:11
**true** [3] - 12:13, 18:8, 43:9
**truly** [1] - 5:22
**trump** [1] - 41:10
**try** [4] - 23:23, 29:3, 35:15, 39:25
**trying** [1] - 15:3, 34:17, 38:21
**turned** [1] - 35:19
**two** [6] - 5:7, 7:2, 10:12, 11:5, 26:21, 36:9
**tying** [1] - 11:12
**types** [1] - 7:6
**typically** [1] - 16:20

---
**U**
---

**U.S** [2] - 1:20, 1:23
**U.S.C** [1] - 43:8
**ultimately** [3] - 18:19, 31:7, 39:21
**ultra** [1] - 3:14
**under** [18] - 11:8, 18:19, 21:15, 23:18, 24:2, 26:5, 26:9, 26:18, 26:21, 27:13, 29:16, 30:20, 30:21, 32:22, 35:23, 38:20, 39:5, 40:12
**understood** [1] - 8:11
**unemployed** [1] - 17:7, 24:7, 25:20, 30:6, 30:14, 34:10

**unemployment** [9] - 13:20, 14:7, 14:12, 14:18, 16:15, 19:6, 29:25, 30:15
**unexpectedly** [1] - 30:6
**unfortunately** [2] - 27:17, 28:11
**uniform** [4] - 8:22, 9:22, 10:11, 12:11
**unintelligent** [1] - 18:9
**United** [6] - 2:5, 9:17, 15:11, 33:1, 43:6, 43:12
**UNITED** [3] - 1:1, 1:5, 1:9
**units** [2] - 20:6
**unlawful** [4] - 8:14, 11:8, 18:1, 41:13
**unlawfully** [2] - 9:9, 11:1
**unless** [1] - 29:8
**unnecessary** [1] - 10:18
**unquestionably** [1] - 29:19
**unusual** [1] - 31:24
**unwarranted** [1] - 6:4
**unwind** [1] - 18:1
**up** [8] - 5:6, 15:6, 20:21, 24:23, 31:11, 34:14, 39:25, 40:2
**upset** [1] - 13:16
**utility** [1] - 6:1

## V

**variance** [1] - 31:2
**variety** [1] - 27:3
**viable** [1] - 8:16
**view** [3] - 28:8, 30:16, 31:3
**views** [1] - 9:8
**violation** [1] - 13:24
**violations** [1] - 3:12
**violative** [1] - 11:11
**vires** [1] - 3:14
**VIRGINIA** [1] - 1:12
**Virginia** [16] - 2:9, 11:4, 11:19, 18:23, 18:24, 19:3, 20:18, 21:2, 21:8, 21:17, 22:3, 24:15, 24:16, 24:18, 25:1, 28:5
**virtue** [3] - 11:12, 12:22, 25:7
**vis** [6] - 10:15, 12:8, 20:17
**vis-a-vis** [3] - 10:15, 12:8, 20:17

**Vitarelli** [1] - 41:16

## W

**wade** [1] - 28:11
**wants** [1] - 21:1
**warranted** [3] - 5:18, 8:22, 17:21
**Washington** [3] - 1:18, 1:21, 1:25
**wave** [1] - 34:10
**Wednesday** [1] - 1:9
**Westlaw** [2] - 41:19, 41:21
**whole** [3] - 25:19, 40:3, 40:21
**wide** [1] - 27:5
**Wilcox** [2] - 41:10, 41:17
**Williamson** [2] - 2:9, 41:8
**williamson** [3] - 4:16, 23:1, 36:7
**WILLIAMSON** [45] - 1:12, 2:9, 4:18, 5:1, 5:7, 5:9, 5:11, 8:10, 10:8, 10:22, 11:14, 12:9, 12:14, 12:19, 12:23, 13:2, 13:5, 14:1, 14:9, 14:20, 14:24, 16:19, 16:22, 16:24, 17:8, 17:15, 17:20, 18:14, 19:4, 19:14, 20:8, 20:10, 20:19, 21:11, 22:7, 22:11, 22:21, 23:2, 23:4, 36:9, 41:9, 41:19, 41:21, 41:23, 42:1
**Wilson** [1] - 2:14
**WILSON** [2] - 1:15, 2:14
**window** [1] - 40:24
**Winter** [1] - 35:24
**worker** [3] - 16:10, 17:22, 17:23
**workers** [5] - 16:3, 16:4, 17:5, 20:25, 21:2
**Workforce** [12] - 24:3, 24:4, 25:3, 25:24, 26:3, 29:17, 29:23, 30:12, 34:22, 38:20, 39:10, 40:12
**workforce** [1] - 14:16
**works** [8] - 12:15, 12:16, 13:6, 14:2, 14:12, 17:23, 19:1
**worried** [1] - 35:20
**worse** [1] - 39:4

**write** [1] - 28:15
**writing** [2] - 30:3, 42:12
**written** [1] - 6:25
**wronged** [2] - 9:12, 9:19

## Y

**year** [1] - 15:25
**years** [3] - 15:24, 15:25, 39:21

## §

**§** [5] - 3:22, 24:2, 29:16, 34:23, 43:8