FILED: April 9, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-1248
(1:25-cv-00748-JKB)

STATE OF MARYLAND; STATE OF MINNESOTA; DISTRICT OF COLUMBIA; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN,

　　　　　　Plaintiffs – Appellees,

　　v.

UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her Official Capacity as Secretary of Agriculture; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, in his Official Capacity as Secretary of Commerce; UNITED STATES DEPARTMENT OF DEFENSE; PETER HEGSETH, In his Official Capacity as Secretary of Defense; UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her Official Capacity as Secretary of Education; UNITED STATES DEPARTMENT OF ENERGY; CHRISTOPHER WRIGHT, in his Official Capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his Official Capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her Official Capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; SCOTT TURNER, in his Official Capacity as Secretary of Housing and Urban Development; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUGLAS BURGUM, in his Official Capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF LABOR; VINCENT MICONE, in his Official Capacity as Acting Secretary of Labor; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN P. DUFFY, in his Official Capacity as Secretary of Transportation; UNITED STATES

DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his Official Capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A. COLLINS, in his Official Capacity as Secretary of Veterans Affairs; CONSUMER FINANCIAL PROTECTION BUREAU; RUSSELL VOUGHT, in his Official Capacity as Acting Director of the Consumer Financial Protection Bureau; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his Official Capacity as Administrator of the Environmental Protection Agency; FEDERAL DEPOSIT INSURANCE CORPORATION; TRAVIS HILL, in his Official Capacity as Acting Chairman of the Federal Deposit Insurance Corporation; GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, in his Official Capacity as Acting Administrator of the General Services Administration; NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, in his Official Capacity as Acting Director of the Office of Personnel Management; SMALL BUSINESS ADMINISTRATION; KELLY LOEFLER, in her Official Capacity as Administrator of the Small Business Administration; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT; MARCO RUBIO, in his Official Capacity as Acting Administrator of the United States Agency for International Development and Archivist for the National Archives and Records Administration,

              Defendants – Appellants.

---

No: 25-1338
(1:25-cv-00748-JKB)

---

STATE OF MARYLAND; STATE OF MINNESOTA; DISTRICT OF COLUMBIA; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN,

              Plaintiffs – Appellees,

      v.

UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her Official Capacity as Secretary of Agriculture; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, in his Official Capacity as Secretary of Commerce; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, In his Official Capacity as Secretary of Defense; UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her Official Capacity as Secretary of Education; UNITED STATES DEPARTMENT OF ENERGY; CHRISTOPHER A. WRIGHT, in his Official Capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his Official Capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her Official Capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; SCOTT TURNER, in his Official Capacity as Secretary of Housing and Urban Development; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUGLAS BURGUM, in his Official Capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF LABOR; VINCENT N. MICONE, III, in his Official Capacity as Acting Secretary of Labor; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his Official Capacity as Secretary of Transportation; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his Official Capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS COLLINS, in his Official Capacity as Secretary of Veterans Affairs; CONSUMER FINANCIAL PROTECTION BUREAU; RUSSELL VOUGHT, in his Official Capacity as Acting Director of the Consumer Financial Protection Bureau; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE M. ZELDIN, in his Official Capacity as Administrator of the Environmental Protection Agency; FEDERAL DEPOSIT INSURANCE CORPORATION; TRAVIS HILL, in his Official Capacity as Acting Chairman of the Federal Deposit Insurance Corporation; GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, in his Official Capacity as Acting Administrator of the General Services Administration; NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, in his Official Capacity as Acting Director of the Office of Personnel Management; SMALL BUSINESS ADMINISTRATION; KELLY LOEFLER, in her Official Capacity as Administrator of the Small Business Administration; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT; MARCO RUBIO, in his Official Capacity as Acting Administrator of the United States Agency for International Development and Archivist for the National Archives and Records Administration,

Defendants – Appellants.

ORDER

Pending before the Court is the Government's Motion for a Stay Pending Appeal. Plaintiffs—nineteen States and the District of Columbia—sued forty-one Defendants, which are federal executive departments and their secretaries as well as other federal agencies and their heads (collectively, the Government). Plaintiffs allege that the Government violated federal law when it terminated thousands of probationary federal employees without following the procedures required for a reduction in force, including advance notice to the affected States. *See* 5 U.S.C. § 3502; 5 C.F.R. § 351.803(b). The district court agreed with Plaintiffs and entered a preliminary injunction requiring the Government to reinstate the probationary employees who reside or work in Plaintiff States and refrain from further alleged reductions in force except in compliance with the notice requirements of § 3502. *Maryland v. USDA*, --- F. Supp. 3d ---, 2025 WL 973159, at *40-42 (D. Md. April 1, 2025).

The Government now asks us to stay the district court's preliminary injunction. Among other things, the Government argues that the States lack Article III standing to challenge the terminations and that the district court lacked subject-matter jurisdiction because the Civil Service Reform Act of 1978, Pub. L. No. 95-454, provides the exclusive means for review of personnel actions taken against federal employees.

Having reviewed the record, the district court's opinion, and the parties' briefing, we agree with the Government that it has satisfied the factors for a stay under *Nken v.*

4

*Holder*, 556 U.S. 418, 426 (2009).  The Government is likely to succeed in showing the district court lacked jurisdiction over Plaintiffs' claims, and the Government is unlikely to recover the funds disbursed to reinstated probationary employees.  *Cf. Dep't of Educ. v. California*, No. 24A910, 2025 WL 1008354, at *1 (U.S. Apr. 4, 2025) (per curiam).  The Supreme Court has stayed a similar preliminary injunction issued by the United States District Court for the Northern District of California.  *See OPM v. AFGE*, No. 24A904, 2025 WL 1035208, at *1 (U.S. Apr. 8, 2025) (mem.).  We therefore grant the Government's motion for a stay of the preliminary injunction pending this appeal.  The Clerk will set an expedited briefing schedule.

    Entered at the direction of Judge Rushing, with the concurrence of Judge Wilkinson.  Judge Benjamin filed a separate dissenting opinion.

For the Court

/s/ Nwamaka Anowi, Clerk

DEANDREA GIST BENJAMIN, Circuit Judge, dissenting:

The majority votes to stay the preliminary injunction pending the resolution of the appeal. The district court entered a well-reasoned memorandum opinion and order granting a preliminary injunction, and then denied a motion for stay pending appeal. For the below reasons and those explained in thorough detail by the district court, I would deny the Government's motion.

I.

A.

As a threshold matter, per the district court's order, the States[1] clearly have standing to challenge *the process by which* the Government has engaged in mass firings.[2] To establish standing, "the plaintiff must have a ' "personal stake" ' in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To prove a personal stake, "plaintiffs must be able to sufficiently answer the question: ' "What's it to you?" ' " *Id.* (quoting Antonin Scalia, The Doctrine of Standing

---

[1] Plaintiff States are a consortium of nineteen states (Maryland, Minnesota, Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Massachusetts, Michigan, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Wisconsin) and the District of Columbia.

[2] This is an important distinction. The Government repeatedly mischaracterizes the basis of the States' claims, suggesting that the States are attempting to sue on behalf of their respective citizens for alleged unlawful firings. This mischaracterization not only misses the point but—more seriously—distracts from the States' *actual* alleged harm. The States were entitled to proper notice, which the Government did not give. *That* is the basis for the instant suit.

6

as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). A satisfactory answer to this question requires a plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The Supreme Court has recognized that certain intangible injuries, including an "informational injury," can support standing. *See, e.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24–25 (1998); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). "A statutory violation *alone*," however, "does not create a concrete informational injury sufficient to support standing." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016)). Instead, a "constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." *Id.* (quoting *Spokeo*, 578 U.S. at 339–40).

By this standard, the States' informational injury cannot be a "dead end," as the Government claims. *See* Mot. for stay pending appeal at 1. First, pursuant to 5 U.S.C. § 3502(d), the Government was *legally required* to inform the States at least 60 days before any reduction in force ("RIF"). *See also* 5 C.F.R. § 351.803(b). The Government failed to do so, thereby depriving the States of information to which they were legally entitled and satisfying the first requirement of a constitutionally cognizable informational injury. *See Dreher*, 856 F.3d at 345. Next, as discussed in depth by the district court, the denial

7

of this notice has, and will continue to, cause real harm with significant adverse effects. *See* Mem. Op. on prelim. inj. (D. ECF No. 125) at 10–16.[3] Such adverse effects include, but are not limited to, an increase in unemployment benefits applications, an increase in the resources required to investigate this influx in unemployment benefits applications, additional financial and labor costs associated with the sudden strain placed on rapid response programs without advance notice, unanticipated loss of tax revenue, and the loss of support from federal employees who were working with various state agencies.[4] *See id.* These harms, among others, plainly satisfy the concreteness requirement and thus provide the necessary grounds for Article III standing. *See Dreher*, 856 F.3d at 345.

Further, the district court correctly distinguished this case from *United States v. Texas*, 599 U.S. 670 (2023). Asking the Government "to change its arrest or prosecution policies so that the Executive Branch makes more arrests or initiates more prosecutions" is a far cry from requiring the Government to adhere to a statutory notice requirement. *See id.* at 677. The former "run[s] up against the Executive's Article II authority to enforce

---

[3] Page numbers for citations to ECF documents utilize the document's native numbering.

[4] The Government's argument regarding the harms suffered by the States as a result of the lack of statutory notice is concerning. *See* Mot. for stay pending appeal at 13 (arguing that allowing standing "based on downstream harms to state budgets and operations from the termination of probationary employees" is "a recipe for any state to micromanage the activities of the federal government" and "irreconcilable with Supreme Court precedent"). Requiring the *federal* government to adhere to statutory notice requirements as set forth by *federal* law can hardly be considered "micromanaging." As explained below, the Government had the opportunity to conduct the RIF according to statutory procedure and chose not to do so.

8

federal law" and seeks to mandate something of the Government that was not already required. *Id.* at 678. The latter merely asks the Government to comply with a required procedure.

In the same vein, the relationship between the action (or inaction) by the Government and the alleged harm is also distinct. In *Texas*, the states sought damages for the costs associated with incarceration and social services based on the Government's *failure to exercise its discretion*—i.e., its discretionary inaction. *Id.* at 674, 684–85. Here, the alleged harms, namely, the unexpected increased financial burden placed on rapid response programs, are a result of the Government's *failure to adhere to statutory notice requirements*—i.e., its actions contrary to law. One is tangentially related to actions that the Government was not required to take, while the other is *directly related* to an action the Government was required to and failed to take. For these reasons, and those aptly explained by the district court, *Texas* is inapplicable here.[5]

---

[5] On April 8, 2025, the Supreme Court stayed the preliminary injunction entered by the United States District Court for the Northern District of California in its similar probationary employee RIF case. *See OPM v. AFGE*, No. 24A904 (U.S. Apr. 8, 2025). The Ninth Circuit had denied a motion to stay pending appeal. *See Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, No. 25-1677, 2025 WL 914823 (9th Cir. Mar. 26, 2025). Like *United States v. Texas*, 599 U.S. 670 (2023), the decision in *AFGE* is not applicable to the present case. The Supreme Court specifically noted "[t]he District Court's injunction was based solely on the allegations of the nine non-profit-organization plaintiffs." *See AFGE*, No. 24A904. The basis of standing is different here, where States are suing under a statutory scheme relevant to states.

Accordingly, the States have successfully answered the question: "What's it to them?" *See TransUnion LLC*, 594 U.S. at 423. Standing based on the alleged informational injury is thus appropriate here.

B.

Nor does the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101–35, defeat the district court's jurisdiction. The CSRA "provides for the original and exclusive administrative review of certain labor- and employment-related claims brought by federal employees and/or their unions." Mem. Op. on prelim. inj. at 32. The Government argues the CSRA precludes the States' claims because "at bottom, [they] rest on allegations that the government unlawfully terminated probationary employees . . . and the states sought— and the district court granted—reinstatement of affected employees." Mot. for stay pending appeal at 21–22.

The States do not dispute that they cannot receive relief under the CSRA—instead, they have consistently argued that their harm arises from an independent "statutory right[] to notice." Mem. in support of motion for prelim. inj. (D. ECF No. 78-1) at 15. I, like the district court, am not prepared to accept "the faulty premise that the States [are] simply trying to vindicate the interests of the terminated workers (as opposed to their own and separate harms as 'state *qua* states')." Mem. Op. on prelim. inj. at 33.

I also cannot ignore the Supreme Court's analytical framework for assessing whether a district court is divested of jurisdiction in favor of the Government's preferred framework. As ably set out by the district court, "pursuant to . . . *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), there [is] no reason to believe Congress ha[s] divested the

10

district courts of jurisdiction over the States' claims in this case." Mem. Op. on prelim. inj. at 31; *see also id.* at 31–33. The Government's attempt to review the jurisdictional question pursuant to *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984) is unavailing and "rel[ies] crucially on the idea that there is an identity of interests between the States and the fired employees." *Id.* at 37; *see also id.* at 35–37. "But," as the district court made clear, "that is not so." *Id.* at 37.

For the above reasons, I do not believe the Government can defeat the States' standing.

## II.

The Government also cannot satisfy the standard for a stay pending appeal. Those factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Government must satisfy all four factors. But I do not believe it can satisfy any. I write to highlight the Government's lack of a convincing argument on irreparable harm. *See Nken*, 556 U.S. at 434–35 (2009). The Government asserts that it cannot recover salaries it is currently paying to reinstated probationary employees, and that the preliminary injunction is a disruption to the CSRA process. *See* Mot. for stay pending appeal at 25–27.

11

The Government's monetary injury, if any, is " 'self-imposed.' " *See Dep't of Educ. v. California*, __ S. Ct. __, __, No. 24A910, 2025 WL 1008354, at *1 (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985) (per curiam)). The preliminary injunction order expressly states "[n]othing in this Order prohibits the Government from conducting lawful terminations of probationary federal employees—whether (1) pursuant to a proper RIF . . . or else (2) for cause . . . under the standards for making such determinations set forth in the TRO Memorandum." Prelim. Inj. order (D. ECF No. 126) at 2 n.1. Additionally, if the Government had followed the statutory RIF notice procedure, it would have had to pay probationary employees' salaries for a statutory period anyway. *See* 5 C.F.R. § 351.801. And, as explained earlier, the States are not alleging a violation of the CSRA, nor are they attempting to step into the probationary employees' place for a CSRA challenge. *See* Mem. Op. on prelim. inj. at 33–37.

### III.

I see no reason to stay the district court's preliminary injunction pending its appeal. For the foregoing reasons, I respectfully dissent.